**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 01-CV-1451-REB-PAC

(Consolidated with Civil Action Nos. 01-RB-1472, 01-RB-1527, 01-RB-1616, 01-RB-1799, 01-RB-1930, 01-RB-2083, 02-RB-333, 02-RB-374, 02-D-507, 02-RB-658, 02-RB-755, 02-RB-798, and 04-RB-238)

In re QWEST COMMUNICATIONS INTERNATIONAL INC. SECURITIES LITIGATION

---

**REPLY OF QWEST COMMUNICATIONS INTERNATIONAL INC. TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT**

---

# TABLE OF CONTENTS

Table of Contents ................................................................................................ i

Table of Authorities ............................................................................................ ii

I.      INTRODUCTION ...................................................................................... 1

II.     NACCHIO'S AND WOODRUFF'S OBJECTIONS FAIL TO ESTABLISH THAT
        THE SETTLEMENT IS NOT FAIR, REASONABLE, AND ADEQUATE. .............. 4

        A.      The Reform Act Bar Order ......................................................... 6

        B.      The Complete Bar Order ............................................................ 11

        C.      The Contractual Provisions of Paragraphs 13 and 14 ............................ 17

III.            CONCLUSION ............................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvarado Partners, LP v. Mehta*, 723 F. Supp. 540
(D. Colo. 1989) ...................................................................................... 5, 11, 14, 16, 17

*Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101 (4th Cir. 1989).................. 14

*Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995) ........................................... 4, 15, 17

*First Golden Bancorporation v. Weiszmann*, 942 F.2d 726 (10th Cir. 1991) ................ 14

*Franklin v. Kaypro Corp.,* 884 F.2d 1222 (9th Cir. 1989)..................................... 4, 15, 17

*Garcia v. United States*, 469 U.S. 70 (1984) ................................................................ 12

*Gerber v. MTC Electronic Technologies Co., Ltd.*, 329 F.3d 297 (2d Cir. 2003) .......... 10

*In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) ........................ 20

*In re Diet Drugs Prod. Liab. Litig.*, Nos. 1203, 99-20593,
2000 WL 1222042 (E.D. Pa. Aug 28, 2000) .................................................................. 19

*In re Global Crossing Sec. Litig.,* No. 02 Civ. 910 (GEL),
2005 WL 1668532 (S.D.N.Y. Jul. 12, 2005) .................................................................. 11

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654 (E.D. Va. 2001)...................... 9

*In re Nucorp Energy Sec. Litig.,* 661 F. Supp. 1403 (S.D. Cal. 1987) ............................. 5

*In re Orthopedic Bone Screw Products Liability Litig.*,
176 F.R.D. 158 (E.D. Pa. 1997) .................................................................................... 19

*In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001) ............. 5, 8, 10, 13

*In re United States Oil & Gas Litig.,* 967 F.2d 489 (11th Cir. 1992)................. 4, 9, 15, 16

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC),
2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ................................................................ 11

*King v. Gibbs*, 876 F.2d 1275 (7th Cir. 1989) ............................................................... 14

*Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672
(9th Cir. 1980) ......................................................................................... 14

*Lucas v. Hackett Associates, Inc.,* 18 F. Supp. 2d 531 (E.D. Pa. 1998) .................. 12, 19

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353 (1982) ................ 13

*Musick, Peeler & Garrett v. Employers Ins. of Wasau,* 508 U.S. 286 (1993) ................ 14

*Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) ............................ 9, 15, 19

*Odette v. Shearson, Hammil & Co.,* 394 F. Supp. 946 (S.D.N.Y. 1975) ........................ 14

*Resolution Trust Corp. v. Evans*, Civ. A. No. 92-0756, 1993 WL 354796
(E.D. La. Sept. 3, 1993) ................................................................................. 20

*Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384 (1951) ............................ 12

*Stewart v. American Int'l Oil & Gas Co.,* 845 F.2d 196 (9th Cir. 1988) ......................... 14

*TGB, Inc. v. Bendis,* 36 F.3d 916 (10th Cir. 1994) ............................................ 15, 16, 20

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir.1976) ..................................... 17

*Wisconsin Investment Board v. Ruttenberg*, 300 F. Supp. 2d 1210
(N.D. Ala. 2004) ........................................................................................... 13

## Statutes

15 U.S.C. § 78u-4(f)(7)(A) .............................................................................. 6

15 U.S.C. §78u-4(F)(7)(B) .............................................................................. 6

15 U.S.C. § 77(f) ......................................................................................... 13

15 U.S.C. § 78j(b) ....................................................................................... 14

17 C.F.R. § 240.10b-5 .................................................................................. 14

## Other Sources

Final Judgment And Order Of Dismissal With Prejudice,
*Rasner v. Vari-L Company, Inc.,* Civ. A. No. 00-CV-1181-REB-CBS,
Docket No. 104 (D. Colo. Mar. 28, 2003) ........................................................ 9

Jeff Smith, *Cross Hairs on Nacchio; Ex-Qwest CEO Likely to be
Indicted Before Year's End on Insider Trading Charges*,
Rocky Mountain News, Nov. 5, 2005, at 1C...................................................................... 2

Stipulation of Settlement, *Rasner v. Vari-L Company, Inc.,*
Civ. A. No. 00-CV-1181-REB-CBS, Docket No. 87 (D. Colo. Jan. 23, 2003) .................. 9

Defendants Nacchio and Woodruff argue that, after it pays $390 million to settle this case, Qwest should remain exposed to their potential *personal* liabilities.[1]  Such a rule would not only threaten the viability of the proposed settlement in this case, it would prevent any partial settlements in securities cases, as no responsible defendant could agree to settlement while the specter of additional, future liability loomed large.  It is for this reason that federal courts have widely embraced the *precise* bar orders that Nacchio and Woodruff now challenge.

