**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 01-cv-1451-REB-PAC

(Consolidated with Civil Action Nos. 01-cv-1472-REB-CBS, 01-cv-1527-REB-CBS, 01-cv-1616-REB-CBS, 01-cv-1799-REB-CBS, 01-cv-1930-REB-CBS, 01-cv-2083-REB-CBS, 02-cv-0333-REB-CBS, 02-cv-0374-REB-CBS, 02-cv-0507-REB-CBS, 02-cv-0658-REB-CBS, 02-cv-755-REB-CBS, 02-cv-798-REB-CBS, AND 04-cv-0238-REB-CBS)

In re: QWEST COMMUNICATIONS INTERNATIONAL INC. SECURITIES LITIGATION

**SUPPLEMENTAL BRIEF OF DEFENDANTS NACCHIO AND WOODRUFF
OPPOSING FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT[1]**

In their brief opposing final approval of the proposed class action settlement (Doc. 958 ("Opposing Brief")), defendants Nacchio and Woodruff demonstrated that the proposed settlement should be rejected because, *inter alia*, (1) as former officers and directors of Qwest, they are entitled to corporate indemnification under Qwest's bylaws, Delaware law, and their separate employment, severance, and other agreements with Qwest (Ob 2 n.1 and accompanying text; Ob 11-13);[2] (2) since they had not admitted or been adjudicated to have committed any securities violations, neither public policy nor federal preemption precludes them from attempting to settle this and other related pending actions and obtaining indemnification from Qwest for the settlement amounts (Ob 12-13 n.9 and accompanying

---

[1] Pursuant to D.C.COLO.LCivR 7.1(A), counsel for nonsettlers Nacchio and Woodruff conferred regarding the filing of this Supplemental Brief with counsel for Lead Plaintiffs and for Qwest, who informed them that they do not object to the nonsettlers filing, on or before May 12, 2006, of a supplemental brief of no more than 10 pages.

[2] References to the following abbreviations followed by a number are to the pages of following submissions on plaintiffs' motion for final approval of the proposed class action settlement: "Pm" – Lead Plaintiffs' 2/27/2006 Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds (Doc. 928); "Ob" – 3/22/2006 Brief of Defendants Nacchio and Woodruff In Opposition to Final Approval of Partial Class Action Settlement (Doc. 958); "Pr" – 4/28/2006 Reply Brief in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (Doc. 984); and "Qr" – 4/28/2006 Reply of Qwest Communications International Inc. to Objections to Final Approval of Settlement (Doc. 982-1).

text); and (3) in violation of the applicable federal and state statutes and caselaw, each of §§ 12, 13, and 14 of the proposed Partial Final Judgment and Order of Partial Dismissal with Prejudice (Doc. 888) effectively confiscates these colorable, unadjudicated claims for corporate indemnification without protecting their value to the nonsettlers (Ob 3-4, 6-10, 13-14, 17-18).

In their replies, neither plaintiffs nor Qwest offer any genuine factual or legal challenge to this *prima facia* demonstration that the unlawfullness of the challenged provisions of the Proposed Judgment requires disapproval of the proposed partial settlement. Indeed, because the pertinent law and the very terms of these provisions plainly condemn them, plaintiffs and Qwest are reduced to defending them based on mischaracterizations of their purpose and effect and of the procedural and substantive law governing this motion.[3]

