**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 01-cv-01451-REB-CBS
(Consolidated with Civil Action Nos. 01-cv-01472-REB-CBS, 01-cv-01527-REB-CBS, 01-cv-01616-REB-CBS, 01-cv-01799-REB-CBS, 01-cv-01930-REB-CBS, 02-cv-00333-REB-CBS, 02-cv-00374-REB-CBS, 02-cv-00507-REB-CBS, 02-cv-00658-REB-CBS, 02-cv-00755-REB-CBS; 02-cv-00798-REB-CBS; and 04-cv-00238-REB-CBS)

In re QWEST COMMUNICATIONS INTERNATIONAL, INC. SECURITIES LITIGATION

---

**ORDER AWARDING ATTORNEY FEES AND EXPENSES**

---

**Blackburn, J.**

This matter is before me on **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006. Several objections filed by class members, including those docketed as [#960], [#962], [#1003], [#1014], and [#1016], include objections to lead counsel's request for an award of attorney fees and expenses. The lead plaintiffs reply to those objections in their reply [#984], filed April 28, 2006. Lead counsel's motion for an award of attorney fees and reimbursement of expenses is granted in part and denied in part.

## A. JURISDICTION

I have jurisdiction over this case under 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

## B. BACKGROUND

This case is a class action securities suit involving claims for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. In an order issued concurrently with this order, I have approved a class action settlement agreed to by the

lead plaintiffs and all but two of the defendants. The terms of the settlement are contained in the parties' Stipulation of Partial Settlement [#386], filed November 23, 2005 (Stipulation). Capitalized terms in this order refer to terms defined in the Stipulation.

In essence, the Stipulation requires the Settling Defendants to pay 400 million dollars into a Settlement Fund for the benefit of the plaintiff class. In addition, the parties have agreed to use their best efforts to persuade the Securities and Exchange Commission (SEC) to permit 250 million dollars held by the SEC to be added to the Settlement Fund (SEC Distribution Fund). Defendant Qwest paid 250 million dollars to the SEC under the terms of a judgment entered against Qwest and in favor of the SEC in a separate civil suit. If the SEC Distribution Fund is not contributed to the settlement fund, then the plaintiffs may, at their option, terminate the stipulated settlement. The Stipulation also contains a plan of distribution, which will determine how much each plaintiff will receive from the settlement fund.

In their motion for an award of attorney fees and expenses, lead counsel for the plaintiffs seek an award of attorney fees based on the fee agreement negotiated between lead counsel and the lead plaintiffs. Based on that agreement, lead counsel seeks an award of 24 percent of the 400 million dollars that the Settling Defendants have agreed to contribute to the Settlement Fund. This would result in an award of 96 million dollars for attorney fees. The SEC Distribution fund is not a relevant factor in the attorney fees award. In addition, the lead plaintiffs seek reimbursement of 2,106,768.88 dollars for costs and expenses incurred in prosecuting this case, and certain costs and expenses incurred by lead plaintiffs.

## C. STANDARD OF REVIEW

This case is controlled by the Private Securities Litigation Reform Act of 1995 (PSLRA). The PSLRA provides that the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). This provision is consistent with case law adopting the common fund doctrine. Under the common fund doctrine, attorneys who pursue litigation on behalf of a class, and whose efforts create a common fund for the benefit of the class, are entitled to an award of attorney fees from the common fund. ***See, e.g., Brown v. Phillips Petroleum Co.***, 838 F.2d 451, 454 (10th Cir. 1988). This ensures that the fund's beneficiaries share in the cost of creating the fund. ***Id***. In such cases, attorney fees are based primarily on a percentage of the common fund created by counsel's efforts. ***Brown***, 838 F.2d at 454. Based on the PSLRA, ***Brown***, the authorities cited by the ***Brown*** court, and the authorities cited by the parties, I conclude that one key factor in determining an appropriate award of attorney fees is a reasonable percentage of the common fund created by counsel.

Of course, the key issue is a determination of a reasonable percentage. In determining a reasonable percentage, I must articulate the specific reasons on which my determination of a reasonable percentage is based. ***Brown***, 838 F.2d at 454. In determining reasonable attorney fee awards, "federal courts have relied heavily on the factors articulated by the Fifth Circuit in ***Johnson v. Georgia Highway Express, Inc.***, 488 F.2d 714 (5th Cir. 1974)." ***Id***. Although ***Johnson*** was not a common fund case, the Tenth Circuit has concluded that consideration of the ***Johnson*** factors is

"appropriate in setting and reviewing percentage fee awards in common fund cases." ***Brown***, 838 F.2d at 454. I have considered carefully each of the twelve ***Johnson*** factors in determining a reasonable percentage of the common fund to be awarded to lead counsel.

