**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 01-cv-1451-REB-KLM
(Consolidated with Civil Action Nos. 01-cv-1472-REB-PAC, 01-cv-1527-REB-PAC,
01-cv-1616-REB-PAC, 01-cv-1799-REB-PAC, 01-cv-1930-REB-PAC,
01-cv-2083-REB-PAC, 02-cv-0333-REB-PAC, 02-cv-0374-REB-PAC,
02-cv-0507-REB-PAC, 02-cv-0658-REB-PAC, 02-cv-755-REB-PAC,
02-cv-798-REB-PAC and 04-cv-0238-REB-PAC)

In re QWEST COMMUNICATIONS INTERNATIONAL, INC. SECURITIES LITIGATION

---

**NOTICE OF PENDENCY AND SETTLEMENT OF CLASS ACTION**

**EXHIBIT A-1**

---

**Blackburn, J.**

TO:    ALL PERSONS OR ENTITIES THAT PURCHASED OR OTHERWISE ACQUIRED QWEST COMMUNICATIONS INTERNATIONAL INC. ("QWEST") PUBLICLY TRADED SECURITIES (INCLUDING COMMON STOCK, BONDS AND OPTIONS) FROM MAY 24, 1999 THROUGH JULY 28, 2002

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS ACTION.  PLEASE NOTE THAT IF YOU ARE A MEMBER OF THE N&W CLASS (AS FURTHER DEFINED BELOW), YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT FUND DESCRIBED IN THIS NOTICE.  AS DISCUSSED IN GREATER DETAIL BELOW IN SECTION VII, TO CLAIM YOUR SHARE OF THIS FUND, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE POSTMARKED ON OR BEFORE **March 10, 2009**, IF YOU DID NOT PREVIOUSLY FILE A VALID PROOF OF CLAIM.

This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil Procedure and Orders of the United States District Court for the District of Colorado (the "Court").  The purpose of this Notice is to inform you of the settlement of the claims against Joseph P. Nacchio ("Nacchio") and Robert S. Woodruff ("Woodruff") in this consolidated class action (the "Litigation," as defined below) and of the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the settlement.  This Notice describes the rights you may have in connection with the settlement and what steps you may take in relation to the settlement and the Litigation.

This Notice relates to a settlement with defendants Nacchio and Woodruff.  If you submitted a valid Proof of Claim in connection with the previous settlement with Qwest (and others) in the Litigation, you do not need to take any further action to participate in this settlement.

1

The settlement creates a fund in the principal amount of $45,000,000.00 in cash (the "Settlement Fund").  The Settlement Fund may be increased under certain circumstances described in the Stipulation of Partial Settlement dated as of August 4, 2008 ("Stipulation").  If N&W Class Members owning 100% of the number of eligible Qwest shares, bonds or options purchased during the Class Period (defined below) elect to participate in this settlement, the estimated average distribution per share of common stock would be $0.0115 per share before deduction of Court-approved fees and expenses.  Historically, actual claim rates are less than 100%, resulting in higher distributions per share (see the Plan of Allocation below for a more detailed description of how the Settlement Fund will be allocated to the different types of Qwest publicly traded securities).  For all types of Qwest publicly traded securities, your actual recovery from the Settlement Fund will depend on a number of variables, including the number of claimants and the types and amounts of securities they purchased, the type and number of Qwest publicly traded securities you purchased, the expense of administrating the claims process and the timing of your purchases and sales, if any (see Plan of Allocation below).

The Settling Parties (defined below) to the Litigation do not agree that the Lead Plaintiffs (defined below) would have prevailed on any of the claims asserted in the Litigation, or on the average amount of damages per security that would have been recoverable if Lead Plaintiffs were to have prevailed on their claims.  Other issues that are the subject of the Litigation on which the parties disagree include: (1) whether any of the statements allegedly made or facts allegedly omitted by the Settling Defendants (defined below) were false, material or otherwise actionable; (2) the extent to which external factors, such as general market conditions, influenced the trading price of

Qwest publicly traded securities at various times during the Class Period; (3) the extent to which the various matters that Lead Plaintiffs allege were materially false or misleading influenced (if at all) the trading price of Qwest publicly traded securities at various times during the Class Period; (4) the extent to which the various allegedly adverse material facts that Lead Plaintiffs allege were omitted influenced (if at all) the trading price of Qwest publicly traded securities at various times during the Class Period; and (5) the appropriate economic model for determining the amount by which the trading prices of Qwest publicly traded securities were allegedly artificially inflated (if at all) at any time during the Class Period.

Counsel for the Lead Plaintiffs believe that the substantial recovery obtained given Nacchio's and Woodruff's financial condition is the largest possible recovery and is in the best interest of the N&W Class (defined below).  Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that the Lead Plaintiffs would not have prevailed on any of their claims, in which case the N&W Class would have received nothing.  Indeed, the Settling Defendants assert that they never made any false or misleading statements or omissions at any time.  In addition, the amount of damages recoverable by the N&W Class, if any, was and continues to be vigorously challenged by the Settling Defendants.  If the claims against the Settling Defendants had gone to trial, recoverable damages, if any, would have been limited to losses caused by conduct actionable under the laws and, had the claims against the Settling Defendants gone to trial, the Settling Defendants intended to assert that all or most of the losses of the members of the N&W Class were caused by non-actionable market, industry or general economic factors.  The Settling Defendants also would have asserted that throughout the Class Period the uncertainties and risks associated with

Qwest's business and financial condition as well as the merger between Qwest and US West were fully and adequately disclosed.

If the settlement is approved by the Court, Lead Counsel will apply to the Court (1) for attorneys fees of 15% of the settlement proceeds, and expenses not to exceed $125,000, and (2) compensation of up to $5,000 for each of the Lead Plaintiffs to reimburse them for their expenses (including lost wages) incurred in prosecuting the Litigation, all to be paid from the Settlement Fund.  If the amounts requested by Lead Counsel are approved by the Court, the average cost per share of common stock would be approximately $0.00175 per share.  The average cost per share could vary depending on the number of shares for which valid claims are submitted.