## I.    INTRODUCTION

The partial settlement submitted for the Court's approval is the product of extensive arms-length negotiations between adverse parties, represented by sophisticated counsel.  A retired federal district court judge served as mediator during nearly every step of the settlement negotiations.  His declaration affirms that "the negotiations between defendants and plaintiffs were conducted at arms-length" and that the "mediation process was difficult."  Exhibit A, April 14, 2006 *Declaration of Layn R. Phillips in Support of Motion for Final Approval of Class Action Settlement* ("Phillips Decl.") ¶ 6.  Further, "[a]lthough Qwest attempted to achieve a settlement that included all the defendants, this ultimately proved ***impossible***, as Lead Counsel determined that they wished to litigate separately their claims against two of the defendants who they believed faced significant exposure and who they believed possessed the ability to pay

---

[1] Capitalized terms in this pleading shall have the same meanings as those specified in Section 1 of the November 23, 2005, *Stipulation of Partial Settlement* ("Stipulation" or "Stip.").

1

a judgment against them." *Id.* at ¶ 6 (emphasis added).[2]  Put simply, when ultimately

convinced that a global settlement on behalf of all defendants would not be possible,

Qwest determined that proceeding with the partial settlement embodied in the

Stipulation and the Proposed Partial Final Judgment And Order Of Partial Dismissal

With Prejudice ("Proposed Judgment" or "Jmt.") was in the best interests of the

Company and its current shareholders.

The Stipulation, which is to be incorporated by reference in the Proposed

Judgment, *see* Jmt. ¶ 1, includes a number of provisions that, if not accepted by the

Court, could preclude the settlement from occurring.  For example, the settlement will

not become effective unless the Court enters an order that is "substantially similar in all

material respects" to the Proposed Judgment.  *See* Stip. ¶¶ 1, 8.1(c).  Similarly, the

Stipulation expressly identifies certain of the bar order provisions upon which Nacchio

and Woodruff focus their attack as "material to the Settling Defendants' decision to

participate in this Stipulation."  Stip. ¶¶ 11.3, 11.4.

---

[2] Nacchio and Woodruff spend several pages complaining that the Lead Counsel refused to negotiate with them on the one hand, and included twelve individuals in the settlement without requiring a personal contribution on the other hand.  *See* Opp. at 22-25.  This undoubtedly resulted from Lead Counsel's assessment of their case, *see* Phillips Decl. ¶ 6, and reflects the fact that allegations in a complaint are not evidence. Following the announcement of this settlement, Lead Counsel was quoted in the Rocky Mountain News commenting about why one of the defendants was included in the settlement: ". . . and the lawyers for the class-action shareholders didn't see Anschutz as being involved in Qwest's day-to-day operations.  'We looked at Anschutz,' Patrick Coughlin, a partner in the stockholders' lead law firm, Lerach Coughlin Stoia Geller Rudman & Robbins, said this week.  'And frankly we just didn't think we had anything. In this case, you have to prove actual involvement.'"  Jeff Smith, *Cross Hairs on Nacchio; Ex-Qwest CEO Likely to be Indicted Before Year's End on Insider Trading Charges*, Rocky Mountain News, Nov. 5, 2005, at 1C (attached hereto as Exhibit B).

The Stipulation's bar order provisions are straightforward.  First, as required by statute, Paragraph 11.1 of the Stipulation bars contribution claims between and among the Released Parties and the Non-Settling Defendants ("Reform Act Bar Order").  This provision precludes, among other things, Qwest and the Non-Settling Defendants from asserting against one another contribution claims arising from the Released Claims. Second, Paragraph 11.2 bars other claims that might be asserted between Qwest and the Non-Settling Defendants that are based on, arise out of or relate to the Released Claims, including contractual claims for indemnification by the Non-Settling Defendants against Qwest ("Complete Bar Order").  Third, Paragraphs 11.3 and 11.4 of the Stipulation preclude the Lead Plaintiffs and the Class they represent from recovering monies from the Non-Settling Defendants, either through settlement or an adjudicated judgment, for which Qwest and the other Released Persons could be liable ("Contractual Provisions").  These Contractual Provisions serve as an essential backstop for the Non-Settling Defendants, the Individual Settling Defendants, and Qwest, ensuring that the Non-Settling Defendants' responsibility is limited to their individual portion of any liability, assuring that the Individual Settling Defendants' potential liabilities are fully resolved, and assuring that Qwest will not later be required to pay more than the $390 million it has agreed to pay to settle its potential liabilities in this case.

Notwithstanding the Stipulation's bar order provisions, certain claims are expressly preserved.  For example, the Stipulation preserves Nacchio's and Woodruff's claims for advancement of legal fees, and Qwest continues to advance legal fees to

3

both defendants, including fees incurred in opposing this settlement. *See* Stip. ¶ 12.1(c). Similarly, the Stipulation expressly preserves all claims by all parties relating to other cases, including those cases brought by Persons who exclude themselves from this settlement.

## II. NACCHIO'S AND WOODRUFF'S OBJECTIONS FAIL TO ESTABLISH THAT THE SETTLEMENT IS NOT FAIR, REASONABLE, AND ADEQUATE.

The settlement bar and reduction provisions described above are reflected in the Stipulation and in Paragraphs 11 through 14 of the Proposed Judgment, which are the primary focus of Nacchio's and Woodruff's objections.[3] Such provisions are commonly included in partial settlements to assure that settling parties do not confront essentially the same liabilities as those they have settled as a result of the plaintiffs' pursuit of claims against non-settling parties. As the United States Court of Appeals for the Eleventh Circuit explained in *In re United States Oil & Gas Litig.,* 967 F.2d 489 (11th Cir. 1992), "Defendants buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution or other causes related to the underlying litigation." *Id.* at 494; *see also Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) (same); *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1229 (9th Cir. 1989) ("Anyone foolish enough to settle without barring contribution is courting disaster. They are allowing the total

---

[3] Nacchio and Woodruff also object to their exclusion from the settlement and advance a series of arguments to the effect that the settlement cannot be fair and reasonable without their participation. Lead Plaintiffs can best address why they declined to reach settlement with Nacchio and Woodruff at this time.