---

[3] Except for the following three observations, we rest on Point II of our Opposing Brief as to the issues there discussed. *See* Ob 17-25. <u>First</u>, plaintiffs' reply to our arguments proceed from their false assumption that the Court's inquiry on this motion "is *not* the fairness of the settlement to the Non-Settling Defendants; but *instead* is directed to whether the settlement is fair, reasonable and adequate to absent Class Members" (Pr 34) (emphasis added), and that the Court should, therefore, unquestioningly "respect th[e] strategic decision of the Lead Plaintiffs" to exclude Nacchio and Woodruff from the proposed settlement (Pr 34). The law is clear, however, that the Court must, indeed, consider the fairness of the proposed settlement to the nonsettlers (*see* Ob 4), and, in addition, assure itself that the settlement is not infected with collusion among the settlers (*Alverado Partners. v. Mehta*, 723 F.Supp. 540, 545-47 (D.Colo. 1989). <u>Second</u>, proceeding from their false assumption, plaintiffs still refuse to explain the proposed settlement's exclusion of Nacchio and Woodruff, but inclusion of several settling defendants (1) who are charged with the same misconduct and with reaping comparable or greater unlawful proceeds and (2) against whom plaintiffs claim to have "developed sufficient evidence" to prove their claims at trial (Doc. 928, p. 9). Perhaps most notably, Lead Counsel suggest that the government's indictment of Nacchio on charges of insider trading justify his exclusion from the settlement (Pr 34-35), without offering any explanation as to their inclusion in the settlement of defendant Szeliga, who was not only indicted on such charge, but pled guilty. <u>Finally</u>, on reply, neither plaintiffs nor Qwest offer any evidence to refute the declarations of Scott Himes (Ob Ex. F) and David Meister (Ob Ex. G) as to the exclusion of Nacchio and Woodruff and their counsel from the negotiation of the proposed settlement. Plaintiffs' unsupported arguments in their brief, falsely suggesting that they genuinely tried, but failed, to negotiate with Nacchio's and Woodruff's counsel for their clients' inclusion in the proposed settlement (Pr 33-34), are of no probative value, and should be disregarded.

I. **NEITHER THE POLICY FAVORING SETTLEMENTS NOR THE BAR AGAINST INDEMNIFICATION FOR ADJUDICATED SECURITIES VIOLATIONS PERMITS THE SETTLERS TO CONFISCATE THE NONSETTLERS' STATUTORY AND CONTRACTUAL STATE LAW RIGHTS AS FORMER QWEST OFFICERS TO SETTLE THIS CASE AT QWEST'S EXPENSE**

The settlers do not deny that §§ 11-14 of the Proposed Judgment would forever bar Nacchio and Woodruff from exercising their contractual and statutory rights as former officers and directors of Qwest to settle this case and obtain indemnification from Qwest for the amount paid in settlement.[4]   Rather, Qwest argues that the Court is free to permanently extinguish those rights without protecting their value to the nonsettlers because (A) "federal case-law precludes the very indemnification to which [Nacchio and Woodruff] claim entitlement" (Qr 12, 13-17); and (B) doing so is necessary in order to promote settlements of class actions (Qr 4-5, 9-10). As we will show, neither argument withstands scrutiny.

**A. While Indemnification Against *Adjudicated Liability* Under The Securities Laws Is Contrary to Public Policy, Indemnification For Amounts Paid To Settle Without Any Adjudication Or Admission Of Liability Is Not**

*None* of the cases cited by Qwest supports its assertion that "federal case-law precludes the very indemnification to which [Nacchio and Woodruff] claim entitlement." *At most*, those cases barred indemnification for *adjudicated liability* under the securities laws. More specifically, they either: (1) barred indemnification claims by persons *already adjudicated to have violated the securities laws*;[5] (2) barred indemnification cross-claims

---

[4] *See, e.g.,* Qr 19, explaining that these provisions "require Nacchio and Woodruff to settle their *personal* liabilities with their own money rather than Qwest's" (emphasis in original), notwithstanding that protecting corporate officers and directors against their "personal" liabilities is, of course, precisely the purpose of corporate indemnification under Delaware law.  *See* Ob 11-12.

[5] *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1102-03, 1108 (4th Cir. 1989) (barring indemnification in favor of "a securities wrongdoer" whose liability under Sec. 12(2) of the Securities Act of 1933 had already been "plainly adjudicated" by a "federal jury").

3

or third party claims seeking as damages any amount *for which the claimant is found liable to the plaintiff under the securities laws*;[6] or (3) merely held that there is no express or implied right of indemnification *under the securities laws.*[7]

The caselaw Qwest cites has nothing to do with the indemnification claims Nacchio and Woodruff posit here: claims requiring Qwest to honor its contracts and bylaws by indemnifying Nacchio and Woodruff, as former officers and directors of Qwest, for amounts they may pay *to settle* this or related cases *without any adjudication or admission of liability under the securities laws.*  The damages for *such* indemnification claims are measured not by the claimants' *liability* to the plaintiffs, as in the cases Qwest cites, but rather by *the negotiated settlement amount* – a multifaceted compromise with the plaintiffs that reflects *no* adjudication or admission of liability.[8]  As demonstrated in our