I note that the percentage proposed by lead counsel is based on lead counsel's fee agreement with the lead plaintiffs. I agree with the Third Circuit that "courts should accord a presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." ***In re Cendant Corp. Litigation***, 264 F.3d 201, 282 (3rd Cir. 2001). This presumption respects the right of private parties to reach agreements on terms that they conclude will serve their best interests. Applying this initial presumption of reasonableness, I presume to be reasonable lead counsel's request for an award of 24 percent of the 400 million dollars to be contributed to the Settlement Fund by the Settling Defendants. Again, applying the terms of the fee agreement would result in an award of 96 million dollars for attorney fees. *Dowd Declaration* [#930], filed February 27, 2006, pp. 81 - 82.

However, the interests of the plaintiff class as a whole also must be considered. "The trial judge in a common fund case must act as a fiduciary for the beneficiaries of the fund. Attorneys' fees necessarily reduce the amount that the common fund beneficiaries recover." ***Brown***, 838 F.2d at 456. "(T)he trial judge must determine a reasonable fee by weighing the appropriate interests of the beneficiaries in light of the efforts of counsel on their behalf." ***Id***. The ***Johnson*** factors provide guidance in striking an appropriate balance between these two fundamental considerations.

## D. JOHNSON FACTORS

The twelve ***Johnson*** factors are 1) the time and labor involved; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee for similar work; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. ***Johnson v. Georgia Highway Express, Inc.***, 488 F.2d 714, 717 -719 (5th Cir. 1974), *abrogated in part by* ***Blanchard v. Bergeron***, 489 U.S. 87, 93 (1989) (limiting application of ***Johnson*** contingency fee factor as ceiling on fee awards when applying 42 U.S.C. § 1988). Based on the circumstances of a particular case, a court may assign different relative weights to the factors – that is, none of the factors is inherently equiponderant, preponderant, or dispositive. ***Brown***, 838 F.2d at 456. A discussed below, I conclude that some of the factors should be combined for the purpose of this case.

**1. The time and labor involved** - Plaintiffs' lead counsel reports that counsel, their para-professionals, and their in-house experts expended 53,795.87 hours prosecuting this litigation. *Motion for award of attorney* fees [#929], filed February 27, 2006, p. 15. Declarations filed in support of the motion document this figure. Based on the law firms' current rates, the billable value of these hours is 18,547,453.65 dollars. *Id*. This figure is known as a lodestar – total hours expended times the reasonable

hourly rate. The requested fee of 96 million dollars represents a multiple of about 5.1 times the lodestar amount.

There is no doubt that the litigation of this case required a large investment of sophisticated expertise, time, labor, and other resources by lead counsel. Nothing in the record is contrary to this conclusion, and I will summarize very briefly the effort made by lead counsel. This case required extensive investigation to support allegations in highly fact specific complaints. Great specificity in a complaint is required under the pleading standards of the PSLRA. This investigation necessarily included interviews with many witnesses and detailed analysis of Qwest's financial statements and many underlying transactions. As the case progressed, plaintiffs' counsel litigated several complex motions to dismiss, a complex motion for temporary restraining order, many complex discovery motions, and the plaintiffs' motion for class certification. Discovery was voluminous and required sophisticated analysis. In addition, settlement and mediation efforts took place over an extended period of time, and negotiation of the final settlement terms clearly required substantial talent, time, and effort.

I note also that lead counsel's documentation of time spent on this case includes time spent by paralegals, in-house accountants, and document clerks. At least one objector challenges the inclusion of these costs as a basis for an award of attorney fees. I conclude that, in this case, such costs properly may be considered along with time spent by attorneys as part of the first ***Johnson*** factor. Time spent by paralegals and other professionals frequently is billed to clients by the hour. The assistance of such professionals is indispensable in a case like this case. Document clerks often are

viewed as overhead, rather than as time that is billed separately. This case is document intensive in the extreme. For the purposes of this case, I will include the nearly 800,000 dollars of time attributed to document clerks in the lodestar amount, though I consider this element of the lodestar to be somewhat inflated.