This Notice is not an expression of any opinion by the Court about the merits of any of the claims or defenses asserted by any party in the Litigation.

For further information regarding this settlement you may contact a representative of Lead Counsel: Rick Nelson, Coughlin Stoia Geller Rudman & Robbins LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, Telephone: 800/449-4900.  Please do not contact the Court or Qwest.

## NOTICE OF SETTLEMENT HEARING ON PROPOSED SETTLEMENT

A settlement hearing will be held on **March 27, 2009, at 1:30 p.m.**, before the Honorable Robert E. Blackburn, United States District Judge, District of Colorado, United States Courthouse, 901 19th Street, Room A-701, Denver, Colorado (the "Settlement Hearing").  The purpose of the Settlement Hearing will be to determine: (1) whether the settlement consisting of $45,000,000 in cash (plus any accrued interest) should be approved as fair, reasonable and adequate to members of the N&W Class; (2) whether the proposed plan to distribute the settlement proceeds (the "Plan of

4

Allocation") is fair, reasonable, and adequate; (3) whether the application by Lead Counsel for an award of attorneys' fees and expenses and the Lead Plaintiffs' request for expenses (including lost wages) should be approved; and (4) whether the Litigation against Nacchio and Woodruff should be dismissed with prejudice and the Released Persons (defined below) released from all Released Claims (defined below) against them.  The Court may adjourn or continue the Settlement Hearing or modify any dates set forth herein without further notice to the N&W Class.

## I. DEFINITIONS USED IN THIS NOTICE

As used in this Notice, the following terms have the meanings specified below:

1. "Authorized Claimant" means any N&W Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

2. "Claimant" means any N&W Class Member of a class certified in accordance with the Stipulation who files or has filed a Proof of Claim in such form and manner and within such time as the Court shall prescribe.

3. "Claims Administrator" means Gilardi & Co. LLC.

4. "Defendants" mean QCII, Arthur Andersen LLP and each of the individuals named as a defendant in the Litigation, including Nacchio and Woodruff.

5. "Effective Date" means the first date by which all of the events and conditions specified in Paragraph 8.1 of the Stipulation have occurred.

6. "Escrow Agent" means Lead Counsel.

7. "Final" means:  (i) if no appeal is timely filed, the expiration date of the time for the filing or noticing of an appeal from the Judgment; or (ii) if an appeal is timely filed, (a) the later of the date of final affirmance on appeal of the Judgment, the expiration of the time for a petition for a writ of certiorari to review the affirmance, a denial of certiorari

that has been timely sought or, if certiorari is granted, the date of final affirmance of the Judgment following review pursuant to that grant; or (b) the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment.

8. "Final Settlement Approval" means an order by the District Court finally approving the terms of the Stipulation pursuant to Fed. R. Civ. P. 23(e).

9. "Judgment" means the judgment or order to be rendered by the District Court, substantially in the form attached as Exhibit B to the Stipulation.

10. "Lead Counsel" means Coughlin Stoia Geller Rudman & Robbins LLP, 655 W. Broadway, Suite 1900, San Diego, CA 92101-3301.

11. "Lead Plaintiffs" mean New England Healthcare Employees Pension Fund, Sat Pal Singh, Tejinder Singh, and Clifford Mosher.

12. "Litigation" means In re Qwest Communications Securities Litigation, Civil Action No. 01-CV-1451-REB-KLM, including all putative class actions consolidated therein.

13. "N&W Class" means all Persons who purchased or otherwise acquired Qwest publicly traded securities (including common stock, bonds, and options) from May 24, 1999 through July 28, 2002 ("Class Period"), except for those Persons who requested and obtained exclusion from the class that was certified by the Court in the Partial Settlement and who subsequently resolved their claims against QCII, Nacchio, Woodruff and others and provided releases of claims against QCII, Nacchio, Woodruff and others.  Excluded from the N&W Class are Defendants and any Persons affiliated with or related to any Defendant.  For purposes of this paragraph, the Persons affiliated with or related to any Defendant are members of the immediate family of each

Defendant, any entity in which any Defendant has a controlling interest, officers and directors of QCII and its subsidiaries and affiliates, and Arthur Andersen LLP ("AA") and AA's partners, shareholders and members, and the legal representatives, heirs, predecessors, successors and assigns of any such excluded party.  Also excluded from the N&W Class are those Persons who request exclusion from the N&W Class in such form and manner, and within such time, as the Court shall prescribe.  Also excluded from the N&W Class is any current or former officer, director, employee, or agent of Qwest who has been sued by the United States Securities and Exchange Commission in connection with such Person's affiliation with or conduct related to Qwest.

14. "N&W Class Member" means a Person who falls within the definition of the N&W Class.

15. "N&W Settlement Fund" means the principal amount of $45,000,000.00 (forty-five million dollars) in cash, plus all interest earned thereon pursuant to the Stipulation.

16. "Net N&W Settlement Fund" means the N&W Settlement Fund, together with any interest earned thereon, less (i) any taxes, (ii) the amount allocated to Lead Counsel for attorneys' fees and expenses pursuant to any Fee and Expense Application (defined in Paragraph 7.1 of the Stipulation) approved by the Court pursuant to Paragraphs 7.1 and 7.2 of the Stipulation, and (iii) the cash allocated to the N&W Class Notice and Administration Fund pursuant to Paragraph 2.8 of the Stipulation.

17. "Partial Settlement" means the Order of the District Court entered on September 29, 2006 [Docket No. 1050], as amended on January 8, 2007 [Docket No. 1096], certifying a class for the purpose of implementing the partial class action settlement provided for in the Stipulation of Partial Settlement between and among Lead

Plaintiffs, Qwest and all other Defendants except Nacchio and Woodruff, and finding that settlement to be fair, reasonable, and adequate to that class in accordance with the standards of Rule 23 of the Federal Rules of Civil Procedure.