damages from which their ultimate share will be derived to be determined in a trial where they are not even represented."); *Alvarado Partners, LP v. Mehta*, 723 F. Supp. 540, 550-51 (D. Colo. 1989) ("A 'no-bar' rule inhibits settlements because there is little incentive to enter into a settlement that does not terminate or reduce future financial exposure. . . . '[U]nder a 'no bar' rule, partial settlement may be virtually impossible because any defendant who refuses to settle, for whatever reason, forces all other defendants to trial.'") (quoting *In re Nucorp Energy Sec. Litig.,* 661 F. Supp. 1403 (S.D. Cal. 1987)).  Moreover, the provisions in the Stipulation and Proposed Judgment are nearly identical to provisions that federal courts have approved and ordered in other securities class action settlements.  *See. e.g., In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001) (holding that bar provisions substantively identical to those in the Stipulation and Proposed Judgment were appropriate).[4]

---

[4] Although the district court initially declined to approve the proposed settlement in *Rite Aid,* requiring the settling parties in that case to modify certain provisions in the stipulation and judgment, the final order contained a Reform Act bar order identical to the one proposed in the original stipulation and judgment, and a complete bar order different only in two respects – it was revised so as to provide reciprocity between the non-settling defendants and the released parties (which exists in the Complete Bar Order proposed in this case), and a clause was added to address an issue particular to an assignment of claims that is not relevant here.  The Stipulation and Proposed Judgment in this case are modeled on the revised provisions that the *Rite Aid* court ultimately found to be fair, reasonable, and adequate.  Although the non-settling defendants in *Rite Aid* noticed appeals of the district court's final order, the appeals were withdrawn after the non-settling defendants reached separate settlement agreements with the class.  *See, e.g., In re Rite Aid Corp. Sec. Litig.*, Civ. A. No. 99-01349, *appeal docketed*, No. 01-3563 (3d Cir. 2001), *appeal dismissed per parties' joint motion* (Jun. 12, 2003).

### A. __The Reform Act Bar Order__

The Reform Act Bar Order set forth in Paragraph 11 of the Proposed Judgment, as mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(f)(7)(A), bars contribution claims. Nacchio and Woodruff do not question that a provision of this kind is required by the PSLRA, nor could they, since the PSLRA dictates that a "covered person who settles any private action at any time before final verdict or judgment *shall* be discharged from all claims for contribution brought by other persons," 15 U.S.C. §78u-4(F)(7)(A) (emphasis added), and specifies the judgment reduction that is required with respect to the liabilities of non-settling defendants who remain in the action, *id.*, §78u-4(F) (7)(B). They claim, however, that the Reform Act Bar Order in the Proposed Judgment would deprive them of the statutory credit to which they are entitled and contend that it is otherwise too broad.

Any claim that the proposed Reform Act Bar Order would impermissibly deny Nacchio and Woodruff of the statutory judgment reduction credit is a misleading straw man. That credit occurs by operation of the statute itself, and it is to be applied "prior to the final verdict or judgment" by reducing "the verdict or judgment" by the greater of:

    (i)      an amount that corresponds to the percentage responsibility of that covered person; or

    (ii)     the amount paid to the plaintiff by that covered person.

15 U.S.C. §78u-4(F)(7)(B). While the Court could assuage Nacchio's and Woodruff's professed concerns by specifying their entitlement to the statutory credits in its order if it wishes, doing so is unnecessary. The statute itself will provide that remedy if a

judgment or verdict results to which it applies.  Neither Qwest nor Lead Plaintiffs dispute

the application of the statute or its terms.[5]

Nacchio and Woodruff also contend that the Reform Act Bar Order in the

Proposed Judgment is too broad, arguing that it reaches too many people and too many

claims.  With respect to their contention that the Reform Act Bar Order reaches too

many people, Nacchio and Woodruff maintain that the PSLRA only authorizes the

discharge of a "covered person," while the proposed Reform Act Bar Order reaches all

Released Persons.  With respect to their contention that the Reform Act Bar Order

reaches too many claims, Nacchio and Woodruff maintain that the PSLRA only

authorizes the bar of future contribution claims "arising out of the action," while the

proposed Reform Act Bar Order encompasses all contribution claims "based upon,

---

[5] Upon approval of the Settlement, the PSLRA guarantees Nacchio and Woodruff that any adverse judgment or verdict will be reduced by $400 million.  Significantly, that is the *minimum* credit to which Nacchio and Woodruff are entitled.  Under Section 21D-4(f)(7)(B)(ii) of the Exchange Act, Nacchio's and Woodruff's liability can be further reduced by an amount corresponding to the "percentage responsibility" of any or all of the Settling Defendants for the verdict or judgment that is awarded against them.  This statutory grant provides a considerable benefit to Nacchio and Woodruff, and is a significant factor to be considered in assessing the overall fairness of the Settlement. For example, if a judgment of $300 million was entered against Nacchio and Woodruff, the judgment credit they will receive as a result of this settlement would eliminate that liability entirely.  If a verdict were entered for $450 million, by contrast, they would – regardless of the proof at trial -- receive an automatic credit of $400 million against that liability and would be responsible for only $50 million of the judgment.  Furthermore, if they proved at trial that some or all of the Settling Defendants were responsible for 95% of the $450 million damages on the claims on which the verdict or judgment were entered against them, Nacchio and Woodruff would be responsible for only 5% of the resulting damage, or $22.5 million.

relating to, or arising out of the Released Claims."[6]  Nacchio and Woodruff are wrong on both scores.