---

[6] *First Golden Bancorporation v. Weiszmann*, 942 F.2d 726, 728-29 (10th Cir. 1991); *Alvarado Ptnrs, LP v. Mehta*, 723 F. Supp. 540, 549, 553-54 (D. Colo. 1989) (a "state claim under an indemnification agreement…may be extinguished," but only to the extent that it is "coextensive with a federal indemnification claim," a "federal indemnification claim" being one asserted by "*a securities wrongdoer… found liable for the breach of a statutory obligation*" seeking damages "measured by [the claimant's] liability for violation of the Securities and Exchange Acts.") (emphasis added);*Stewart v. Amer. Int'l Oil & Gas Co.,* 845 F.2d 196, 199-200 (9th Cir. 1988); *Laventhol, Krekstein, Horwath & Horwath v. Horwitch,* 637 F.2d 672, 676 (9th Cir. 1980); *Odette v. Shearson, Hammil & Co.,* 394 F. Supp. 946, 949, 953-957 (S.D.N.Y. 1975); *Eichenholtz v. Brennan*, 52 F.3d 478, 481 (3d Cir. 1995) (approving an order barring only those indemnification claims asserted by the non-settling defendants against the settling defendants that were "based on liability on any of the settled claims"); *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 495-96 (11th Cir. 1992) (barring a cross-claim for indemnification that "was largely an attempt to seek indemnity… for the federal securities law violations alleged against" the claimant, and which specifically sought damages "to the extent that [the claimant] [wa]s liable to any of the plaintiffs"); *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1226, 1232 (9th Cir. 1989) (affirming District court's approval of an order barring only those indemnification claims brought by non-settling defendants "who [we]re asserted to be joint tort-feasors with the Settling Defendants in Settled Claims and based on liability in Settled Claims"); *Neuberger v. Shapiro*, 110 F. Supp. 2d 373 (E.D. Pa. 2000) (cross-claims for indemnification "premised on violations of the federal securities laws" are preempted).

[7] *King v. Gibbs*, 876 F.2d 1275, 1279 (7th Cir. 1989); *see also Baker, Watts & Co.,* 876 F.2d at 1106 ("The lack of a federal cause of action, however, does not necessarily preclude the existence of state-law remedies. Unless preempted, plaintiff may be entitled to recover based on Maryland statutory or common law.").

[8] *See, e.g.,* Stipulation of Partial Settlement, pp. 3-6 (reciting the Settling Parties' rationales for entering into the instant proposed settlement); *Franklin,* 884 F.2d at 1225 ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial.").

Opposing Brief, the *pertinent* federal caselaw holds that neither public policy nor federal preemption precludes such D&O indemnification claims. *See* cases cited at Ob 13 n.9; *see also* Kaplan, Note - *The Scope of Federal Bar Orders in Securities Fraud Settlements*, 52 Duke L.J. 211, 240-41 (Oct. 2002) (footnotes omitted) ("[I]f a party neither admits wrongdoing in settling compensatory claims, nor is determined to have acted with 'fault,' the reasoning supporting a bar on indemnification claims disappears. Indeed, courts sanction D&O indemnification under these circumstances.").

Indeed, in arguing that, despite the absence of any admission or adjudication of a securities violation, Nacchio's and Woodruff's D&O indemnification claims against Qwest are barred by public policy, Qwest is really asking the Court to hold that, *once a lawsuit is brought alleging that an officer or director violated the securities laws, he is barred from obtaining D&O indemnification unless and until he is vindicated at trial*. That would be a radical departure from current law, under which officers and directors routinely resort to D&O indemnification and insurance to settle securities claims brought against them. By preventing corporate officers and directors from settling such claims, except with their own funds, such a rule would – in *every* securities case involving such individuals – directly undermine the goal of state D&O indemnification statutes such as Del. Code Ann., Tit. 8, *i.e.*, to induce qualified persons to serve as corporate officers and directors.