In a common fund case, the lodestar figure serves as one consideration in determining a reasonable fee. The ***Brown*** court noted that this factor may be given less weight in a common fund case than in a statutory fee case, where the lodestar figure is an essential touchstone of reasonableness. ***Brown***, 838 F.2d at 456. Although some objectors have criticized the amount of time billed by various people associated with lead counsel, I conclude that there has not been a persuasive challenge to the reasonableness of the time spent by lead counsel on this case. I am intimately familiar with the history of this case, and I conclude that the hours spent on this case by lead counsel and their staff are within the realm of reason. Although there may be areas in which lead counsel might have used time and other resources more efficiently, I find that any such inefficiencies are not so prevalent that the gross number of hours claimed by lead counsel should be amended by reduction for the purpose of this analysis. Overall, the hourly rates outlined in counsel's declarations in support of the motion for award of attorney fees are generous but within the range of reasonable hourly rates for the type of work at issue here.

Having reviewed lead counsel's declarations and the relevant objections, I conclude that a lodestar amount of 18 million dollars is a reasonably accurate figure for the purpose of applying the ***Johnson*** analysis to this case. Having considered the record and the relevant circumstances, I conclude that the lodestar amount is an

important factor in the overall reasonableness analysis because it is a tangible, determinate measure of the value of the time and labor involved.

**2. The novelty and difficulty of the questions** - There are few simple class action cases involving securities law. This area of law may not be novel, but it generally is complex and difficult. In this case, lead counsel pursued securities claims that involved a large and complex corporation and complex accounting issues. As discussed above, the PSLRA requires great specificity in pleading such claims. Simply investigating the facts in order to file a legally sufficient complaint under the PSLRA required substantial effort and expertise. In addition, as summarized above, many of the issues litigated by lead counsel were complex and difficult. Able defense counsel zealously and survigrously litigated on behalf of the defendants, and lead counsel were required to meet these challenges at most every turn. In short, the issues presented by this case were very difficult and complex. This factor, closely related to factor three, below, carries significant weight, and tends to support a generous award of attorney fees.

**3. The skill requisite to perform the legal service properly** - This factor is closely related to the ninth factor – the experience, reputation, and ability of the attorneys. I consider factors three and nine together. If the issues in a case are complex and difficult, then obviously it will take great skill to address and resolve those issues successfully. Plaintiffs' lead counsel are highly skilled and specialized attorneys who use their substantial experience and expertise to prosecute complex securities class actions. The defendants were represented by lawyers of similar expertise and experience. Particularly in a case as complex as this case, lead counsel must have a

very high level of experience and expertise if the plaintiffs are to have any chance of success. In this case, there is no serious challenge to the conclusion that lead counsel possesses a high level of skill and expertise in securities class action suits. This factor carries significant weight because the plaintiff class likely would not have obtained any relief without the assistance of counsel with a high level of skill and expertise. Further, lead counsel should be rewarded for their successful application of their skill and expertise. This factor augurs toward a substantial fee award.

**4. The preclusion of other employment by the attorney due to acceptance of the case** - Without doubt, time spent by lead counsel on this case was at the expense of time that lead counsel could have spent on other cases. Lead counsel, however, does not cite any particular legal business that was turned away because of the demands of this case. It is fair to assume, however, that lead counsel's efforts on this case could have been devoted to other cases, which may have proven worthwhile. This assumption, however, does not weigh heavily in my analysis.

**5. The customary fee for similar work** - This factor is very similar to factor number twelve – awards in similar cases. I consider factors five and twelve together. The lead plaintiffs analyze this factor in terms of the customary percentage fee for complex commercial cases that involve a contingent fee. In this realm, the lead plaintiffs argue, contingent fees of 30 to 40 percent of the recovery are considered to be acceptable. The lead plaintiffs cite a variety of class action cases in which the recovery exceeded 100 million dollars, and the percentage of attorney fees awarded ranged from 25 to 36 percent. *Motion for attorney fees* [#929], pp. 19 - 21. The objecting class members cite other cases in which the percentage of attorney fees

awarded is much lower. *See, e.g., Objection of Graham, et. al.* [#942], filed March 6, 2006, pp. 8 - 11; *Objection of Pennsylvania State Employees' Retirement System* [#1014], filed May 17, 2006, pp. 1 - 2.