18. "Person" means an individual, corporation, partnership, limited partnership, limited liability partnership (LLP), limited liability corporation (LLC), association, joint stock company, estate, legal representative, trust, unincorporated association, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

19. "Plan of Allocation" means the plan or formula of allocation that was approved by the United States District Court for the District of Colorado as part of that Court's approval of the Partial Settlement, which shall be used in distributing the Net N&W Settlement Fund as well.  The Plan of Allocation is not part of the Stipulation and the Defendants and the Related Parties shall have no liability with respect to it.

20. "Preliminary Settlement Approval" means an order by the District Court preliminarily approving the terms of the Stipulation and ordering that notice be issued to the Class pursuant to Fed. R. Civ. P. 23(e).

21. "QCII" means Qwest Communications International Inc.

22. "Qwest" means QCII, any and all successors, subsidiaries, and affiliates of QCII, and any and all current and former officers, directors, employees and agents of any of them, as well as any predecessors of QCII (including but not limited to U S WEST and any successors, subsidiaries, and affiliates thereof) and their successors, subsidiaries, and affiliates, and any and all current and former officers, directors, employees and agents of any of them.  Notwithstanding the foregoing, neither Nacchio nor Woodruff is included in the definition of Qwest.

23. "Qwest Stipulation" shall mean the Stipulation of Partial Settlement, executed by Lead Plaintiffs, Qwest and all other Defendants except Nacchio and Woodruff and filed in this matter on November 21, 2005 [Docket No. 886], which was approved by the District Court in the Partial Settlement and incorporated into the Partial Settlement by reference.

24. "Related Parties" mean each of a Settling Defendant's past or present partners, employees, attorneys, accountants or auditors, banks or investment banks, advisors, personal or legal representatives, insurers, reinsurers, successors,  assigns, spouses, heirs, related or affiliated entities, any partnership in which a Settling Defendant is a general or limited partner, any entity in which a Settling Defendant has a controlling interest, any member of a Settling Defendant's immediate family, or any trust or foundation of which any Settling Defendant is the settlor or which is for the benefit of any Settling Defendant and/or member(s) of his or her family.

25. "Released Claims" shall collectively mean all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, whether based in law or equity, on federal, state, local, foreign, statutory or common law, or any other law, rule, or regulation (including, but not limited to, all claims arising out of or relating to any acts, omissions, disclosures, public filings, registration statements, financial statements, audit opinions, or statements by the Settling Defendants, including without limitation, claims for negligence, gross negligence, constructive or actual fraud, negligent misrepresentation, conspiracy, or breach of fiduciary duty), whether known or unknown, whether or not concealed or hidden, accrued or not accrued, foreseen or unforeseen, matured or not matured, that were asserted or that could have been asserted directly, indirectly, representatively or in any other capacity, at any time, in any

forum by Lead Plaintiffs, the N&W Class Members, or the successors or assigns of any Lead Plaintiff or N&W Class Member, or any of them against the Released Persons arising out of, based upon, or related in any way to:  (a) the purchase, acquisition, sale, or disposition of Qwest securities by any Lead Plaintiff or any N&W Class Member during the Class Period and the allegations that were made or could have been made in the Litigation; (b) the purchase or other acquisition of, the retention of, the sale or other disposition of, or any other transaction involving Qwest securities by any of the Released Persons during the Class Period; or (c) the settlement or resolution of the Litigation (including, without limitation, any claim for attorneys' fees by Lead Plaintiffs or any N&W Class Member).  Released Claims shall also include claims related to any tax effects or tax liabilities (including any interest, penalties and representation costs) arising out of the Stipulation or any payment or transfer made pursuant to the Stipulation.  Released Claims shall also include Unknown Claims otherwise subject to this provision.  Released Claims does not include claims to enforce the terms of the Stipulation.

26. "Released Persons" means each of the Settling Defendants and his Related Parties.

27. "Settling Defendants" mean, collectively, Joseph P. Nacchio and Robert S. Woodruff.

28. "Settling Parties" mean, collectively, each of the Settling Defendants and the Lead Plaintiffs on behalf of themselves and the N&W Class Members.

29. "Stipulation" means the Stipulation of Settlement dated as of August 4, 2008 with all its exhibits.

30. "Unknown Claims" mean any claims that any N&W Class Member or Lead

Plaintiffs do not know or suspect to exist in his, her, its or their favor at the time of the release of the Released Persons which, if known by him, her, it, or them might have affected his, her, its or their settlement with and release of the Released Persons, or might have affected his, her, its, or their decision not to object to this settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiffs shall expressly, and each of the N&W Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights and benefits of California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Lead Plaintiffs shall expressly, and each of the N&W Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542.  The Lead Plaintiffs and N&W Class Members may hereafter discover facts in addition to or different from those that he, she, it or they now know or believe to exist or to be true with respect to the subject matter of the Released Claims, but the Lead Plaintiffs shall have, and each N&W Class Member, upon the Effective Date, and by operation of the Judgment shall be deemed to have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in

the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Lead Plaintiffs acknowledge, and the N&W Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the settlement of which this release is a part.

## II. THE LITIGATION

On July 27, 2001, New England Healthcare Employees Pension Fund filed a class action complaint, entitled New England Health Care Employees Fund v. Qwest et al., Civil Action No. 01-N-1451-REB-CBS, in the United States District Court for the District of Colorado (the "District Court"), alleging various violations of the federal securities laws. A number of similar class action complaints were subsequently filed in the District Court. Pursuant to the Private Securities Litigation Reform Act of 1995, all of the related class action complaints were consolidated under the first filed case, No. 01-N-1451 (the "Litigation" as defined above); New England Healthcare Employees Pension Fund, Clifford Mosher, Tejinder Singh, and Sat Pal Singh were appointed Lead Plaintiffs; and a consolidated class action complaint was filed. Lead Plaintiffs filed amended complaints on December 3, 2001, April 5, 2002, May 2, 2002, August 21, 2002, and February 6, 2004. In the Fifth Amended Complaint, the named defendants in the Litigation were Nacchio, Woodruff, QCII, Arthur Andersen LLP, Philip Anschutz, Robin Szeliga, Stephen Jacobsen, Drake Tempest, Marc Weisberg, James Smith, Lewis Wilks, Craig Slater, Afshin Mohebbi, Gregory Casey, and Vinod Khosla. The causes of action asserted in the Fifth Amended Complaint were for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. Lead Plaintiffs sought

to recover money and/or other relief on behalf of themselves and a putative class.