The statutory language of the PSLRA is a not talismanic script, and Nacchio and Woodruff cite no authority to suggest that any PSLRA bar that is entered by the Court must parrot the terms of the statute.  In fact, the case law is decidedly to the contrary. Courts commonly approve settlement bars and releases that not only protect the parties before the court – in this case the "covered persons" – but also their "related parties." Examples can be found in numerous class action securities settlements approved by courts after enactment of the PSLRA.  For example, in *In re Rite Aid Corp. Sec. Litig.,* the court approved a reform act bar order nearly identical to the one proposed for approval in this case:

> Thus, by its plain language, this statutory provision supports, and indeed *requires,* our entry of an order barring contribution claims both by and against "settling covered persons."  As quoted above, paragraph 9 of the proposed Bar Order explicitly achieves this end, as it bars contribution claims by the Non-Settling Defendants or the Settling Defendants against the Released Parties, and also bars contribution claims by the Released Parties against the Non-Settling Defendants.  We therefore conclude that, with respect to the types of claims barred, the Reform Act Bar Order is proper under the PSLRA's requirements.

146 F. Supp.2d at 726 (emphasis supplied).[7]  As in *Rite Aid,* the Reform Act Bar Order in the Stipulation and Proposed Judgment bars contribution claims between the

---

[6] It is undisputed that each of the Settling Defendants is a "covered person" under the PSLRA amendments to the Exchange Act.

[7] The final order approving the *Rite Aid* settlement contained a Reform Act Bar Order identical to the one proposed in this case.

Released Parties and the Non-Settling Defendants.  *See also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 381-82 (E.D. Pa. 2000) (approving a settlement that required entry of a order barring future claims for contribution against "Cogen or any of the Released Parties," and explicitly holding that Cogen, although admittedly not a "covered person" for purposes of the PSLRA's contribution bar provision, is "[n]onetheless . . . entitled to a bar order against contribution claims arising out of this action"); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 661 n.11, 669 (E.D. Va. 2001) (relying on the PSLRA contribution bar provision as support for the approval of a settlement requiring entry of an order barring future claims for contribution or indemnification against "any of the Settling Defendants or the Released Parties"). Similarly, this Court's order approving settlement of the class action litigation in *Rasner v. Vari-L Company, Inc.* released all "Released Persons," which included the "Related Parties" of the settling defendants in that case.  *See Rasner v. Vari-L Company, Inc.*, Civ. A. No. 00-CV-1181-REB-CBS, Docket No. 104 (D. Colo. Mar. 28, 2003) (Final Judgment And Order Of Dismissal With Prejudice), at ¶¶ 1, 7 & 8.; *Id.*, Docket No. 87 (D. Colo. Jan. 23, 2003) (Stipulation Of Settlement).[8]

Courts have ordered these types of protections for the simple reason that, without them, settlements will not occur.  *See In re United States Oil & Gas Litig.,* 967 F.2d at 494 ("Defendants buy little peace through settlement unless they are assured

---

[8] The Court's Final Judgment and Order in *Vari-L*, as well as relevant portions of the Stipulation of Settlement it incorporates, are attached hereto as Exhibits C-1 and C-2, respectively.

that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution or other causes related to the underlying litigation."). Thus, there is no question that the Reform Act Bar Order properly reaches both the Non-Settling Defendants and the Released Persons.

Nacchio and Woodruff also argue that the Reform Act Bar Order sweeps too broadly in another respect – they contend that it impermissibly applies to all contribution claims "based upon, relating to, or arising out of the Released Claims." Of course, Nacchio and Woodruff are each beneficiaries of the Reform Act Bar Order in the Proposed Judgment. That provision bars the Released Persons from asserting contribution claims *against Nacchio and Woodruff* that are "based upon, relating to, or arising out of the Released Claims" as well. By virtue of this provision, the Proposed Judgment provides the essential mutuality that courts have recognized as the touchstone of fairness in cases such as these. *See, e.g.*, *Gerber v. MTC Electronic Technologies Co., Ltd.*, 329 F.3d 297, 309 (2d Cir. 2003) ("Under the mutual rule, . . . the non-settling defendants obtain a potential windfall if the settling defendants settle for more than their proportionate share of the harm, because the non-settling defendants' judgment credit is the *greater* of the settlement amount or the settling defendants' proven proportionate share of liability under the one satisfaction rule"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d at 730 ("[W]e find it proper that to the extent the Non-Settling Defendants are barred from bringing related actions against the Released Parties, part of the consideration for this bar must, for reasons of fairness, be a similar bar to claims against the Non-Settling Defendants by the Released Parties.").

Moreover, as discussed above, the scope of the Reform Act Bar Order is consistent with releases and bar orders approved by this Court and others following the enactment of the PSLRA.  S*ee, e.g., In re Global Crossing Sec. Litig.,* No. 02 Civ. 910 (GEL), 2005 WL 1668532, at *2 (S.D.N.Y. Jul. 12, 2005) (attached hereto as Exhibit D) (rejecting an objection to scope of settlement release and bar order that extended to "all claims of every nature and description, known and unknown, arising out of or relating to any Investment Decision in Global Crossing Securities"); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2004 WL 2591402, at *6; *12-13 (S.D.N.Y. Nov. 12, 2004) (attached hereto as Exhibit E) (rejecting objection to scope of settlement release and bar extending to "all claims of every nature and description, known and unknown, arising out of or relating to investments . . .  in securities issued by WorldCom").[9]

In sum, the Reform Act Bar Order in the Proposed Judgment is consistent with, and required by, Section 21-D of the Exchange Act.  Nacchio's and Woodruff's objections to that provision should be rejected.

## B. <u>The Complete Bar Order</u>

Whereas the Reform Act Bar Order in the Proposed Judgment addresses claims for contribution, the Complete Bar Order will preclude the Released Persons and Non-Settling Defendants from asserting any claim against one another "based upon, arising out of, or relating to the Released Claims."  Like the Reform Act Bar Order, the

---

[9] Similar bar language was common prior to the PSLRA as well. *See, e.g.*, *Alvarado Partners*, 723 F. Supp. at 548 (considering and approving bar order addressed to claims that "arise out of, are based upon, or are otherwise related to the Settled Claims, including but not limited to claims for contribution and/or indemnification").