Equally alarming, such a rule would obstruct the settlement of most, if not all, securities class actions. Ironically, such a rule would preclude the instant proposed settlement between plaintiffs and the Individual Settling Defendants, all of whom (1) are *alleged* to have violated the securities laws and (2) are included in the settlement based solely on Qwest's $400 million payment, with no personal contribution from any of them.

*See In re Cendant Corp. Sec. Litig.*, 109 F.Supp.2d 273, 284 (D.N.J. 2000) (rejecting a derivative plaintiffs' contention that a corporation which "shoulder[ed] the entirety" of the payment made to settle class action securities claims against the company and two groups of its directors thereby violated public policy by indemnifying the directors against allegations that they had violated the securities laws.  In rejecting the argument, the court noted that "neither group of directors [had] admit[ted] liability" and that "[the corporation's] bylaws, in accordance with Delaware law, contain[ed] an indemnification provision which allows for reimbursement unless there has been an adjudication of intentional wrongdoing.").

**B. The 10th Circuit Has Expressly Rejected The Notion That The Policy In Favor of Settlements Can Permit A Court to Bar Unadjudicated Rights Of Non-Settlers Without Fully Protecting The Value Of Those Rights**

In response to our showing that a court cannot constitutionally bar unadjudicated claims of non-settlers without fully protecting the value of those claims (Ob 6-10), Qwest and plaintiffs cite cases from other circuits for the "ends justify the means" proposition that bar orders extinguishing the unadjudicated rights of non-settlers are justified because, "without them, settlements will not occur."  *See* Qr 9-10, 4-5 (*citing In re United States Oil & Gas Litig.,* 967 F.2d 489, 494 (11th Cir. 1992); *Franklin v. Kaypro Corp.,* 884 F.2d 1222, 1229 (9th Cir. 1989)).

The Tenth Circuit, however, has explicitly rejected this approach.  In *TGB, Inc. v. Bendis,* 36 F.3d 916 (10th Cir. 1994)*,* it held that: (1) "[to] the extent there is tension between the goal of promoting settlements and fundamental fairness to litigants, the latter must prevail" (36 F.3d at 925 (citation and internal quotation omitted); *see generally id.* at 924-25); (2) Courts may not extinguish [statutory contribution] rights in order to facilitate settlement unless the statute authorizes them to do so," and "[t]he absence of a statutory

6

provision forbidding such orders does not suggest that courts have the power to issue them" (*id.* at 924); (3) "when a party challenges a bar order, we logically should ask first whether the court already decided the issues or claims the relitigation of which the order enjoins. If not, the court cannot bar future litigation of those issues" (*id.* at 926); (4) a court cannot "assume jurisdiction over claims not otherwise before it" (such as Nacchio's and Woodruff's potential D&O indemnification claims against Qwest for settlement payments) (*id.* at 926-27); (5) a court "should not purport to bar claims it has no power to bar, even if it thinks that there really are no such claims" (*id.* at 929); (6) even when a bar order is permissible, a court abuses its discretion when it bars claims without "provid[ing] adequate compensation through a judgment credit or other means" (*id.*).[9]

Accordingly, the Court reversed the district court's approval of bar order provisions which, closely resembling those before this Court, both were overbroad and failed adequately to compensate the nonsettlers for the value of their barred claims. *Id.* at 928-29. The bar and related orders approved in *Rite Aid* and other cases from other Circuits on which the settlers rely, though not as broad or violative of the non-settlers' rights as those before this Court (*see, e.g.* Ob 12-13 n.8), nevertheless plainly would not have passed muster in the Tenth Circuit.[10]

---

[9] *See also FDIC v. Geldermann,* 975 F.2d 695, 698 (10th Cir. 1992) ("It does not take too much imagination to see why the FDIC in the Settlement Agreement desired to negotiate away the Defendants' possible right to claim contribution or indemnity from the Settlors. The FDIC obviously could enhance the attractiveness of the settlement to the Settlors if it were able to bargain away not only its claims against the Settlors, but also the claims that other entities…might have against the Settlors. However, the Defendants' potential rights of contribution and indemnity against the Settlors were not the FDIC's to settle.").