Similarly, the lead plaintiffs and objecting class members cite cases in which a percentage fee award was cross-checked against the lodestar amount in an effort to judge the reasonableness of the fee. The lead plaintiffs cite cases in which the fees awarded represented multiples of the lodestar amount ranging from 4.65 to 10.73. *Motion for attorney fees* [#929], p. 25, n. 12. The objecting class members cite cases in which the fees awarded represented lodestar multiples ranging from 1.35 to 4.0. *Objection of Graham, et. al.* [#942], filed March 6, 2006, pp. 8 - 11; *Objection of Pennsylvania State Employees' Retirement System* [#1014], filed May 17, 2006, pp. 1 - 2.

Of course, a variety of relevant circumstances were in play in the various comparison cases cited by the parties. However, neither the lead plaintiffs nor any objector has proposed a persuasive analytical scheme that explains why high percentages or high lodestar multiples are awarded in some cases, and lower percentages or lodestar multiples are awarded in other cases. For the purposes of this case, I conclude that the awards in similar cases convey two fundamental messages that are applicable to this case. First, lead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure. Second, judging an attorney fee award solely as a percentage of the common fund or solely as a lodestar multiple does not adequately accommodate all

relevant considerations. For example, a fee that equals 25 percent of a common fund also might result in a very low lodestar multiple. ***See In re Lease Oil Antitrust Litig.***, 186 F.R.D. 403, 443 - 448 (25 percent of common fund awarded as attorney fees, a lodestar multiple of 1.35; applying ***Johnson*** factors). The customary fee factor carries significant weight in my analysis, but the fees awarded in other cases provide only a rough guide to reasonableness.

**6. Whether the fee is fixed or contingent** - In many circumstances, a contingent fee will result in the payment of a higher total fee to counsel than the total fee an hourly fee would have generated. Of course, if the litigation is not successful, a contingent fee often will leave counsel without any fee. A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful. These considerations are applicable here. As noted above, I accord a presumption of reasonableness to the 24 percent contingent fee to which lead counsel and the lead plaintiffs agreed at the outset of this case. In the context of this case, this factor carries significant weight. However, as the ***Johnson*** court noted, the key "criterion for the court is not what the parties agreed but what is reasonable." ***Johnson***, 488 F.2d at 718.

**7. Time limitations imposed by the client or the circumstances** - The ***Johnson*** court concluded that priority work that delays a lawyer's other work is entitled to a premium. ***Id***. I agree with the lead plaintiffs that this factor is not relevant in this case.

**8. The amount involved and the results obtained** - This factor may be given a greater weight in a common fund case when the court determines that the recovery "was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." ***Brown***, 838 F.2d at 456. The ***Brown*** court indicated that the time and labor factor need not be evaluated using the lodestar formulation if the trial court determines that other factors are sufficient to determine a reasonable fee. ***Id***.

In this case, I conclude that recovery for the class was contingent on many variables, and that the efforts of lead counsel were instrumental in overcoming those risks and realizing some recovery for the class. From the outset, lead counsel faced substantial risks in prosecuting this case. At the extreme, the risk was that lead counsel would expend substantial resources but end up with no recovery. For example, the risk that Qwest would file bankruptcy frequently was present during the course of this litigation. In addition, the risks inherent to litigation are legion, and need not be reviewed here. However, in the context of this case, I conclude that the lodestar calculation outlined above remains a significant consideration in determining reasonableness. This fundamental measure of value provides important context in balancing the other considerations.

It is difficult to describe 400 million dollars as anything other than a huge amount of money. On its face, the amount of money recovered for the class by lead counsel is prodigious. However, relative to the losses the plaintiff class claims the Settling Defendants caused them, 400 million dollars represents a relatively small amount of money. For example, the Pennsylvania State Employees' Retirement System argues

that class members are receiving only about 15 cents per share from the Settlement Fund when many suffered a market loss in excess of 58 dollars per share during the class period. *Objection of Pennsylvania State Employees' Retirement System* [#1014], filed May 17, 2006, p. 2. Similar dramatic losses have been claimed frequently in this case. Whether these numbers accurately reflect the comparison between the total losses caused by the defendants' alleged securities violations and the total recovery obtained via this lawsuit, I cannot determine. However, it is clear that the losses generally claimed by the plaintiffs are far greater than the recovery that will result from the creation of the Settlement Fund. In short, the amount of the Settlement Fund is impressively large, but that impression is tempered by the plaintiffs' consistent claim, a claim often advanced by lead counsel, that the plaintiff class suffered losses that are much larger. From the plaintiffs' perspective, the plaintiffs are recovering only a small proportion of the losses caused by the Settling Defendants. From this perspective the results obtained are better than nothing, but they pale in comparison to the losses claimed.