Defendants moved to dismiss Lead Plaintiffs' various consolidated amended complaints, and Lead Plaintiffs opposed those motions.  The Court granted the motions to dismiss in part and denied them in part, with some individuals being dismissed from the Litigation.  In other instances, claims or allegations were narrowed.

Those Defendants not dismissed from the Litigation filed answers denying all material allegations of Lead Plaintiffs' Fifth Amended Complaint and asserted various defenses.  Lead Plaintiffs and Defendants engaged in extensive discovery, which was coordinated with discovery in several other state and federal securities actions that have since been settled and dismissed, and which continued in coordination with Securities and Exchange Commission v. Nacchio, et al., Civil Action No.05-CV-00480-MSK-CBS.

On or about November 21, 2005, Lead Plaintiffs and all Defendants except Nacchio and Woodruff entered into a Stipulation of Partial Settlement, establishing the terms and conditions for the settlement of all claims by a putative class of Qwest shareholders against all Defendants except Nacchio and Woodruff (the "Qwest Stipulation," as defined above).  Nacchio and Woodruff filed objections to their exclusion from the proposed partial settlement, and particularly to certain "bar orders" and contractual provisions included therein.  In May 2006, the Honorable Robert E. Blackburn of the United States District Court for the District of Colorado conducted a hearing to consider argument and objections to the proposed partial settlement as set forth in the Qwest Stipulation.

On September 28, 2006, the District Court issued an order certifying a class for settlement purposes only, finding the settlement set forth in the Qwest Stipulation to be fair, reasonable, and adequate to that class in accordance with the standards of Rule 23

of the Federal Rules of Civil Procedure and denying the objections to the proposed settlement that had been advanced by Nacchio, Woodruff, and others (the "Partial Settlement," as defined above).  The District Court approved the Qwest Stipulation and incorporated that document into the Partial Settlement.  Nacchio and Woodruff filed an appeal in the United States Court of Appeals for the Tenth Circuit, challenging the Partial Settlement insofar as it overruled their objections and incorporated and approved the bar orders and contractual provisions to which they had objected.  None of the class members who had objected to the Partial Settlement in the District Court pursued appeals and the time to make objections to or appeal the approval of the Partial Settlement has expired.

The Tenth Circuit held that Nacchio and Woodruff had standing to challenge the bar orders and the contractual provisions of the Partial Settlement, and remanded to the District Court "so that it might make appropriate findings and conclusions with respect to Mr. Nacchio's and Mr. Woodruff's objections to the settlement."  New England Health Care Employees Pension Fund v. Woodruff, et al., 512 F.3d 1283, 1286, 1287, 1288-89, 1290-91, reh'g and reh'g en banc denied, 520 F.3d 1255 (10th Cir. 2008).  The District Court has not yet issued a further ruling following the remand from the Tenth Circuit Court of Appeals.

To resolve Nacchio's and Woodruff's objections to the Partial Settlement and disputes between Qwest and the Settling Defendants arising out of the Litigation without further litigation and delay, QCII will contribute to the settlement of claims asserted by a putative class against Nacchio and Woodruff in this Litigation on the terms specified in the Stipulation.  The Stipulation is intended to settle and resolve all of the putative class' claims against Nacchio and Woodruff and to eliminate all objections that Nacchio and

Woodruff have asserted to the Partial Settlement without further litigation and delay.

## III. CLAIMS OF THE LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Lead Plaintiffs believe that the claims asserted in the Litigation have merit and believe that the evidence developed to date supports the claims.  However, the Lead Plaintiffs and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Settling Defendants through trial and appeals.  The Lead Plaintiffs and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties, delays, problems of proof, and possible defenses that are inherent in such litigation.  The Lead Plaintiffs and Lead Counsel are also mindful of the inherent problems of proof under and possible defenses to the violations asserted in the Litigation and of the claims of the Settling Defendants that their available assets would not satisfy a substantial judgment against them, as well as the existence of other litigation against the Settling Defendants that may be resolved before the claims of the N&W Class against them can be tried, which, if successful, will reduce their assets further.  The Lead Plaintiffs and Lead Counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the N&W Class Members, both because it will achieve a substantial recovery with respect to the claims against the Settling Defendants and because it will resolve all remaining objections to the Partial Settlement and thus accelerate the distribution of funds that are the subject of the Partial Settlement, the substantial majority of which will be distributed to N&W Class Members who are participating in the Partial Settlement. Based on their evaluation, the Lead Plaintiffs and Lead Counsel have determined that the settlement set forth in the Stipulation is in the best interests of the N&W Class.

## IV. SETTLING DEFENDANTS' STATEMENT AND DENIALS OF WRONGDOING AND LIABILITY

The Settling Defendants have denied and continue to deny each and all of the claims and contentions alleged in the Litigation.  The Settling Defendants have expressly denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.  The Settling Defendants also have denied and continue to deny, inter alia, the allegations that the Lead Plaintiffs or the N&W Class were harmed by or have suffered any damages as a result of the conduct alleged in the Litigation.

Nonetheless, the Settling Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.  The Settling Defendants also have considered the uncertainty and risks inherent in any litigation, especially in complex cases like this Litigation.  The Settling Defendants have, therefore, determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in the Stipulation.