Complete Bar Order is mutual in nature:  it precludes the Released Persons from asserting the same kinds of claims against Nacchio and Woodruff that Nacchio and Woodruff are precluded from asserting against the Released Persons.[10]

At bottom, Nacchio's and Woodruff's objection to the Complete Bar Order is based on their contention that Qwest is required to indemnify them for their potential *personal* liabilities in this case.  As discussed below, however, the proposed Complete Bar Order is particularly appropriate as federal case-law precludes the very indemnification to which they claim entitlement.

Nacchio and Woodruff initially suggest that an early amendment to the bill that became the PSLRA, which removed a reference to indemnity, indicates that Congress intended to prohibit settlement bar orders that address indemnification rights.  *See* Opp. at 8-9 and n.6 thereof. [11]  In fact, all authority is to the contrary.  As the court noted in *Lucas v. Hackett Associates, Inc.,* 18 F. Supp. 2d 531 (E.D. Pa. 1998), the logical reason for Congress' omission of reference to indemnification in the PSLRA is simply

---

[10] Nacchio and Woodruff also complain that the bar order appears to extend to "several other pending cases brought by different plaintiffs" in other "factually 'related' present or future cases."  *See* Opp. at 3, 15. This is simply mistaken.  The Stipulation specifically provides that the bar order provisions do not apply to claims asserted by Persons who exclude themselves from this settlement. *See* Stip, ¶12.1(a).

[11] Nacchio's and Woodruff's argument rests entirely on a stray comment made by Congressman Fields during the initial stages of the bill.  *See* Opp. at 9, n.6. However, the Supreme Court has cautioned that such isolated comments are entitled no weight in statutory interpretation.  *See Garcia v. United States*, 469 U.S. 70, 76 (1984) ("We have eschewed reliance on the passing comments of one Member, and casual comments from the floor debates.") (citation omitted); *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 395-96 (1951) ("Resort to legislative history is only justified when the face of the Act is inescapably ambiguous.").

that there is no express or implied right to indemnification under the federal securities

laws.  *Id.* at 535.  Thus, there was nothing for Congress to address.  Additionally, a

number of courts have specifically concluded that Congress' enactment of a contribution

bar in the PSLRA does not preclude judicial recognition of other bar remedies.  In *In re*

*Rite Aid Corp. Sec. Litig.,* for example, the court stated:  "We do not read §78u-4 as

attempting exhaustively to detail each and every action that a district court is permitted

to perform in conjunction with a securities action settlement and thereby to forbid all

other actions."  146 F. Supp. 2d at 727, n.29.  Similarly, the court in *Wisconsin*

*Investment Board v. Ruttenberg*, 300 F. Supp. 2d 1210 (N.D. Ala. 2004), observed that

the PSLRA "does not address the propriety of a bar order precluding non-contribution

claims."  *Id.* at 1216-17.  The court went on to observe that the PSLRA's contribution

bar does not "divest[] a court of its discretionary authority to enter a bar order broader in

scope than the statutory model."  *Id.* at 1217.[12]

Although rights of *contribution* for federal securities law violations are recognized

both expressly by statute[13] and by implication,[14] rights of indemnification are not.

_____

[12] Congress is presumed to be aware of judicial interpretations of its statutes and to
adopt those interpretations when it amends a statute without change.  *See Merrill
Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 381-82 & n.66 (1982).  In
this instance, Congress must be presumed to have been aware of the extensive body of
law, discussed below, that holds that federal policy precludes indemnification for
violations of the federal securities laws, and to have endorsed that body of law by
enacting the PSLRA, which stands silent on the issue in the face of that overwhelming
judicial precedent.

[13] *See, e.g.,* 15 U.S.C. § 77(f) (providing an express right of contribution under Section
11 of the Securities Act of 1933).

Indeed, "Courts have rejected indemnity for a variety of securities violations because indemnity contravened 'the public policy enunciated by the federal securities laws.'" *First Golden Bancorporation v. Weiszmann*, 942 F.2d 726, 728 (10th Cir. 1991) (citations omitted) (no indemnification for violation of Section 16(b) of the Exchange Act "even though [that statute] does not require proof of fraudulent intent"); *see also King v. Gibbs*, 876 F.2d 1275, 1281-82 (7th Cir. 1989) (no implied right to indemnification for Section 10(b) liability under the Exchange Act or federal common law); *Stewart v. American Int'l Oil & Gas Co.,* 845 F.2d 196, 200 (9th Cir. 1988) (citations omitted) ("Indemnity is unavailable under the federal securities laws."); *Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir. 1980) (dismissing underwriters' claims against settling defendants for indemnification of Exchange Act liabilities); *Odette v. Shearson, Hammil & Co.,* 394 F. Supp. 946, 954 (S.D.N.Y. 1975) (public policy prohibits indemnification for violation of § 12(2) of the Exchange Act); *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir. 1989) (Maryland state statute recognizing a right of indemnification is preempted by the federal securities laws).

For this reason, courts approving partial settlements in securities class actions have not hesitated to impose bars against indemnification claims.  As Judge Babcock of this Court explained in *Alvarado Partners,* "in order to ensure that no party shirks its

---

[14] *See, e.g., Musick, Peeler & Garrett v. Employers Ins. of Wasau,* 508 U.S. 286, 297 (1993) (recognizing an implied right of contribution for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Exchange Act Rule 10-b5, 17 C.F.R. § 240.10b-5).

responsibility under federal securities laws and to preserve the deterrent effect of those laws, courts refuse to enforce claims for indemnification created by contract." 723 F. Supp. at 553-554; *see also Eichenholtz,* 52 F.3d at 484-86 (approving class action settlement that extinguished underwriters' contractual indemnification rights against settling issuer); *United States Oil & Gas Litig.,* 967 F.2d at 495 (affirming a settlement bar against indemnification claims, in part because indemnification claims are not cognizable under the federal securities laws); *Franklin*, 884 F.2d at 1232 (approving partial settlement that included bar on auditor's contractual indemnity rights, noting that "[w]e previously have held that such clauses are invalid because they are against the policy of section 77k(f)"); *Neuberger*, 110 F. Supp. 2d at 383 (citations omitted) (state law claims arising out of alleged liability under the securities laws "are pre-empted and, therefore, barred as a matter of law").