[10] The Tenth Circuit's approach, unlike that of the courts on which plaintiffs purport to rely, accords with the clearly expressed intention of Congress to prevent bar orders from prohibiting a defendant from using an indemnification agreement. We have noted that the final, enacted version of the PLSRA bar order provision (now 15 U.S.C. § 78u-4(f)(7)(A)) resulted from Congress's deletion of the words "or indemnity" (footnote cont.)

## II. PROPOSED JUDGMENT SECTIONS 13 AND 14 BREACH QWEST'S CONTRACTUAL OBLIGATIONS AND BENEFIT ONLY THE SETTLERS

Qwest is clear that the very purpose of Sections 13 and 14 of the Proposed Judgment is to prevent the Nacchio and Woodruff from exercising their contractual and statutory rights as former Qwest officers and directors to settle this and related cases and obtain from Qwest D&O indemnification for the settlement amounts. *See* Qr 19 (Sections 13 and 14 "require Nacchio and Woodruff to settle their *personal* liabilities with their own money rather than with Qwest's") (emphasis in original).

As to Section 14 – plaintiffs' promise not to settle with Nacchio and Woodruff without securing their release of all indemnification and other claims against Qwest – the issue is straightforward. The Court should no more approve this side agreement than the complete bar against indemnification claims in Proposed Judgment Section 12: Both are simply

---

from the original version of that provision, with the express intention to "prevent settlement discharge bar orders from prohibiting a defendant from using an indemnification agreement." Ob n.6. Qwests' contention that this legislative history "rests entirely" on a "stray," "isolated," "casual" comment by a single Congressman made "during the initial stages of the bill" (Qr 12) turns reality on its head. Not only did the amendment remain unchanged in the PSLRA as enacted, but the above-quoted statement of its purpose was made by Representative Fields, Republican of Texas, who was one of the four original sponsors of the House bill that became the PSLRA (*see* H.R. 1058 March 1, 1995 – Version 1 (listing Fields as an original sponsor)), and was the sole sponsor of the amendment (Cong. Rec., Mar. 7, 1995, at H2779). He made the statement before the Committee of the Whole House (*id*. at H2760) just moments before the unanimous passage of the amendment, and immediately after noting that it already "ha[d] been agreed to by the majority and the minority." *Id*. at H2779. Immediately after Fields' recited the purpose of the amendment, and immediately before the vote, Representative Markey, Democrat of Massachusetts, rose and confirmed that the change "ha[d] been agreed to by the majority and the minority." *Id*. This clear statement of the *collective* legislative intention to "prevent settlement discharge bar orders from prohibiting a defendant from using an indemnification agreement" should be honored. *See Stauffer Chemical Co. v. EPA,* 647 F.2d 1075, 1078 (10th Cir. 1981) ("The touchstone in construing statutory language is legislative intent."); *Stevens v. U.S.*, 440 F.2d 144, 146 (6th Cir. 1971) ("Although other rules of construction may be used when legislative intent cannot be ascertained with certainty, none of the rules of statutory construction should be applied to accord a meaning to a statute contrary to clearly expressed legislative intent.") (citations omitted); *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 395-96 (1951) ("It is the sponsors that we look to when the meaning of the statutory words is in doubt."); *see also In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 201 (S.D.N.Y. 2005) ("The PSLRA's settlement discharge provision both mandates a mutual bar order and limits the scope of that bar order to contribution claims. This Court has no authority to deviate from the express wording of the statute.").

8

provisions improperly designed to protect and enrich Qwest by relieving it – for free – of its statutory and contractual indemnification obligations to Nacchio and Woodruff.  *See* Ob 14.

Qwest attempts, however, to justify section 13 of the Proposed Judgment by comparison to what it calls "similar" provisions approved by courts in other cases.  In truth, there is no comparison.  Most important, in none of those cases was the intent or effect of the approved provisions to bar without compensation the non-settlers' exercise of their indemnification rights against the settlers.  On the contrary, in *In re Orthopedic Bone Screw Products Liability Litig.*, 176 F.R.D. 158 (E.D. Pa. 1997) (cited at Qr 19), the court approved the provisions in question only after it was fully "assure[d] that the non-settling defendants will pay no more than they would have paid had they been able to seek contribution or indemnity" and that "the set-off and reduction provisions put non-settling defendants in a more favorable position than they would have been if a settlement was not reached."  *Id.* at 182; *accord In re Diet Drugs Prod. Liab. Litig.*, Nos. 1203, 99-20593, 2000 WL 1222042, at *64-66 (E.D. Pa. Aug. 28, 2000) (cited at Qr 19 and attached thereto as Exh. F) (approving on the same basis an agreement patterned on the one approved in *Orthopedic*, but in which the bar order specified that it barred only claims for "*non-contractual* indemnity") (emphasis added).