It is important to note, however, that there probably would not have been any recovery for the plaintiff class absent the efforts of lead counsel. Many class members may perceive the recovery to be inadequate, compared to their claimed losses, but the class also faced a distinct risk of no recovery. Further, I conclude that lead counsel's efforts serve the broader purpose of creating an incentive for the defendants and others to comply with the securities laws in the future. That incentive is another aspect of the success achieved by lead counsel. Overall, the eighth ***Johnson*** factor carries substantial weight in my analysis, but this factor pulls in two directions. The large

amount of the settlement augurs toward a generous award of fees. The fact that the settlement amount pales in comparison to the claimed losses weighs in favor of a reduced fee award so that the plaintiff class can recover more – albeit a modicum – of its total claimed losses.

**9. The experience, reputation, and ability of the attorneys** - This factor has been considered as part of factor number three, above.

**10. The undesirability of the case** - The risks presented to lead counsel who undertook this case were substantial. I summarized some of those risks in discussing factor eight, above. At a minimum, this case required lead counsel to advance large amounts of time, money, and other resources to determine if any recovery might be had. Quintessentially, the risk to lead counsel was financial. Most attorneys are unable or unwilling to take such a financial risk. There are other factors that may have made this case undesirable to counsel, but the financial risk stands out as the key factor. I note, however, that lead counsel long has been in the business of undertaking such risks in the realm of class action securities litigation. Thus, lead counsel had the ability to assess and assume the risk, and to make an informed judgment about the potential ratio between risk and reward in this case. This factor carries significant weight and weighs in favor of a substantial fee award.

**11. The nature and length of the professional relationship with the client** - In describing this factor, the ***Johnson*** court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer. There is no indication that lead counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs. I consider this factor to have no

application in this case. To the extent this factor might be read as requiring respect for a fee agreement between lead counsel and lead plaintiffs, that adequately has been addressed elsewhere in this order.

**12. Awards in similar cases** - This factor has been considered as part of factor number five, above.

## E. CONCLUSION - ATTORNEY FEES

The fee agreement between the lead plaintiffs and lead counsel provides for an award of attorney fees equal to 24 percent of the Settling Defendants' 400 million dollar contribution to the settlement fund. Such an award would amount to 96 million dollars. My analysis began with a presumption that the fee agreement is reasonable. The ***Johnson*** factors demonstrate that lead counsel provided highly valuable services on behalf of the plaintiff class, took substantial risks, and obtained significant relief on behalf of the class. Judged by the standard of the billable hour, the lodestar value of those services is in the neighborhood of 18 million dollars, but counsel was not being paid by the hour as this case was litigated. The fee agreement and the usual practice in class action cases both contemplate that successful lead counsel may be rewarded with fees judged, at least in part, as a proportion of the common fund created. Such rewards frequently consume a significant proportion of the common fund, and often are equal two to five times the lodestar figure. Considered together, these factors largely weigh in favor of awarding fees under the terms of the fee agreement.

On the other hand, an important factor weighs heavily in the opposite direction. The common fund created in this case will compensate the plaintiff class for only a fraction of the losses the plaintiff class claims the Settling Defendants caused the class

to suffer. The gross amount of the settlement achieved is large, but it will compensate only a small proportion of the plaintiffs' claimed losses. In these circumstances, it is particularly important for me to "determine a reasonable fee by weighing the appropriate interests of the beneficiaries in light of the efforts of counsel on their behalf." ***Brown***, 838 F.2d at 456. In addition, I note that the lodestar amount, the basic measure of value, by itself would lead to handsome compensation for lead counsel.

Unfortunately, balancing the relevant factors does not lead to a precise algorithm that prescribes a reasonable fee. Rather, I must exercise my informed discretion to strike a balance between the competing factors. I conclude that an attorney fee award to lead counsel in the amount of 60 million dollars is reasonable because this amount strikes a reasonable balance among the relevant ***Johnson*** factors. Such a fee recognizes and very handsomely rewards the efforts and skill of counsel, the risks undertaken by counsel, and the results obtained by counsel with a payment that is more than three times the generous hourly rates claimed by counsel in their lodestar calculation. Converted to an hourly fee, this award leads to payment of over 1,100 dollars for each hour spent by any lawyer on the lead counsel team, and for every hour spend by other professionals and support staff on lead counsel's team. Judged as a percentage of the 400 million dollar fund, this award amounts to 15 percent of the fund. Judged by any and all of these measures, this fee is reasonable, fair, and, for lead counsel, quite lucrative.