The Stipulation, and any and all exhibits or documents referred to herein or therein, or any terms or representations herein or therein, or any action taken to carry out the Stipulation, are not, and shall in no event be construed or be deemed to be, evidence of, or an admission or a concession by the Settling Defendants of any fault, liability, obligation (other than those contained in the Stipulation), or damages whatsoever.  The Settling Defendants deny any and all wrongdoing of any kind

whatsoever and deny any liability to Lead Plaintiffs, to the N&W Class Members, or to Qwest.  The Settling Defendants do not concede any infirmity in the defenses they have asserted in the Litigation, nor are any such defenses waived.

Notwithstanding the foregoing, based upon the publicly available information at the time of the Stipulation, the Settling Defendants agree that they will not contest that the Litigation was filed in good faith, was not frivolous, and is being settled voluntarily in an amount and manner that reasonably reflects the risks posed by the claims against the Settling Defendants collectively.

The Stipulation, and any and all exhibits or documents referred to herein or therein, or any terms or representations herein or therein, or any action taken to carry out the Stipulation, are not, and shall in no event be construed or be deemed to be, evidence of, or an admission or a concession by Qwest of any fault, liability, obligation (other than those contained in the Stipulation), or damages whatsoever. Qwest denies any and all wrongdoing of any kind whatsoever and denies any liability to Lead Plaintiffs, to the N&W Class Members, or to the Settling Defendants.  Qwest does not concede any infirmity in the defenses it has asserted in the Litigation, nor are any such defenses waived.

It is the intent of Qwest, Lead Plaintiffs, and the Settling Defendants that the Stipulation shall not be used for any purpose of any kind other than to enforce the provisions of the Stipulation or the provisions of any related agreement, release, or exhibit hereto, or in order to support a defense of res judicata, collateral estoppel, accord and satisfaction, release, or other theory of claim or issue preclusion or similar defense.  Therefore, pursuant to the Stipulation, as ordered by this Court, and pursuant to Federal Rule of Evidence 408, any other Federal Rule of Evidence, the rules of

evidence of the various states, the rules of evidence followed by any quasi-judicial bodies, including regulatory and self-regulatory organizations, and any other applicable law, rule or regulation, Qwest and the Settling Parties agree that the fact of entering into or carrying out the Stipulation, the exhibits hereto, and any negotiations and proceedings related hereto, as well as the settlement itself, (a) shall not be construed as, offered into evidence as, or deemed to be (i) evidence of, (ii) an admission or concession of any obligation (other than those contained in the Stipulation) or liability of, or (iii) an estoppel against, any Defendant, or (iv) a waiver of any applicable statute of limitations or repose, and (b) shall not be offered by a party hereto into evidence, or considered, in any action or proceeding against any Defendant in any judicial, quasi-judicial, administrative agency, regulatory or self-regulatory organization, or other tribunal, or proceeding for any purpose whatsoever, other than to enforce the provisions of the Stipulation or the provisions of any related agreement, release, or exhibit hereto, or in order to support a defense of res judicata, collateral estoppel, accord and satisfaction, release or other theory of claim or issue preclusion or similar defense.

## V. TERMS OF THE PROPOSED SETTLEMENT

The Settlement Fund consists of $45 million in cash, plus any accrued interest thereon.  A portion of the Settlement Fund will be used for certain administrative expenses, including costs of printing and mailing notice of the settlement, the cost of publishing newspaper notices, payment of any taxes assessed against the Settlement Fund and costs associated with the processing of claims submitted.  In addition, as explained below, a portion of the Settlement Fund may be awarded by the Court to Lead Counsel as attorneys' fees and for expenses and to Lead Plaintiffs for their expenses (including lost wages) in representing the N&W Class.  The balance of the

Settlement Fund (the "Net Settlement Fund") will be distributed according to the Plan of Allocation described below to the N&W Class Members who submit valid and timely Proof of Claim and Release forms as described below.

Upon the Effective Date, the Settling Defendants shall be deemed to have, and by operation of the Judgment shall have withdrawn, waived, and abandoned any and all objections, challenges, and appeals they have now, have ever had, or may in the future ever have to the Qwest Stipulation and to the Partial Settlement.  This will allow the monies from the Partial Settlement and this settlement to be distributed to qualifying Class Members.

## VI. PLAN OF ALLOCATION

The Net Settlement Fund will be distributed to N&W Class Members who submit valid, timely Proof of Claim forms ("Authorized Claimants") under the Plan of Allocation described below.  The Plan of Allocation provides that you will be eligible to participate in the distribution of the Net Settlement Fund only if you have a net loss on all transactions in Qwest publicly traded securities, notes/debt or options.

Each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants.  Payment in this manner shall be deemed conclusive against all Authorized Claimants.

The total of all profits shall be subtracted from the total of all losses from transactions during the Class Period to determine if a N&W Class Member has a claim. Only if a N&W Class Member had a net loss, after all profits from transactions in Qwest publicly traded securities, notes/debt or options during the Class Period are subtracted from all losses, will such N&W Class Member be eligible to receive a distribution from

the Net Settlement Fund.

### Qwest Common Stock

1. For shares of Qwest common stock that were **purchased from May 24, 1999 through June 19, 2001**, and

a) sold prior to June 20, 2001, the claim per share is $0 per share;

b) sold from June 20, 2001 to August 1, 2001, the claim per share is $1.74 per share;

c) sold from August 2, 2001 to September 26, 2001, the claim per share is $4.03 per share;

d) sold from September 27, 2001 to October 30, 2001, the claim per share is $7.33 per share;

e) sold from October 31, 2001 to February 12, 2002, the claim per share is $10.38 per share;

f) retained at the end of February 12, 2002, the claim per share is $11.16 per share.

2. For shares of Qwest common stock that were **acquired in the June 30, 2000 merger with U.S. West**, and

a) sold prior to June 20, 2001, the claim per share is $0 per share;

b) sold from June 20, 2001 to August 1, 2001, the claim per share is $2.18 per share;

c) sold from August 2, 2001 to September 26, 2001, the claim per share is $5.04 per share;

d) sold from September 27, 2001 to October 30, 2001, the claim per share is $9.16 per share;

e) sold from October 31, 2001 to February 12, 2002, the claim per share is $12.98 per share;

f) retained at the end of February 12, 2002, the claim per share is $13.95 per share.