In the face of this substantial authority, Nacchio and Woodruff mistakenly argue that the Tenth Circuit's pre-PSLRA decision in *TGB, Inc. v. Bendis,* 36 F.3d 916 (10th Cir. 1994) precludes the bar orders proposed in the Stipulation and Proposed Judgment. This is wrong. *Bendis* primarily considered whether a *pro tanto* credit against future liabilities of the non-settling parties would allow the court to bar such claims as a part of implementing a partial settlement. 36 F.3d at 923. Thus, *Bendis* was one of a number of decisions that debated the relative merits of different measures of judgment credits to be provided non-settling parties. *See, e.g.*, *South Carolina National Bank v. Stone,* 749 F. Supp. 1419, 1431 (D.S.C. 1990) (surveying the different approaches adopted prior to enactment of the PSLRA). That debate was mooted by the

15

enactment of the PSLRA, which now specifies that non-settling defendants are to receive the benefit of the greater of a *pro tanto* credit for the settlement amount paid or a reduction in liability corresponding to proportional fault.

Furthermore, *Bendis* cited approvingly the Eleventh Circuit's decision in *In re United States Oil & Gas Litig.* and this Court's decision in *Alvarado Partners*, both of which held that settlement bars precluding indemnification claims are permissible because indemnification is not available under federal securities laws.  Indeed, *Bendis* relied on those two decisions as support for the broader proposition that the federal courts can extinguish a broader range of state law claims:  "Besides contribution and indemnity claims, these include any claims in which the injury is the nonsettling defendant's liability to the plaintiff."  *Bendis*, 36 F.3d at 928, citing *In re U.S. Oil & Gas Litig.*, 967 F.2d at 495-96, and *Alvarado Partners,* 723 F. Supp. at 554.[15]

Put simply, the "indemnification right" to which Nacchio and Woodruff claim entitlement does not exist under federal law. Courts have, therefore, routinely and properly entered bar orders precluding such claims in partial securities class action settlements.[16]  A contrary rule will have a deleterious effect on the ability of parties to

------

[15] *Bendis* closely tracks the standard articulated in *Alvarado Partners*, which indicated that "to the extent non-settling defendants seek damages for breach of warranty, breach of contract, fraud and negligent misrepresentation, measured by its liability for violation of the Securities and Exchange Acts, such claims may be extinguished."  *Alvarado Partners*, 723 F. Supp. at 554 (citation omitted).

[16] Since Nacchio and Woodruff have no rights to indemnification for any alleged violation of the federal securities laws, their argument that the Partial Settlement "confiscates" or "misappropriates" such claims "without adequate compensation" makes

settle securities cases, thus frustrating the substantial federal policy favoring settlement.

*Eichenholtz*, 52 F.3d at 486 ("In general, the settlement of complex litigation before trial

is favored by the federal courts"); *Franklin,* 884 F.2d at 1229 ("[I]t hardly seems

necessary to point out that there is an overriding public interest in settling and quieting

litigation.  This is particularly true in class action suits.") (quoting *Van Bronkhorst v.*

*Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.1976)); *Alvarado Partners*, 723 F Supp. at

550-51 ("Federal courts have long recognized the public policy in favor of the settlement

of complex securities actions.").  This Court should reject Nacchio's and Woodruff's

challenges to the Complete Bar Order provisions in the Proposed Judgment.

## C.  The Contractual Provisions of Paragraphs 13 and 14

Paragraphs 13 and 14 of the Proposed Judgment – additional provisions that

Nacchio and Woodruff attack – stand on an entirely different footing than the Reform

Act Bar Order and the Complete Bar Order.  Whereas the Reform Act Bar Order and

the Complete Bar Order in Paragraphs 11 and 12 of the Proposed Judgment call for the

Court to exercise its power to impose limitations on specified, future litigation activities,

the Contractual Provisions set forth in Paragraphs 13 and 14 of the Proposed Judgment

only require that the Court incorporate the independent agreements reached between

Lead Plaintiffs (and the Class they represent) and the Settling Defendants.[17]  Those

---

no sense.  In any event, if compensation is one measure to be considered here, the
$400 million judgment reduction will provide more than adequate compensation.

[17] The Contractual Provisions (Proposed Judgment ¶¶ 13 and 14) provide the Settling
Defendants key protections against possible uncertainties related to the scope or
enforceability of the Complete Bar Order.  Thus, even if the Court includes the

agreements ensure that Qwest and the other Released Persons will not be called upon to pay additional monies in connection with Nacchio's and Woodruff's potential, personal liabilities to Lead Plaintiffs and the Class they represent.

Paragraph 13 of the Proposed Order is a contractual judgment and settlement reduction provision. In Paragraph 13, Lead Plaintiffs commit – on their own behalf and on behalf of the Class – to reduce or credit any settlement or judgment obtained against Nacchio or Woodruff to the extent that Qwest or any of the other Released Persons would be required to reimburse Nacchio or Woodruff. Paragraph 14 complements Paragraph 13, requiring that any settlement between Lead Plaintiffs and Nacchio or Woodruff be accompanied by mutual releases between Nacchio or Woodruff, on the one hand, and the Settling Defendants, on the other. This provision ensures that Nacchio and Woodruff cannot settle their personal liabilities and then claim that Qwest is liable for those monies.