In stark contrast, Section 13 benefits *only* the settling defendants, and, particularly, Qwest.  Far from fully protecting the value of Nacchio's and Woodruff's D&O indemnification claims against Qwest, *under no circumstances will Section 13 benefit Nacchio or Woodruff at all*: (1) By eliminating any incentive on plaintiffs' part to settle without extinguishing Nacchio's and Woodruff's indemnification rights against Qwest, Section 13 assures that Nacchio and Woodruff will pay any settlement out of their own

pockets and will forfeit, *without any compensation*, their D&O indemnification claims against Qwest for the settlement amount; (2) If, alternatively, the non-settlers go to trial and win, Section 13 confers *no benefit* because there will be no judgment amount for Qwest to indemnify, and, hence, no occasion for a judgment reduction pursuant to Section 13; (3) Finally, if the nonsettlers go to trial and lose, then, as *adjudicated* securities law violators, they will be barred from recovering any indemnification from Qwest and, hence, from obtaining any judgment reduction pursuant to Section 13.[11]

### Conclusion

For all the foregoing reasons, and those stated in the Opposition Brief, Defendants Nacchio and Woodruff respectfully request that the Court reject the proposed partial settlement, without prejudice to submission of a proposed settlement that cures the many defects of the current one.

Respectfully submitted this 12th day of May, 2006.

| s/John M. Richilano | s/Joel M. Silverstein | s/David Meister |
|---|---|---|
| John M. Richilano | Herbert J. Stern | David Meister |
| Marci A. Gilligan | Jeffrey Speiser | James Miller |
| Richilano & Gilligan PC | Joel M. Silverstein | David Cook |
| 633 17th St., Ste. 1700 | Stern & Kilcullen | Clifford Chance US LLP |
| Denver, CO 80202 | 75 Livingston Ave. | 31 West 52nd Street |
| (303) 893-8000 | Roseland, NJ 07068 | New York, NY 10019-6131 |
| (303) 893-8055 (fax) | (973) 535-1900 | (212) 878-8000 |
|  | (973) 535-9664 (fax) | (212) 878-8375 (fax) |
| *Attorneys for Joseph Nacchio* |  | *Attorneys for Robert Woodruff* |

---

[11] Significantly, since the *Orthopedic* and *Diet Drugs* cases were products liability cases, not securities law cases, indemnification of the nonsettlers upon a judgment against them was not foreclosed by public policy. Hence, while Qwest's promise of "benefits" to the nonsettlers from Section 13 (Qr 19) is purely illusory, the judgment reduction provisions approved by the courts in *Orthopedic* and *Diet Drugs* provided the non-settlers with real and substantial benefits in the event that they went to trial with the plaintiffs and lost.

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May, 2006, a true and correct copy of the foregoing **SUPPLEMENTAL BRIEF OF DEFENDANTS NACCHIO AND WOODRUFF OPPOSING FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**[1] was served on the following via the USDC CM/ECF system:

X. Jay Alvarez
JayA@lerachlaw.com

Timothy Granger Atkeson
Tim_Atkeson@aporter.com; jeffrey_lewis@aporter.com; shelby_hunt@aporter.com; john_freedman@aporter.com; scott_schreiber@aporter.com

Michael James Barry
mbarry@gelaw.coml; mhartman@gelaw.com; gfpulver@handf.com

Jeffrey Allen Berens
jberens@dyershuman.com

Terry W. Bird
twb@birdmarella.com; dh@birdmarella.com

David Robert Boyd
dboyd@bsfllp.com; jmessner@bsfllp.com

Jessica Brody
jessica_brody@aporter.com; susan_cole@aporter.com; roleen_johnson@aporter.com