To the extent this award necessarily alters the fee agreement between lead counsel and the lead plaintiffs, I conclude that the other relevant circumstances rebut the presumption that the fee agreement itself defines a reasonable fee. Lead counsel

and lead plaintiffs could not have known the result of this litigation when the entered into the agreement. Now that the result and the surrounding circumstances are known, I conclude that the 24 percent fee agreement exceeds the purview of reasonableness under the circumstances of this case. Having considered all of the relevant circumstances, I find and conclude that an award of 60 million dollars is reasonable. I award lead counsel attorney fees to be paid from the settlement fund in the amount of 60 million dollars.

**F. REASONABLE EXPENSES**

Again, the PSLRA provides that the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6). As with attorney fees, the common fund doctrine allows for an award of costs so that the beneficiaries of the fund share the cost of creating the fund.

Here, lead counsel seeks an award of costs totaling 2,219,063.84 dollars. I have reviewed the costs outlined in lead counsel's declarations and generally find the costs sought by counsel to be reasonable in the context of this case. Some of the costs claimed are not documented in great detail, but the gross amounts claimed are within the realm of reason in the context of this case. On a relatively insignificant note, I agree with the observation of one group of objectors, *see* objection [#942], filed March 6, 2006, that charging 25 cents per copy for high volume, in-house copying exceeds the bounds of reason. *Dowd Declaration* [#939], filed February 27, 2006, p. 29. Rather than burden lead counsel, the lead plaintiffs, the class, and this court with the exercise

of punctiliously examining an even more detailed cost accounting, I exercise my discretion and award costs in the amount two million dollars, which I find to be reasonable, necessary, and circumstantiated. These costs are to be paid from the Settlement Fund.

Finally, the PSLRA permits an award to the lead plaintiffs of their "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Four lead plaintiffs have requested an award of such costs and expenses, as documented in their declarations [#935], [#936], [#937], and [#938]. I find the costs and expenses claimed to be reasonable. The New England Health Care Employees' Pension Fund is awarded 13,215.56 dollars in costs and expenses. Sat Pal Singh is awarded 7,650.00 dollars in costs and expenses. Tejinder Singh is awarded 8,431.41 dollars in costs and expenses. Clifford Mosher is awarded 11,280.00 dollars in costs and expenses. These costs and expenses are to be paid from the Settlement Fund.

**G. ORDERS**

**THEREFORE, IT IS ORDERED** as follows:

1. That **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, is **GRANTED** to the extent that lead counsel for the plaintiff class is **AWARDED** attorney fees in the amount of 60 million dollars ($60,000,000) to be paid from the Settlement Fund in this case;

2. That **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, is **GRANTED** to the

extent that lead counsel is **AWARDED** two million dollars ($2,000,000) in costs to be paid from the Settlement Fund in this case;

3. That **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, is **GRANTED** to the extent that lead plaintiff, The New England Health Care Employees' Pension Fund, is **AWARDED** 13,215.56 dollars in costs and expenses to be paid from the Settlement Fund in this case;

4. That **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, is **GRANTED** to the extent that lead plaintiff Sat Pal Singh is **AWARDED** 7,650.00 dollars in costs and expenses to be paid from the Settlement Fund in this case;

5. That **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, is **GRANTED** to the extent that lead plaintiff Tejinder Singh is **AWARDED** 8,431.41 dollars in costs and expenses to be paid from the Settlement Fund in this case;

6. That **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, is **GRANTED** to the extent that lead plaintiff Clifford Mosher is **AWARDED** 11,280.00 dollars in costs and expenses to be paid from the Settlement Fund in this case;

7. That **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, is **DENIED** otherwise;

8. That to the extent the objections of any of the objectors, including the objections docketed as [#960], [#962], [#1003], [#1014], and [#1016], challenge **Lead**

**Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, those objections are **SUSTAINED** to the extent Lead counsel's motion has been denied; and

9. That to the extent the objections of any of the objectors, including those docketed as [#960], [#962], [#1003], [#1014], and [#1016], challenge **Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses** [#929], filed February 27, 2006, those objections otherwise are **OVERRULED** and **DENIED**.

Dated September 28, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**