3. For shares of Qwest common stock that were **purchased from June 20, 2001 through August 1, 2001**, and

a) sold prior to August 2, 2001, the claim per share is $0 per share;

b) sold from August 2, 2001 to September 26, 2001, the claim per share is $2.29 per share;

c) sold from September 27, 2001 to October 30, 2001, the claim per share is $5.59 per share;

d) sold from October 31, 2001 to February 12, 2002, the claim per share is $8.64 per share;

e) retained at the end of February 12, 2002, the claim per share is $9.42 per share.

4. For shares of Qwest common stock that were **purchased from August 2, 2001 through September 26, 2001**, and

a) sold prior to September 27, 2001, the claim per share is $0 per share;

b) sold from September 27, 2001 to October 30, 2001, the claim per share is $3.30 per share;

c) sold from October 31, 2001 to February 12, 2002, the claim per share is $6.35 per share;

d) retained at the end of February 12, 2002, the claim per share is $7.13 per share.

5. For shares of Qwest common stock that were **purchased from September 27, 2001 through October 30, 2001**, and

a) sold prior to October 31, 2001, the claim per share is $0 per share;

b) sold from October 31, 2001 to February 12, 2002, the claim per share is $3.05 per share;

c) retained at the end of February 12, 2002, the claim per share is $3.83 per share.

6. For shares of Qwest common stock that were **purchased from October 31, 2001 through February 12, 2002**, and

a) sold prior to February 13, 2002, the claim per share is $0 per share;

b) retained at the end of February 12, 2002, the claim per share is $0.78 per share.

7. For shares of Qwest common stock that were **purchased from February 13, 2002 through July 28, 2002**, and

a) sold prior to June 26, 2002, the claim per share is $0;

b) sold from June 26, 2002 through December 31, 2002, the claim per share is the lesser of:

    i)     $4.19 price per share less the sales price per share,

    ii)    the purchase price per share less the sales price per share, or

    iii)   $0.10 per share;

c) retained at the end of December 31, 2002, the claim per share is $0 per share.

## PUBLICLY TRADED QWEST NOTES/DEBT

**"July Exchange Notes" defined as notes issued pursuant to July 12, 2001**

**Registration Statement:**

Qwest Capital Funding Note 7.25% due February 15, 2011

Qwest Capital Funding Note 7.75% due February 15, 2031

**"October Exchange Notes" defined as notes issued pursuant to October 30, 2001**

**Registration Statement:**

Qwest Capital Funding Note 5.875% due August 3, 2004

Qwest Capital Funding Note 7.0% due August 3, 2009

Qwest Capital Funding Note 7.625% due August 3, 2021

**July Exchange Notes**

For Qwest July Exchange Notes **purchased or otherwise acquired from July 12, 2001 through July 28, 2002**, and

a) sold prior to January 1, 2004, the claim per $1,000 par value Note is the difference between the purchase price per $1,000 par value Note and the sales price per $1,000 par value Note;

b) retained at the end of December 31, 2003, the claim per $1,000 par value Note is $0.

**October Exchange Notes**

For Qwest October Exchange Notes **purchased or otherwise acquired from October 30, 2001 through July 28, 2002**, and

a) sold prior to January 1, 2004, the claim per $1,000 par value Note is 25 percent of the difference between the purchase price per $1,000 par value Note and the sales price per $1,000 par value Note;

b) retained at the end of December 31, 2003, the claim per $1,000 par value Note is $0.

**All Other Publicly Traded Notes/Debt**

For all other publicly traded Qwest Notes/Debt **purchased from October 30, 2001 through July 28, 2002**, and

> a) sold prior to January 1, 2004, the claim per $1,000 par value Note/Debt is 10  percent of the difference between the purchase price per $1,000 par value Note/Debt and the sales price per $1,000 par value Note/Debt;
>
> b) retained at the end of December 31, 2003, the claim per $1,000 par value Note/Debt is $0.

## QWEST OPTIONS

### Call Options

1. For Call Options on Qwest common stock that were **purchased during the period May 24, 1999 through July 28, 2002**, and,

> a)      **owned** at the end of one of the following dates: June 19, 2001, August 1, 2001, September 26, 2001, October 30, 2001, February 12, 2002 or June 25, 2002, the claim per Call Option is the difference between the price paid for the Call Option less the proceeds received upon the settlement of the Call Option contract;
>
> b)      **not owned** at the end of one of the following dates: June 19, 2001, August 1, 2001, September 26, 2001, October 30, 2001, February 12, 2002 or June 25, 2002, the claim per Call Option is $0.

2. For Call Options on Qwest common stock that were **written during the period  May 24, 1999 through July 28, 2002**, the claim per Call Option is $0.

### Put Options

1. For Put Options on Qwest common stock that were **written during the period**

**May 24, 1999 through July 28, 2002**, and

a)      **owned** at the end of one of the following dates: June 19, 2001, August 1, 2001, September 26, 2001, October 30, 2001, February 12, 2002 or June 25, 2002, the claim per Put Option is the difference between the amount paid upon settlement of the Put Option contract less the initial proceeds received upon the sale of the Put Option contract.

b)      **not owned** at the end of one of the following dates: June 19, 2001, August 1, 2001, September 26, 2001, October 30, 2001, February 12, 2002 or June 25, 2002, the claim per Put Option is $0.

2. For Put Options on Qwest common stock that were **purchased during the period May 24, 1999 through July 28, 2002**, the claim per Put Option is $0.

3. Note:  In the case the option was exercised for Qwest common stock, the amount paid, or proceeds received, upon the settlement of the option contract equals the intrinsic value of the option using Qwest common stock's closing price on the date the option was exercised.