By assuring that the Class will not recover a judgment or settlement from Nacchio or Woodruff that those defendants could then seek to recover from Qwest and the other Released Persons, Paragraph 13 limits the claims the Class will pursue

---

Complete Bar Order (Proposed Judgment ¶ 12) in its final judgment, it should include the Contractual Provisions of Paragraphs 13 and 14 as well. If, on the other hand, the Court declines to issue a final order containing the Complete Bar Order, the Contractual Provisions in Paragraphs 13 and 14 of the Proposed Judgment are all the more important, since they alone would provide the Settling Defendants independent protections against unknown future liabilities related to Nacchio's and Woodruff's personal liabilities to Lead Plaintiffs and the Class they represent should the Settling Defendants elect to proceed with the Settlement. Thus, the Contractual Provisions at Paragraphs 13 and 14 of the Proposed Judgment should be reflected in any order the Court issues.

against Nacchio and Woodruff – *i.e.*, Paragraph 13 eliminates any incentive for the Class to pursue claims for which Nacchio or Woodruff might seek reimbursement from Qwest. Contrary to their arguments, this provision actually *benefits* Nacchio and Woodruff, and similar provisions have been approved on that basis. Indeed, as one district court observed in approving a similar reduction provision as part of a partial settlement of a medical products class action case:

> [T]he set-off and reduction provisions protect the interests of the non-settling defendants. The set off and reduction provisions assure that the non-settling defendants will pay no more than they would have paid had they been able to seek contribution or indemnity.

*In re Orthopedic Bone Screw Products Liability Litig.*, 176 F.R.D. 158, 182 (E.D. Pa. 1997), *accord Neuberger*, 110 F. Supp. 2d at 383 (agreement protects non-settling defendants by assuring that they will not be vulnerable to subsequent exposure); *In re Diet Drugs Prod. Liab. Litig.*, Nos. 1203, 99-20593, 2000 WL 1222042, at *65 (E.D. Pa. Aug 28, 2000) (attached hereto as Exhibit F) (approving agreement patterned on one approved in *Orthopedic Bone*).

Paragraph 14, a logical complement to Paragraph 13, simply assures the Settling Defendants that their rights will not be compromised by future settlements that lack appropriate releases. The alarmist rhetoric of Nacchio and Woodruff notwithstanding, these provisions neither prevent future settlements between the Non-Settling Defendants and the Class nor preclude the Settling Defendants from accepting releases incident to those settlements as "satisfactory." The provisions merely require Nacchio and Woodruff to settle their *personal* liabilities with their own money rather than with Qwest's.

19

Significantly, the reduction and release provisions of Paragraphs 13 and 14 are consistent with the kinds of "private alternatives" the Tenth Circuit suggested parties consider when questions exist regarding the scope of protections settling parties might obtain through judicial bar orders.  *See Bendis*, 36 F.3d at 925; *see also Lucas,* 18 F. Supp. 2d at 537 (suggesting that private agreements, such as an agreement by plaintiffs to indemnify settling defendants for any judgment obtained against non-settling defendants, might supplement judicial bar orders); *In re Del-Val Fin. Corp. Sec. Litig.*, 868 F. Supp. 547, 558 (S.D.N.Y. 1994) (same); *Resolution Trust Corp. v. Evans*, Civ. A. No. 92-0756, 1993 WL 354796 at *1-2 (E.D. La. Sept. 3, 1993) (attached hereto as Exhibit G) (approving settlement containing plaintiffs' judgment reduction agreement).

The Contractual Provisions of Paragraphs 13 and 14 of the Proposed Judgment reflect concessions for which the Settling Defendants bargained and that the Lead Plaintiffs accepted as part of a total settlement they considered to be in the best interests of the Class.  These Contractual Provisions should be reflected in the Court's order to emphasize that they are binding on the Class as well as their representatives.

### III.    CONCLUSION

Nacchio's and Woodruff's objections notwithstanding, the Stipulation and Proposed Judgment are fair, reasonable, and adequate.  Therefore, Qwest respectfully submits that the objections be rejected and that the settlement be approved.

DATED:      April 28, 2006                    Respectfully submitted,

                                              _/s/ Alfred P. Levitt_____
                                              Jonathan D. Schiller
                                              David R. Boyd
                                              Alfred P. Levitt
                                              Kenneth F. Rossman IV
                                              BOIES, SCHILLER & FLEXNER LLP
                                              5301 Wisconsin Avenue, N.W.
                                              Washington, DC 20015
                                              Telephone: (202) 237-2727
                                              Facsimile: (202) 237-6131

                                              Terence C. Gill
                                              SHERMAN & HOWARD L.L.C.
                                              633 Seventeenth Street, Suite 300
                                              Denver, CO 80202
                                              Telephone: (303) 297-2900
                                              Facsimile: (303) 298-0940

                                              **Counsel for Qwest Communications
                                              International Inc.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of April, 2006, a copy of the foregoing **REPLY OF QWEST COMMUNICATIONS INTERNATIONAL INC. TO OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT** was electronically filed with the Clerk of the Court using the **USDC CM/ECF** system, which will send notification of such filing to the following e-mail addresses:

| | | |
|---|---|---|
| X. Jay Alvarez | JayA@lerachlaw.com | Counsel for Lead Plaintiffs |
| Timothy G. Atkeson | tim_atkeson@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| Michael J. Barry | mbarry@gelaw.com<br>mhartman@gelaw.com<br>gfpulver@handf.com | Counsel for Plaintiff Stichting Pensioenfonds ABP |
| Terry W. Bird | twb@birdmarella.com | Counsel for Defendant Szeliga |
| Jessica Brody | jessica_brody@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| Spencer A. Burkholz | spenceb@lerachlaw.com<br>e_file_sd@lerachlaw.com | Counsel for Lead Plaintiffs |
| John K. Carroll | john.carroll@cliffordchance.com | Counsel for Defendant Woodruff |
| Kwame A. Clement | kwame_clement@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| David L. Cook | david.cook@cliffordchance.com | Counsel for Defendant Woodruff |
| Jennifer L. Coon | jlc@birdmarella.com<br>ehd@birdmarella.com | Counsel for Defendant Szeliga |