Spencer A. Burkholz
SpenceB@lerachlaw.com; e_file_sd@lerachlaw.com

John K. Carroll
John.carroll@cliffordchance.com

Kwame A. Clement
Kwame_Clement@aporter.com; kclement8688@comcast.net

David Lawrence Cook
david.cook@cliffordchance.com

Jennifer Lynn Coon
jlc@birdmarella.com; lak@birdmarella.com

Michael J. Dowd

MikeD@birdmarella.com; shg@birdmarella.comm

Stephanie Erin Dunn
sdunn@perkinscoie.com; sdunn-efile@perkinscoie.com

Thomas E. Egler
TomE@lerachlaw.com; HeatherH@lerachlaw.com

Kevin D. Evans
kdevans@s-elaw.com; tbaksay@s-elaw.com

Clyde A. Faatz, Jr.
cafaatz@handf.com; kjscholet@handf.com

Christopher James W. Forrest
cjforrest@handf.com

Joshua David Franklin
jdf@denverda.org

John A. Freedman
john_freedman@aporter.com

Walter W. Garnsey, Jr.
wgarnsey@khgk.com; smiller@khgk.com

Terence C. Gill
tgill@sah.com; efiling@sah.com; dsikes@sah.com

Marcy Marie Heronimus
mheronim@sah.com; efiling@sah.com; peckman@sah.com

Michael James Hofmann
michael.hofmann@hro.com; jackie.delay@hro.com

Kevin Brent Huff
khuff@khhte.com; jbartlow@khhte.com

Shelby Hunt
shelby_hunt@aporter.com

Roberta A. Kaplan
rkaplan@paulweiss.com

Gary Michael Kramer

12

gkramer@bw-legal.com; amcarillo@bw-legal.com

William J. Leone
William.Leone@usdoj.gov; USACO.ECFCivil@usdoj.gov; Dorothy.Burwell@usdoj.gov

Alfred P. Levitt
alevitt@bsfllp.com; jmessner@bsfllp.com

Vincent J. Marella
lak@birdmarella.com

David Meister
david.meister@cliffordchance.com

James D. Miller
james.miller@cliffordchance.com; damien.morris@cliffordchance.com; salvatore.dziekan@cliffordchance.com; david.cook@cliffordchance.com

Robert Nolen Miller
rmiller@perkinscoie.com; rmiller-efile@perkinscoie.com

Barbara C. Moses
bmoses@magislaw.com; jlaing@magislaw.com

James E. Nesland
neslandje@cooley.com; foutsdl@cooley.com; ingrahamjl@cooley.com

Sharan Nirmul
snirmul@gelaw.com; dlohinetz@gelaw.com

Robin Lee Nolan
rnolan@handf.com; gfpulver@handf.com; kjscholet@handf.com

Elissa J. Preheim
Elissa.Preheim@aporter.com

Kimberly Wolf Price
kimberly.wolf@cliffordchance.com

Thomas Vincent Reichert
tvr@burdmarella.com

Eric Tolentino Rillorta
Eric_Rillorta@aporter.com

Kenneth F. Rossman, IV

krossman@bsfllp.com

Ashley Elizabeth Rupp
arupp@magislaw.com

Scott Saham
scotts@lerachlaw.com

Scott B. Schreiber
scott_schreiber@aporter.com

Paul Howard Schwartz
schwartzph@cooley.com; vrush@cooley.com; colitigation@cooley.com; ingrahamjl@cooley.com

David L. Schwarz
dschwarz@khhte.com

Jesus Manuel Vasquez, Jr.
jvasquez@rothgerber.com; tclanahan@rothgerber.com

Gregory James Waller
gregwaller@andrewskurth.com; amyprasad@akllp.com; kpiccolo@akllp.com

I hereby certify that I served the same on this 12th day of May, 2006, via U.S. Mail, postage prepaid, on the following:

C. Mylett
P.O. Box 1031
Coleman, FL 33521

Cleo J. Rauchway
Rothgerber, Johnson & Lyons, LLP
United States District Court, Box 11
1200 – 17th Street
#3000
Denver, CO 80202

William M. Rogers
606 S. Military Trail
Deerfield Beach, FL 33442

                                                   s/Gwenn E. Miller
                                                   Gwenn E. Miller