The total recovery for publicly traded notes/debt shall not exceed 5% of the Net Settlement Fund.  Total recovery for options shall not exceed 1% of the Net Settlement Fund.  Based on the Section 11 claims under the Securities Act of 1933, shares of Qwest common stock acquired in the June 30, 2000 Merger with U.S. West will receive a 25% premium from shares purchased on the open market during the Class Period.  The date of purchase or sale is the "contract" or "trade" date as distinguished from the "settlement" date.  The determination of the price paid per share or security and the price received per share or security shall be exclusive of all commissions, taxes, fees and charges.

For Settlement Class Members who held shares at the beginning of the Class Period or made multiple purchases or sales during the Class Period, the first-in, first-out ("FIFO") method will be applied to such holdings, acquisitions and sales for purposes of calculating a claim.  Under the FIFO method, sales of shares during the Class Period will be matched, in chronological order, first against shares held at the beginning of the Class Period.  The remaining sales of shares during the Class Period will then be matched, in chronological order, against shares purchased or acquired during the Class Period.

The Court has reserved jurisdiction to allow, disallow or adjust the claim of any N&W Class Member on equitable grounds.

## VII. PARTICIPATION IN THE N&W CLASS

If you fall within the definition of the N&W Class, you are a N&W Class Member unless you elect to be excluded from the N&W Class (see Section VIII below).  If you do not request to be excluded from the N&W Class in the manner specified in Section VIII below, you will be bound by any Judgment entered with respect to the settlement of the claims against Nacchio and Woodruff in the Litigation whether or not you submit a Proof of Claim and Release form.

**As discussed below, if you are an N&W Class Member, you need do nothing (other than timely file a properly completed Proof of Claim and Release form (and only then if you have not already done so in connection with the Partial Settlement) if you wish to participate in the distribution of the Net Settlement Fund).  Your interests will be represented by Lead Plaintiffs and Lead Counsel.**  If you choose, you may enter an appearance individually or through your own counsel at your own expense; provided, however, that in order to be heard at the Settlement

Hearing or pose an objection to the settlement, you and your counsel must follow the procedures set forth in Section XII below.

In November 2005, Lead Plaintiffs and Qwest (along with other defendants, but not including Woodruff and Nacchio) entered into a settlement (the "Partial Settlement") which provided for the establishment of a settlement fund in the amount of $400,000,000 for the benefit of N&W Class Members, among others.  In connection with the Partial Settlement, a "Notice of Pendency and Proposed Partial Settlement of Class Action" dated January 5, 2006 and a Proof of Claim and Release ("Proof of Claim") were mailed to N&W Class Members, among others.  **IF YOU SUBMITTED A PROOF OF CLAIM IN CONNECTION WITH THAT PRIOR NOTICE, YOU DO NOT NEED TO SUBMIT ANOTHER.**  If you are not sure whether you previously submitted a Proof of Claim, you may contact the Claims Administrator and at www.gilardi.com and follow the instructions set forth under the case (i.e., "Qwest") heading.  Alternatively, you may call the Claims Administrator toll-free at 1-800-516-6339.  If you have not previously submitted a Proof of Claim, you must do so now in order to share in the settlement fund.  You may obtain a copy of the Proof of Claim and Release for this settlement by writing or calling Gilardi & Co., P.O. Box 5100, Larkspur, California 94977-5100 (1-800-516-6339), or you may obtain a copy of the Proof of Claim at www.gilardi.com.

**TO PARTICIPATE IN THE DISTRIBUTION OF THE NET SETTLEMENT FUND, YOU MUST TIMELY COMPLETE AND RETURN, IF YOU HAVE NOT ALREADY DONE SO, AS DISCUSSED ABOVE, A PROOF OF CLAIM AND RELEASE FORM.**
The Proof of Claim and Release form must be postmarked on or before **March 10, 2009**, and be sent to the Qwest Claims Administrator at the address below.  Unless the Court orders otherwise, if you have not submitted or do not timely submit a valid Proof of Claim

27

and Release form, you will be barred from receiving any payments from the Net

Settlement Fund, but will in all other respects be bound by the provisions of the

Stipulation and the Judgment.

**VIII. EXCLUSION FROM THE N&W CLASS**

You may request to be excluded from the N&W Class.  To do so, you must mail a

written request stating that you wish to be excluded from the N&W Class to:

> Qwest Claims Administrator
> c/o Gilardi & Co. LLC
> P.O. Box 5100
> Larkspur, California 94977-5100

In order to be valid and effective, the request for exclusion must contain the

following information:

First, list your name, address, and telephone number.

Second, for each purchase or other acquisition of any Qwest stock, bonds, or

options from May 24, 1999 through July 28, 2002, identify (i) the date the stock, bonds,

or options were purchased or otherwise acquired; (ii) the number of shares, bonds, or

options that were purchased or otherwise acquired; and (iii) the price paid for each

share, bond, or option purchased or otherwise acquired.

Third, for each purchase or other acquisition of any Qwest stock, bonds, or

options from May 24, 1999 through July 28, 2002, state whether such stock, bonds or

options were sold or otherwise disposed of and, for each such sale or disposition identify

(i) the date the stocks, bonds, or options were sold or otherwise disposed of; (ii) the

number of shares, bonds, or options that were sold or otherwise disposed of; and (iii) the

price obtained for each share, bond, or option sold or otherwise disposed of.

Fourth, separately identify the number of shares of Qwest common stock (if any)

acquired as a result of the merger between Qwest and US West, the record date of which was June 30, 2000.

YOUR EXCLUSION REQUEST MUST BE POSTMARKED ON OR BEFORE **January 28, 2009**, AND, IN ORDER TO BE VALID, MUST CONTAIN ALL OF THE FOREGOING INFORMATION.  IF YOU SUBMIT A VALID TIMELY, AND COMPLETE REQUEST FOR EXCLUSION, YOU SHALL HAVE NO RIGHTS UNDER THE SETTLEMENT, SHALL NOT SHARE IN THE DISTRIBUTION OF THE NET SETTLEMENT FUND, AND SHALL NOT BE BOUND BY THE STIPULATION OR THE FINAL JUDGMENT.  IF YOUR EXCLUSION REQUEST FAILS TO CONTAIN ALL THE FOREGOING INFORMATION, IT WILL BE INVALID AND YOU WILL BE BOUND BY THE TERMS AND CONDITIONS OF THE STIPULATION AND JUDGMENT.