22

| | | |
|---|---|---|
| Michael J. Dowd | miked@lerachlaw.com | Counsel for Lead Plaintiffs |
| Mark T. Drooks | mtd@birdmarella.com shg@birdmarella.com | Counsel for Defendant Szeliga |
| Stephanie E. Dunn | sdunn@perkinscoie.com sdunn-efile@perkinscoie.com | Counsel for Defendant Smith |
| Thomas E. Egler | tome@lerachlaw.com heatherh@lerachlaw.com | Counsel for Lead Plaintiffs |
| Kevin D. Evans | kdevans@s-elaw.com; tbaksay@s-elaw.com | Counsel for Defendant J. Kozlowski in the SEC matter |
| Clyde A. Faatz, Jr. | cafaatz@handf.com | Local Counsel for Plaintiff Stichting Pensioenfonds ABP |
| Christopher J. W. Forrest | cjforrest@handf.com gfpulver@handf.com kjscholet@handf.com | Local Counsel for Plaintiff Stichting Pensioenfonds ABP |
| John A. Freedman | john_freedman@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| Walter W. Garnsey, Jr. | wgarnsey@khgk.com smiller@khgk.com | Counsel for Defendant Casey |
| Terence C. Gill | tgill@sah.com | Counsel for Defendant Qwest Communications Int. Inc. |
| Marcy M. Heronimus | mheronim@sah.com peckman@sah.com | Counsel for Defendant Qwest Communications Int. Inc. |
| | | |

23

| Michael J. Hofmann | mhofmann@hro.com | Counsel for Defendants Anschutz & Slater |
| Kevin B. Huff | khuff@khhte.com<br>jbartlow@khhte.com | Counsel for Defendants Anschutz & Slater |
| Shelby Hunt | shelby_hunt@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| Gary M. Kramer | gkramer@bw-legal.com | Counsel for M. Schumacher |
| William J. Leone | william.leone@usdoj.gov<br>USACO.ECFCivil@usdoj.gov;<br>dorothy.burwell@usdoj.gov | United States Attorney; Intervenor Plaintiff |
| Vincent J. Marella | ehd@birdmarella.com | Counsel for Defendant Szeliga |
| David Meister | david.meister@cliffordchance.com | Counsel for Defendant Woodruff |
| James D. Miller | james.miller@cliffordchance.com | Counsel for Defendant Woodruff |
| Robert N. Miller | rmiller@perkinscoie.com | Counsel for Defendant Smith |
| Barbara C. Moses | bmoses@magislaw.com<br>jlaing@magislaw.com | Counsel for Defendant Mohebbi |
| Edward S. Nathan | enathan@sgklaw.com<br>lspecter@sgklaw.com | Counsel for Defendant Nacchio |
| James E. Nesland | neslandje@cooley.com<br>foutsdl@cooley.com<br>inghramjl@cooley.com | Counsel for Defendant Tempest |
| Sharan Nirmul | snirmul@gelaw.com<br>jdchaney@gelaw.com | Counsel for Plaintiff Stichting Pensioenfonds ABP |

| Robin L. Nolan | rnolan@handf.com<br>gfpulver@handf.com<br>kjscholet@handf.com | Local Counsel for Plaintiff Stichting Pensioenfonds ABP |
|---|---|---|
| Elissa J. Preheim | elissa.preheim@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| Kimberly W. Price | kimberly.wolf@cliffordchance.com | Counsel for Defendant Woodruff |
| Thomas V. Reichert | tvr@birdmarella.com | Counsel for Defendant Szeliga |
| John M. Richilano | jmr@rglawoffice.net<br>gmiller@rglawoffice.net | Local Counsel for Defendant Nacchio |
| Eric T. Rillorta | eric_rillorta@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| Ashley Rupp | arupp@magislaw.com | Counsel for Defendant Mohebbi |
| Scott Saham | scotts@lerachlaw.com | Counsel for Lead Plaintiffs |
| Scott Schreiber | scott_schreiber@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |
| Paul H. Schwartz | schwartzph@cooley.com<br>vrush@cooley.com<br>colitigation@cooley.com<br>inghramjl@cooley.com | Counsel for Defendant Tempest |
| David L. Schwarz | dschwarz@khhte.com | Counsel for Defendants Anschutz & Slater |
| Joel M. Silverstein | jsilverstein@sgklaw.com | Counsel for Defendant Nacchio |
| Jeffrey A. Smith | jsmith1@cooley.com<br>foutsdl@cooley.com<br>inghramjl@cooley.com | Counsel for Defendant Tempest |
| Jeffrey Speiser | jspeiser@sgklaw.com | Counsel for Defendant Nacchio |

| Herbert J. Stern | dpenna@sgklaw.com | Counsel for Defendant Nacchio |
|---|---|---|
| Jesus M. Vazquez, Jr. | jvavquez@rothgerber.com<br>tsonnenfeld@rothgerber.com | Counsel for Alvarado, Haines, Hellman, & Stephens |
| James G. Waller | gregwaller@andrewskurth.com<br>amyprasad@akllp.com<br>kpiccolo@akllp.com | Counsel for Defendant Casey |

and, I also certify that I have served same by depositing in the U.S. Mail, first-class postage prepaid, addressed to the following:

William M. Rogers
606 S. Military Trail
Deerfield Beach, FL 33442
**Plaintiff in Rogers, Mylett Matter**

Joe R. Whatley, Jr.
Glen Connor
**Whatley Drake, LLC**
2323 Second Avenue North
Birmingham, AL 35202
**Counsel for Plaintiff in ERISA matter**
Phone: 205.328.9576
Fax: 205.328.9669
jwhatley@whatleydrake.com
gconnor@whatleydrake.com

C. Mylett
PO Box 1031
Coleman, FL 33521
**Plaintiff in Rogers, Mylett Matter**

/s/ Jed Donaldson
Jed Donaldson