## IX. DISMISSAL AND RELEASES

If the settlement is approved, the Court will enter a Judgment in the Litigation. The Judgment will dismiss the Released Claims with prejudice as to all Settling Defendants.

The Judgment will also provide that all N&W Class Members who have not validly and timely requested to be excluded from the N&W Class shall be deemed to have released and forever discharged all Released Claims (to the extent members of the N&W Class have such claims) against all the Released Persons.

## X. APPLICATION FOR FEES AND EXPENSES

At the Settlement Hearing, Lead Counsel will request the Court to award attorneys' fees of 15% of the Settlement Fund, plus expenses, not to exceed $125,000, which were incurred in connection with the Litigation, plus interest thereon.  In addition, certain of the Lead Plaintiffs in the Litigation may seek up to $5,000 each for their

expenses incurred (including lost wages) in prosecuting the Litigation.  Class Members are not personally liable for any such fees or expenses.

## XI. CONDITIONS FOR SETTLEMENT

The settlement is conditioned upon the occurrence of certain events described in the Stipulation.  Those events include, among other things: (1) entry of the Judgment by the Court as provided for in the Stipulation; and (2) expiration of the time to appeal from or alter or amend the Judgment.  If, for any reason, any one of the conditions described in the Stipulation is not met, the Stipulation might be terminated and, if terminated, will become null and void, and the parties to the Stipulation will be restored to their respective positions in the Litigation prior to the settlement.

## XII. THE RIGHT TO BE HEARD AT THE SETTLEMENT HEARING

Any N&W Class Member who has not validly, timely, and completely requested to be excluded from the N&W Class, and who objects to any aspect of the settlement, the Plan of Allocation, Lead Counsel's application for attorneys' fees and expenses, or the Lead Plaintiffs' request for reimbursement may appear and be heard at the Settlement Hearing.  Any such person must file a written notice of objection, filed with the Clerk of the Court on or before **January 28, 2009**, and served by hand or first class mail on each of the following:

CLERK OF THE COURT
DISTRICT OF COLORADO
United States Courthouse
901 19th Street, Room A-105
Denver, CO  80294

and

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
KEITH F. PARK

655 West Broadway, Suite 1900
San Diego, CA  92101-3301

Lead Counsel for Plaintiffs

BOIES, SCHILLER & FLEXNER LLP
DAVID BOYD
5301 Wisconsin Ave., N.W., Suite 800
Washington, DC  20015

Counsel for Qwest

STERN & KILCULLEN, LLC
HERBERT J. STERN
JOEL M. SILVERSTEIN
JEFFREY SPEISER
75 Livingston Avenue
Roseland, NJ 07068

Counsel for Joseph P. Nacchio

CLIFFORD CHANCE US LLP
DAVID MEISTER
JAMES MILLER
31 West 52nd Street
New York, NY 10166

Counsel for Robert S. Woodruff

Any such written objection must demonstrate the objecting person's membership in the N&W Class, including the number and type of Qwest publicly traded securities purchased and sold during the Class Period, and contain a statement of the reasons for objection.  Only N&W Class Members who have submitted written notices of objection in this manner will be entitled to be heard at the Settlement Hearing, unless the Court orders otherwise.  In addition, any N&W Class Member who desires to present evidence at the Settlement Hearing must include in his, her or its written objection the identity of any witnesses he, she or it may call to testify, and any exhibits he, she or it intends to introduce into evidence at the Settlement Hearing.

### XIII. SPECIAL NOTICE TO NOMINEES

If you, as nominee for a beneficial owner, hold or held any Qwest publicly traded securities purchased or acquired during the Class Period, then, within ten (10) days after you receive this Notice, you must either: (1) request additional copies of the Notice, and, within ten (10) days after the receipt of the additional copies of the Notice, send them by first class mail to all such beneficial owners and send a statement to the Claims Administrator confirming that the mailings  were made as directed; or (2) if you have not already done so in connection with the Partial Settlement with Qwest and others described in the Notice dated January 5, 2006, provide a list of the names and addresses of such beneficial owners to the Qwest Claims Administrator:

> Qwest Claims Administrator
> c/o Gilardi & Co. LLC
> P.O. Box 5100
> Larkspur, California 94977-5100

If you choose to mail the Notice yourself, you may obtain from the Qwest Claims Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred by you in connection with forwarding the Notice and which would not have been incurred but for the obligation to forward the Notice, upon submission of appropriate documentation to the Qwest Claims Administrator.

### XIV. EXAMINATION OF PAPERS

This Notice is a summary and does not describe all of the details of the

Stipulation.  For full details of the matters discussed in this Notice, you may review the pleadings and Stipulation filed with the Court, which may be inspected during business hours, at the office of the Clerk of the Court, United States District Court, District of Colorado, United States Courthouse, 901 19th Street, Room A-105, Denver, Colorado. Further, the Stipulation, its exhibits, and additional copies of this Notice and the Proof of Claim and Release are available on the Internet at www.gilardi.com.

If you have any questions about the settlement of the claims against Nacchio and Woodruff in the Litigation, you may contact Lead Counsel by writing:

> COUGHLIN STOIA GELLER
>   RUDMAN & ROBBINS LLP
> KEITH F. PARK
> 655 West Broadway, Suite 1900
> San Diego, CA  92101-3301

**PLEASE DO NOT CONTACT THE COURT, ANY DEFENDANTS OR QWEST**

**REGARDING THIS NOTICE.**

DATED:  _____, 200_        BY ORDER OF THE COURT
                                                         UNITED STATES DISTRICT COURT
                                                         DISTRICT OF COLORADO