## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 01-cv-1451-REB-KLM

(Consolidated with Civil Action Nos. 01-cv-1472-REB-PAC, 01-cv-1527-REB-PAC, 01-cv-1616-REB-PAC, 01-cv-1799-REB-PAC, 01-cv-1930-REB-PAC, 01-cv-2083-REB-PAC, 02-cv-0333-REB-PAC, 02-cv-0374-REB-PAC, 02-cv-0507-REB-PAC, 02-cv-0658-REB-PAC, 02-cv-755-REB-PAC, 02-cv-798-REB-PAC and 04-cv-0238-REB-PAC)

In re QWEST COMMUNICATIONS INTERNATIONAL, INC. SECURITIES LITIGATION

---

## LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
## SETTLEMENT WITH ALL REMAINING DEFENDANTS

---

## TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS | 4 |
| III. | THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE | 7 |
| | A. The Settlement Was Fairly and Honestly Negotiated | 7 |
| | B. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt | 8 |
| | C. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief | 13 |
| | D. The Recommendation of Experienced Counsel and Court Appointed Lead Plaintiffs Strongly Favor Approval of the Settlement | 17 |
| IV. | THE NOTICE PROGRAM MEETS THE REQUIREMENTS OF THE PSLRA, DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE | 18 |
| V. | THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND HAS PREVIOUSLY BEEN APPROVED | 19 |
| VI. | CONCLUSION | 20 |

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aks v. Southgate Trust Co.*,
No. 92-2193-JWL, 1992 U.S. Dist. LEXIS 20442
(D. Kan. Dec. 24, 1992) .................................................................................. 5, 6

*Alvarado Partners, L.P. v. Mehta*,
723 F. Supp. 540 (D. Colo. 1989) .................................................................... 6, 13

*Anixter v. Home-State Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................................... 9

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990) ................................................................................. 12

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979) ............................................................................... 12

*Bryant v. Avado Brands, Inc.*,
100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd and remanded
on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161
(11th Cir. 2001) .................................................................................................... 8

*Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) .............................................................................. 8

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ................................................................................................ 5

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ............................................................................... 5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........................................................................................... 15

*Diaz v. Romer*,
801 F. Supp. 405 (D. Colo. 1992),
*aff'd*, 9 F.3d 116 (10th Cir. 1993) ......................................................................... 5

*Gottlieb v. Wiles*,
11 F.3d 1004 (10th Cir. 1993) ....................................................................... 5, 6, 13

**Page**

*Grady v. de Ville Motor Hotel, Inc.*,
   415 F.2d 449 (10th Cir. 1969)................................................................................ 5

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975)............................................................................... 19

*In re Apollo Group, Inc. Sec. Litig.*,
   No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
   (D. Ariz. Aug. 4, 2008) ...................................................................................... 12

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   603 F.2d 1353 (9th Cir. 1979)............................................................................ 19

*In re Ikon Office Solutions, Inc.*,
   194 F.R.D. 166 (E.D. Pa. 2000)........................................................................... 8

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976)................................................................... 6, 17

*In re New Mexico Natural Gas Antitrust Litig.*,
   607 F. Supp. 1491 (D. Colo. 1984)...................................................................... 6

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) .......................... 16

*In re Petro-Lewis Sec. Litig.*,
   No. 84-C-326, 1984 U.S. Dist. LEXIS 24881 (D. Colo. Dec. 28, 1984) ............... 6

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   396 F. Supp. 2d 1178 (D. Colo. 2004)............................................................... 10

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   No. 01-cv-01451-REB-CBS, 2006 U.S. Dist. LEXIS 71039
   (D. Colo. Sept. 28, 2006)....................................................................... 6, 11, 19

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ............................................................... 19

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ................ 16

**Page**

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................................... 7

*Jones v. Nuclear Pharmacy, Inc.*,
741 F.2d 322 (10th Cir. 1984)......................................................................... *passim*

*Kaufman v. Motorola, Inc.*,
No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
(N.D. Ill. Sept. 19, 2000) ..................................................................................... 15

*Lopez v. City of Santa Fe*,
206 F.R.D. 285 (D.N.M. 2002)............................................................................. 17

*Lucan v. Kmart Corp.*,
234 F.R.D. 688 (D. Colo. 2006) .......................................................................... 17

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983)............................................................................. 12

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977)............................................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ........................................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)............................................................................. 5, 6

*Piper v. Chris-Craft Indus.*,
430 U.S. 1 (1977) ............................................................................................... 12

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
390 U.S. 414 (1968) ............................................................................................. 5

*Reynolds v. NFL*,
584 F.2d 280 (8th Cir. 1978)............................................................................... 19

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997)........................................................................... 12

**Page**

*Rubenstein v. Republic Nat'l Life Ins. Co.*,
74 F.R.D. 337 (N.D. Tex. 1976)........................................................................ 13

*Semerenko v. Cendant Corp.*,
223 F.3d 165 (3d Cir. 2000).............................................................................. 15

*United States v. Nacchio*,
519 F.3d 1140 (10th Cir. 2008)........................................................................ 13

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)............................................................................... 4

*Wilkerson v. Martin Marietta Corp.*,
171 F.R.D. 273 (D. Colo. 1997).................................................................... 5, 16

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) ............................................................................................ 4

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§77k............................................................................................... 9, 10, 15
§77z-1(a)(7)............................................................................................. 19
§78j(b) ...................................................................................... 9, 14, 15
§78u-4(a)(7)............................................................................................ 19

Federal Rules of Civil Procedure
Rule 23 .............................................................................................. 18, 19
Rule 23(e)............................................................................................. 1, 5
Rule 50(b)............................................................................................... 12

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs submit this motion in support of their request for final approval of the settlement with the remaining two defendants in this case, Joseph P. Nacchio ("Nacchio") and Robert S. Woodruff ("Woodruff") on the terms contained in the Stipulation of Settlement dated as of August 4, 2008 (the "Stipulation").[1]  The settlement with these two defendants completely resolves this action.[2]

In November 2005, Lead Plaintiffs entered into the first stipulation of settlement in this action which encompassed all claims against all defendants in this action except Nacchio and Woodruff.  The Court approved the previous settlement in September 2006 over Nacchio's and Woodruff's objections, prompting them to appeal.  The Court of Appeals subsequently remanded the action back to this Court for further findings. However, this settlement now resolves all objections by Nacchio and Woodruff and completely resolves this litigation.

---

[1]    All capitalized terms not defined herein shall have the same meanings as set forth in the Stipulation.

[2]    Pursuant to L.Civ. R. 7.1 the parties have conferred regarding this motion, and the Settling Defendants and Qwest do no oppose it.  While Settling Defendants and Qwest do not oppose Lead Plaintiffs' Motion, they specifically deny many of the factual allegations asserted in the Dowd Declaration.

This settlement provides for the payment of $45 million in cash for the benefit of the N&W Class.[3] This is above and beyond the $400 million previously paid by the other defendants in this action. An additional $250 million in cash has been distributed to the class from the Securities and Exchange Commission ("SEC") Distribution Fund. The $45 million is a substantial settlement on its own, and, if combined with the earlier $400 million recovery, Lead Plaintiffs believe it to be in the top 25 class action securities settlements achieved after the passage of the Private Securities Litigation Reform Act of 1995

------

[3]     The settlement is on behalf of the stipulated class defined in the Stipulation as the "N&W Class":

> "N&W Class" means all Persons who purchased or otherwise acquired Qwest publicly traded securities (including common stock, bonds, and options) from May 24, 1999 through July 28, 2002 ("Class Period"), except for those Persons who requested and obtained exclusion from the class that was certified by the Court in the Partial Settlement and who subsequently resolved their claims against QCII, Nacchio, Woodruff and others and provided releases of claims against  QCII, Nacchio, Woodruff and others. Excluded from the N&W Class are Defendants and any Persons affiliated with or related to any Defendant.  For purposes of this Paragraph, the Persons affiliated with or related to any Defendant are members of the immediate family of each Defendant, any entity in which any Defendant has a controlling interest, officers and directors of QCII and its subsidiaries and affiliates, and Arthur Andersen LLP ("AA") and AA's partners, shareholders and members, and the legal representatives, heirs, predecessors, successors and assigns of any such excluded party.  Also excluded from the N&W Class are those Persons who request exclusion from the N&W Class in such form and manner, and within such time, as the Court shall prescribe. Also excluded from the N&W Class is any current or former officer, director, employee, or agent of Qwest who has been sued by the United States Securities and Exchange Commission in connection with such Person's affiliation with or conduct related to Qwest.

*See* Stipulation at ¶1.13.

- 2 -

("PSLRA"). Lead Plaintiffs and their counsel believe that the settlement with Nacchio and Woodruff is an outstanding result and merits the approval of the Court.

This case has been vigorously litigated at every stage. Throughout, counsel for Nacchio and Woodruff asserted aggressive defenses and consistently expressed their belief that Lead Plaintiffs would not prevail on their claims. At the time of settlement, Lead Counsel had spent countless hours reviewing and analyzing documents, taking and defending depositions, and engaging in extensive motion practice. The settlement negotiations were equally hard fought and spanned more than two years.

In reaching the determination to settle this action against Nacchio and Woodruff, Lead Counsel have carefully considered the substantial risks and obstacles of achieving a better result after continued litigation. As discussed herein and in the accompanying Declaration of Michael J. Dowd in Support of Motion for Final Approval of Class Action Settlement with all Remaining Defendants and Award of Attorneys' Fees and Expenses ("Dowd Declaration"), Lead Plaintiffs faced numerous factual and legal issues, including disputed issues of falsity, scienter and damages that created the risk that Lead Plaintiffs would not be able to prove their claims and establish significant damages at trial. While Lead Counsel believe that they had developed substantial evidence to support Lead Plaintiffs' allegations and establish liability at trial, Nacchio and Woodruff vigorously asserted that certain testimony and documents undercut those allegations and supported their defenses. As a result, Lead Plaintiffs faced the risk that the trier of fact would favor Nacchio's and Woodruff's arguments and interpretations of the evidence and absolve them of liability. Lead Plaintiffs' ability to conduct discovery and prepare this case for trial has

also been severely delayed and hampered by the stay on certain discovery due to the pending criminal case against defendant Nacchio (*USA v. Nacchio*, 1:05-cr-00545-EWN (D. Colo. Filed 12/20/2005)) and the action by the SEC (*Securities and Exchange Commission v. Nacchio, et al.*, 1:05-cv-00480-MSK-CBS (D. Colo. Filed 3/15/05)).

Lead Counsel, who have extensive experience in prosecuting securities class actions, have concluded that the settlement is an outstanding result under all of the circumstances present here and clearly in the best interest of the N&W Class. This conclusion is based on, among other things, a complete analysis of the evidence, the legal and factual issues presented, the risk, expense and delay of proceeding to trial, and counsel's past experience in litigating complex actions similar to the present action. Significantly, the Lead Plaintiffs who were appointed by the Court, and have been actively involved in the litigation and the settlement process, support Lead Counsel's conclusion and believe the settlement represents a very favorable recovery on behalf of the N&W Class.

For all the reasons discussed herein and in the Dowd Declaration, it is respectively submitted that the settlement with Nacchio and Woodruff is eminently fair, reasonable and adequate to the N&W Class and should be approved by the Court.

## II. THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

An "overriding public interest" exists "in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted). Courts have long held that the settlement of disputed claims is favored as a matter of public policy. *Williams v. First Nat'l Bank*, 216 U.S. 582,

- 4 -

595 (1910); *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969);

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997); *Aks v. Southgate*

*Trust Co.*, No. 92-2193-JWL, 1992 U.S. Dist. LEXIS 20442, at *29 (D. Kan. Dec. 24, 1992).

This is especially true in the context of class action litigation. *See, e.g., Officers for Justice*

*v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *Cotton v. Hinton*, 559 F.2d 1326,

1331 (5th Cir. 1977); *Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) (in approving

class action settlement, court explained that a "consensual resolution of a dispute is always

preferred"), *aff'd*, 9 F.3d 116 (10th Cir. 1993).

In deciding whether to approve a proposed settlement of a stockholders' class action

under Federal Rule of Civil Procedure 23(e), this Court must find that the proposed

settlement is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th

Cir. 1993). The United States Supreme Court has stressed that:

> [T]he judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414,

424-25 (1968).

The district court must exercise its "sound discretion" in approving a settlement.

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). But, as the Supreme

Court has instructed, courts should not adjudicate the merits of the action, nor substitute

their judgment for that of the parties who negotiate the settlement. *Carson v. Am. Brands,*

*Inc.*, 450 U.S. 79, 88 n.14 (1981). As a district court in this Circuit has stated:

- 5 -

> "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned.  Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits."

*In re New Mexico Natural Gas Antitrust Litig.*, 607 F. Supp. 1491, 1497 (D. Colo. 1984)

(quoting *Officers for Justice*, 688 F.2d at 625).

In *Jones*, the Tenth Circuit established factors for courts to consider in assessing the

fairness of a settlement:

> In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate.  In assessing whether the settlement is fair, reasonable and adequate the trial court should consider:
>
> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protected and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

741 F.2d at 324; *see also Gottlieb*, 11 F.3d at 1014.  *Accord In re Qwest Commc'ns Int'l,*

*Inc. Sec. Litig.,* No. 01-cv-01451-REB-CBS, 2006 U.S. Dist. LEXIS 71039, at *15 (D. Colo.

Sept. 28, 2006); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989);

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976); *Aks*, 1992 U.S. Dist.

LEXIS 20442, at *29; *In re Petro-Lewis Sec. Litig.*, No. 84-C-326, 1984 U.S. Dist. LEXIS

24881 (D. Colo. Dec. 28, 1984).

The *Jones* factors require the Court to decide whether the proposed settlement falls

within the range of reasonable settlements, taking into account that settlements are

- 6 -

compromises between the parties reflecting subjective, unquantifiable judgments concerning the risks and possible outcomes of litigation. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989) ("[T]he essence of settlement is compromise. Compromise involves the moderation of lofty and idealized hopes and the relinquishment of unyielding and absolute positions."), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992). The proposed settlement easily satisfies each of the factors articulated by the Tenth Circuit in *Jones*.

## III.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.    The Settlement Was Fairly and Honestly Negotiated

The first factor the Tenth Circuit considers critical to any assessment of the fairness of a class action settlement—whether the proposed settlement was fairly and honesty negotiated – fully supports the conclusion that the settlement merits this Court's approval. Here, highly experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, engaged in lengthy, arm's-length negotiations to reach this settlement.

After the Court's approval of the previous settlement with Qwest and other defendants, counsel for the parties conducted settlement negotiations (spanning more than two years). Each of the parties to the settlement is represented by highly competent and experienced attorneys who zealously litigated and negotiated for their respective clients.

Additionally, at the time of the prior settlement, Lead Counsel had reviewed and analyzed approximately nine million pages of documents, took or attended more than 75 depositions, and conferred with experts, enabling them to evaluate the strengths and

weaknesses of the litigation.  Since the Court approved the prior settlement, Lead Counsel

have taken an additional 18 depositions, defended this Court's order regarding the waiver

of attorney-client privilege, continued to collect and analyze voluminous discovery and

investigative material, monitored the criminal trial of defendant Nacchio and performed

various other tasks.

As a result of the extensive analysis of all claims and defenses by Lead Counsel and

the extensive settlement negotiations, there can be no legitimate question that the

proposed settlement was fairly and honestly negotiated.  Indeed, Lead Counsel who have

vast experience in securities class action litigation have made a considered judgment that

the proposed settlement is a fair and reasonable result for the N&W Class.

## B.   Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

The second factor considered by the Tenth Circuit is whether there were "serious

questions of law and fact . . . [that] plac[ed] the ultimate outcome of the litigation in doubt."

*Jones*, 741 F.2d at 324.  In assessing the settlement, the Court should balance the benefits

of the substantial certain recovery for the N&W Class, against the risks of continued

litigation.  A balance of these factors strongly supports the approval of the settlement.  Lead

Plaintiffs would face difficult factual and legal hurdles with no guarantee of success if the

litigation were to continue.  This case is no exception to the reality that securities class

action litigation involves complex issues of fact and law.[4]  The future course of the litigation

---

[4]      While courts have long recognized that shareholder litigation is notably difficult,
"securities actions have become more difficult from a plaintiff's perspective in the wake of

undoubtedly would have proven to be complex, uncertain and even more time-consuming. Nacchio and Woodruff vehemently deny any wrongdoing and have raised numerous factual and legal defenses to Lead Plaintiffs' claims.

The crux of Lead Plaintiffs' case is that defendants caused the price of Qwest's securities to be artificially inflated by making false or misleading statements about Qwest's business and engaging in a series of improper accounting manipulations in violation of Generally Accepted Accounting Principles ("GAAP"). Lead Plaintiffs alleged that defendants concealed these accounting manipulations from the investing public by issuing various false and misleading statements concerning Qwest's business and financial condition in Qwest's SEC filings, press releases, communications with the financial media, and in analyst reports about Qwest. Lead Plaintiffs' principal claims against Nacchio and Woodruff are under §10(b) of the Securities Exchange Act of 1934 and §11 of the Securities Act of 1933.

To establish liability under §10(b), Lead Plaintiffs would bear the burden of proving, *inter alia*, that Nacchio and Woodruff made an untrue statement of material fact or failed to state a material fact, in connection with the purchase or sale of a security, that the information impacted the market price of the securities, that plaintiffs' reliance on defendants' actions caused damage and that Nacchio and Woodruff acted with scienter. *Anixter v. Home-State Prod. Co.,* 77 F.3d 1215, 1225 (10th Cir. 1996). While proof of fraud

the PSLRA." *In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also Bryant v. Avado Brands, Inc.,* 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000), *rev'd and remanded on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

is not necessary for Lead Plaintiffs to prevail under their §11 claims, Nacchio and Woodruff are entitled to a "market decline" defense. Establishing liability and damages through continued hard fought litigation posed a potential threat to any recovery.

The accounting manipulations at issue are complex and even if Lead Plaintiffs proved that the alleged accounting manipulations violated GAAP, they would also have to prove through expert testimony that Nacchio and Woodruff acted recklessly. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 396 F. Supp. 2d 1178, 1186 (D. Colo. 2004). Assuming that Lead Plaintiffs survived motions for summary judgment, these complex accounting issues would be left in the hands of the jury to evaluate each side's expert testimony and arrive at a decision on liability. As such there was a particular risk to Lead Plaintiffs' hopes of prevailing at trial.

Convincing a jury of Nacchio's and Woodruff's intent to make material misrepresentations and/or omissions, which they adamantly deny, is far from certain. Nacchio and Woodruff would have argued that they did not possess scienter because they did not participate in and were not aware of the alleged fraudulent accounting. Furthermore, Lead Plaintiffs expect that Nacchio and Woodruff would argue that, at best, any misstatements or omissions attributable to either of them were made accidentally, mistakenly or negligently, thus absolving them of liability. There is no question that Nacchio and Woodruff would have raised every available argument and presented evidence in support of their contentions that there were no material misstatements or omissions and that they did not act with scienter.

- 10 -

Lead Plaintiffs believe that they ultimately could have demonstrated the requisite scienter and prevailed on their claims. However, a trier of fact could disagree as to certain statements or omissions and be swayed by Nacchio's and Woodruff's witnesses. The risks of establishing liability posed by conflicting testimony and evidence would be exacerbated by the following risks inherent in all shareholder litigation: the unpredictability of a lengthy and complex jury trial; the risk that witnesses could suddenly become unavailable or jurors could react to the evidence in unforeseen ways; the risk that the jury would find that some or all of the misrepresentations and omissions were not material during part or all of the Class Period; and the risk that the jury would find that defendants reasonably believed in the appropriateness of their actions at the time and that, as to certain claims, Lead Plaintiffs failed to prove that Nacchio and Woodruff acted with scienter. Indeed, when evaluating the previous settlement in this case, which possessed the same litigation risks presented here, this Court found, "[t]he accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic. . . . The risk that a jury would deny recovery to the plaintiffs is substantial." *Qwest*, 2006 U.S. Dist. LEXIS 71039, at *17-*18. By contrast, this settlement is an excellent result for the N&W Class and eliminates all of these risks.

In short, there is no guarantee of success at trial in complex class action cases. For example, some of the same plaintiff lawyers involved in this litigation tried a tobacco class action entitled *Iron Workers Local Union No. 17 Insurance Fund, et al. v. Phillip Morris Incorporated, et al.*, to verdict in March 1999. Despite what plaintiffs in that case believed was very strong evidence of culpable conduct, the jury found for defendants. Similarly, in

August 2008, a court in the District of Arizona vacated a securities class action jury verdict of up to $277.5 million (depending on the claims that would have been made) based on a post-trial motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008).

Even if Lead Plaintiffs prevailed at trial, it is almost certain given the competing legal precedent and the differing views of the evidence that Nacchio and Woodruff would appeal the verdict and award. Indeed, defendant Nacchio's appeal in the criminal action against him has thus far been successful. The appeals process would span several years, during which time members of the class would receive no distribution from the awarded damages. Moreover, an appeal of the verdict would carry the risk of reversal, in which case the class would receive nothing after having prevailed on their claims at trial. *See Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing plaintiff's jury verdict of $81 million for securities fraud).[5]

---

[5] *See also*, *e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (en banc) (action dismissed following 11 years of litigation and a $30 million judgment for plaintiffs following trial that was largely affirmed by the first appellate panel); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979); *Piper v. Chris-Craft Indus.*, 430 U.S. 1 (1977) (reversing Second Circuit's award of damages under Williams Act in amount of $25,793,365 after eight years of litigation).

- 12 -

## C.    The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief

The third factor for evaluating the adequacy of a class action settlement – whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation – strongly supports approval of the settlement. *Gottlieb*, 11 F.3d at 1014; *Jones*, 741 F.2d at 324; *see also Alvarado Partners*, 723 F. Supp. at 546. This factor weighs the value of an immediate recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Gottlieb*, 11 F.3d at 1015. As many courts have noted, "'[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation.'" *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976) (citation omitted); *see also Alvarado Partners*, 723 F. Supp. at 547. This principle is particularly important here where the parallel actions by the United States Attorney's Office and the SEC have already significantly delayed the progress of this litigation.

One of the main factors in reaching this settlement was the potential further delay of this litigation pending the outcome of the ongoing Nacchio criminal proceedings and the SEC action. For example, Nacchio's conviction was reversed by a Tenth Circuit panel. *United States v. Nacchio*, 519 F.3d 1140 (10th Cir. 2008). The government sought, and was granted, *en banc* review of the panel opinion, and the Court of Appeals heard oral argument *en banc* in October 2008. No opinion or order has been issued to date. Whether the criminal action comes back to the District Court, and if so, when, are questions that would have to be answered prior to this litigation being allowed to proceed to trial.

Additionally, discovery in the SEC action is not set to close until March 2009, and no trial date is set. Further, many of the key witnesses were embargoed by the Department of Justice.[6] Moreover, while potentially positive *res judicata* or collateral estoppel effects of a judgment may inure to Lead Plaintiffs' and the class's benefit, the damages the government is seeking in judgment would likely bankrupt Nacchio and Woodruff – meaning the government's success is a detriment to any financial recovery for the private civil class members. Additionally, even if the government is successful in achieving a judgment against Nacchio and Woodruff, they have shown a willingness to appeal decisions to the Court of Appeals and beyond, further delaying any final resolution.[7]

Furthermore, as discussed above and in the Dowd Declaration, Lead Plaintiffs faced significant risks in proving liability. Even if Lead Plaintiffs were able to overcome the risks in proving liability, they would still face the risks of proving loss causation and damages. The determination of damages is a complicated and uncertain process, involving the analysis of many subjective factors. Damages in a §10(b) action are measured by "the difference between the purchase price and the 'true value' of the security [*i.e.*, value absent

---

[6]     On August 3, 2005 the United States Attorney's Office for the District of Colorado moved to stay more than a third of the 80 depositions Lead Plaintiffs sought to take in this action while it considered whether to bring criminal charges. While the stay on some of these witnesses was lifted on December 9, 2008, it is not now known if or when those depositions will actually go forward.

[7]     Further, Nacchio and Woodruff objected to the prior Qwest partial settlement, which objections have stymied Lead Plaintiffs' efforts to distribute the prior settlement funds to class members. The final approval of this settlement will resolve their objections and allow the distribution of the prior settlement funds to go forward without further delay.

- 14 -

the fraud] at the time of the purchase." *Semerenko v. Cendant Corp.*, 223 F.3d 165, 184 (3d Cir. 2000). Plaintiffs must also show that the alleged false statements caused the damages. Nacchio and Woodruff would assert that the class's losses were caused by factors other than the alleged fraud, such as the decline in the price of all stocks in the telecommunications industry during the latter part of the Class Period.[8]

Because of the complex nature of damages and loss causation in a §10(b) action, expert testimony is almost always necessary to establish the amount – and indeed the existence – of actual damages. Lead Plaintiffs would have likely faced a motion *in limine* by Nacchio and Woodruff to preclude Lead Plaintiffs' damage expert's testimony under the *Daubert* test. Lead Plaintiffs would have been forced to counter defendants' claims that Lead Plaintiffs' expert's valuation model should not be admissible in evidence. *See, e.g.*, *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627 (N.D. Ill. Sept. 19, 2000) (granting defendants' motion *in limine* to strike testimony of plaintiffs' expert) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). Even if Lead Plaintiffs' survived the *Daubert* motion, at trial the loss causation and damage assessments of Lead Plaintiffs' and defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would be reduced to a "battle of experts." A jury might be swayed by defense experts seeking to establish that damages were caused by factors other than

---

[8]     Section 11 damages are also subject to a "market decline" defense, thus defendants' argument that the decline in Qwest's securities was the result of market factors, such as the decline in all stocks in the telecom industry, would be similarly applicable to Lead Plaintiffs' §11 claims.

defendants' wrongdoing, or, alternatively, trying to minimize the amount of losses suffered by the class. *See, e.g., In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Expert testimony on damages could rest on many subjective assumptions, any one of which could be rejected by a jury as speculative or unreliable. As one judge has observed:

> Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (citations omitted); *see also Wilkerson*, 171 F.R.D. at 286 ("It is clear that a fact finder, when confronted with diverging opinions from experts of this caliber, could adopt the approaches used by one expert, or the other; could reject both; or could arrive at a middle ground between the two."). Conceivably, a jury could find that there were no damages or that the damages were only a small fraction of the amount that Lead Plaintiffs contended.

While Lead Plaintiffs believe that the evidence at trial would establish that the aggregate damages exceed the amount of settlement, that assumes that most of the significant liability and damages issues would have been resolved in the class's favor. Given the prospect that a portion of this litigation could be stayed for many more months or even years, as well as the uncertain outcome of continued litigation against Nacchio and Woodruff, the settlement provides the N&W Class with a substantial immediate recovery that is more than it might otherwise obtain even if Lead Plaintiffs had succeeded at trial.

**D.    The Recommendation of Experienced Counsel and Court
Appointed Lead Plaintiffs Strongly Favor Approval of the
Settlement**

The fourth factor considered by the Tenth Circuit, the judgment of the parties that the

settlement is fair and reasonable, also strongly supports approval of the settlement.[9]  Here,

experienced and well-respected Lead Counsel who are actively involved in the prosecution

of securities and other complex class actions and have negotiated numerous other

substantial class action settlements throughout the country have concluded that the

settlement is an excellent result for the N&W Class.  This conclusion is based, among other

factors, on a careful review and analysis of all the evidence, the likelihood of prevailing on

the claims asserted, and  the likely appeals and subsequent proceedings necessary if Lead

Plaintiffs prevailed at trial.  "'Counsels' judgment as to the fairness of the agreement is

entitled to considerable weight.'"  *Lucan v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo.

2006) (citation omitted).   *See also King Res.*, 420 F. Supp. at 625 ("Courts have

consistently refused to substitute their business judgment for that of counsel, absent

evidence of fraud or overreaching."); *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 292

(D.N.M. 2002) (same).   Importantly, the Court-appointed Lead Plaintiffs, New England

Health Care Employees Pension Fund, Clifford Mosher, Tejinder Singh, and Sat Pal Singh,

who were actively involved in the prosecution of the litigation and involved in the settlement

---

[9]    Over 1.8 million notices have been mailed to potential N&W Class Members. While
the deadline to file objections is January 28, 2009, to date, counsel have not received any
objections to the settlement or request for an award of attorneys' fees.  If any objections are
received, counsel will address those objections in a subsequent filing with the Court.

process, also support the settlement and believe that it is in the best interest of the N&W Class. *See* the accompanying declarations of Christine Pane, on behalf of New England Health Care Employees Pension Fund, Clifford Mosher, Tejinder Singh, and Sat Pal Singh.

## IV. THE NOTICE PROGRAM MEETS THE REQUIREMENTS OF THE PSLRA, DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

An extensive notice program, by mail and publication has been completed by Lead Plaintiffs' counsel. Counsel selected, and the Court appointed, a qualified and experienced claims administrator, Gilardi & Co. LLC ("Gilardi"), to administer the notice process. Gilardi mailed the Court approved Notice of Pendency and Settlement of Class Action ("Notice") to over 1.8 million potential N&W Class Members. In addition, the summary notice was published in the national edition of *Investor's Business Daily*. The Notice and Proof of Claim form were also posted on Gilardi's website.

The Notice informed N&W Class Members of the terms of the Nacchio and Woodruff settlement; the nature and history of the litigation; the attorneys' fee and expense request; and the date, time and place of the hearing on final approval. In addition, the Notice described the N&W Class Members' rights as well as the procedure for them to request exclusion from the N&W Class or object to any aspect of the settlement, or counsel's request for an award of attorneys' fees and expenses as well as the procedure for filing a Proof of Claim and Release form. The Notice also explained how to obtain additional information regarding the settlement or litigation, whom to contact if they had questions, including a toll-free number to contact a representative of Lead Counsel. The published summary notice clearly and concisely provides information concerning the settlement and

- 18 -

the means to obtain a copy of the Notice.  The extensive notice program complies with the requirements of Rule 23, due process principles and the pertinent provisions of the PSLRA (see 15 U.S.C. §77z-1(a)(7) and 15 U.S.C. §78u-4(a)(7)) and is similar to procedures previously approved in this case and other cases.  *See Qwest*, 2006 U.S. Dist. LEXIS 71039, at *14.[10]

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND HAS PREVIOUSLY BEEN APPROVED

The Plan of Allocation for this settlement is identical to that previously submitted for the Qwest partial settlement and has already been approved by this Court.  The Plan of Allocation was set forth in the notice regarding the prior partial settlement mailed to class members and was discussed fully in the Declaration of Bjorn I. Steinholt, CFA, submitted to this Court for review on February 27, 2006.  After having had the opportunity to review the Plan of Allocation and evaluate its procedures, no class members chose to file an objection at the time the Plan of Allocation and the Qwest partial settlement was subject to final approval, further supporting that it is fair and reasonable.

---

[10]    *See also Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977). *See also In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (found notice sufficient where it informed class members of the subject matter of the litigation, the terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds); *Reynolds v. NFL*, 584 F.2d 280, 285 (8th Cir. 1978) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) and *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)).  *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 510 (W.D. Pa. 2003) ("'In order to satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."'") (citations omitted).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve

the settlement as fair, reasonable, and in the best interests of the N&W Class.

DATED:  December 23, 2008              Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
MICHAEL J. DOWD
SPENCER A. BURKHOLZ
THOMAS E. EGLER
SUSAN G. TAYLOR
SCOTT H. SAHAM
X. JAY ALVAREZ
TRIG R. SMITH


                    s/ Thomas E. Egler
                    THOMAS E. EGLER

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

**Lead Counsel for Plaintiffs**

THE SHUMAN LAW FIRM
KIP B. SHUMAN
885 Arapahoe Blvd.
Boulder, CO  80302
Telephone:  303/861-3003
303/830-6920 (fax)

**Liaison Counsel**

S:\Settlement\Qwest.set\BRF FINAL APPROVAL 00056177.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 23, 2008.

s/ Thomas E. Egler
THOMAS E. EGLER

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  TomE@csgrr.com

# Mailing Information for a Case 1:01-cv-01451-REB-KLM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **X. Jay Alvarez**
  JayA@csgrr.com,e_file_sd@csgrr.com

- **Timothy Granger Atkeson**
  Tim_Atkeson@aporter.com,jeffrey_lewis@aporter.com,tracey.davisson@aporter.com,susan.cole@ap

- **Michael James Barry**
  mbarry@gelaw.com,mhartman@gelaw.com,gfpulver@handf.com

- **Jeffrey Allen Berens**
  jeff@dyerberens.com,jeffreyberens@comcast.net

- **Terry W. Bird**
  twb@birdmarella.com,dh@birdmarella.com

- **David Robert Boyd**
  dboyd@bsfllp.com

- **J. Patrick Bradley**
  jpb@greensfelder.com

- **Jessica Brody**
  jessica_brody@aporter.com,roleen_johnson@aporter.com,arthur_luk@aporter.com,jeffrey_lewis@ap

- **Spencer A. Burkholz**
  SpenceB@csgrr.com,e_file_sd@csgrr.com

- **David Lawrence Cook**
  david.cook@cliffordchance.com

- **Jennifer Lynn Coon**
  mem@birdmarella.com

- **Merrill Gene Davidoff**
  mdavidoff@bm.net,sleo@bm.net

- **Michael J. Dowd**
  MikeD@lerachlaw.com

- **Mark T. Drooks**
  mtd@birdmarella.com,lak@birdmarella.com

- **Stephanie Erin Dunn**

sdunn@perkinscoie.com,docketden@perkinscoie.com,sdunn-efile@perkinscoie.com

- **Thomas E. Egler**
  TomE@lerachlaw.com

- **Kevin D. Evans**
  kdevans@s-elaw.com,cmcnear@s-elaw.com

- **Clyde A. Faatz , Jr**
  cafaatz@handf.com,kjscholet@handf.com,gfpulver@handf.com

- **Christopher James W. Forrest**
  cjforrest@handf.com,kjscholet@handf.com,gfpulver@handf.com

- **Joshua David Franklin**
  jdf@denverda.org

- **John A. Freedman**
  john_freedman@aporter.com

- **Walter W. Garnsey , Jr**
  wgarnsey@kghllaw.com,smiller@kghllaw.com

- **Terence C. Gill**
  tgill@sah.com,efiling@sah.com

- **Michael W. Gross**
  mwgross@juno.com,mgross@sgattorneys.com

- **Marcy Marie Heronimus**
  mheronim@sah.com,efiling@sah.com,peckman@sah.com

- **Michael James Hofmann**
  michael.hofmann@hro.com,jackie.delay@hro.com

- **Kevin Brent Huff**
  khuff@khhte.com

- **Richard L. Jacobson**
  richard.jacobson@aporter.com,michael.hausenfleck@aporter.com

- **Roberta A. Kaplan**
  rkaplan@paulweiss.com

- **Curtis L. Kennedy**
  CurtisLKennedy@aol.com

- **Gary Michael Kramer**
  gkramer@bw-legal.com,amcarrillo@bw-legal.com

- **Alfred P. Levitt**
  alevitt@bsfllp.com

- **Vincent J. Marella**
  vjm@birdmarella.com,lak@birdmarella.com

- **David Meister**
  david.meister@cliffordchance.com

- **Jeffrey D. Meyer**
  jmeyer@moultonmeyer.com,rhuron@moultonmeyer.com

- **Charles G. Michaels**
  michaels@cmichaelslaw.com

- **James D. Miller**
  james.miller@cliffordchance.com,andrew.good@cliffordchance.com,yoko.nitta@cliffordchance.com,

- **Robert Nolen Miller**
  rmiller@perkinscoie.com,docketden@perkinscoie.com,rmiller-efile@perkinscoie.com

- **Barbara C. Moses**
  bmoses@maglaw.com,jlaing@maglaw.com

- **Edward S. Nathan**
  enathan@sgklaw.com,khoward@sgklaw.com,ejimenez@sgklaw.com

- **James E. Nesland**
  neslandje@cooley.com,foutsdl@cooley.com,calendarreq@cooley.com,inghramjl@cooley.com

- **Sharan Nirmul**
  snirmul@gelaw.com

- **Robin Lee Nolan**
  RNolan@bw-legal.com

- **Keith F. Park**
  keithp@lerachlaw.com

- **Elissa J. Preheim**
  Elissa.Preheim@aporter.com

- **Thomas Vincent Reichert**
  tvr@birdmarella.com,exg@birdmarella.com

- **John M. Richilano**
  jmr@richilanolaw.com,jjones@richilanolaw.com

- **Kenneth F. Rossman , IV**
  krossman@rothgerber.com

- **Ashley Elizabeth Rupp**
  arupp@maglaw.com

- **Scott Saham**

scotts@lerachlaw.com

- **Scott B. Schreiber**
  scott_schreiber@aporter.com

- **Arthur M. Schwartz**
  aschwartz@sgattorneys.com,dburton@sgattorneys.com

- **Paul Howard Schwartz**
  schwartzph@cooley.com,colitigation@cooley.com,foutsdl@cooley.com,calendarreq@cooley.com,ing

- **David L. Schwarz**
  dschwarz@khhte.com

- **Kip Brian Shuman**
  kip@shumanlawfirm.com,rusty@shumanlawfirm.com,lisa@shumanlawfirm.com

- **Edward F. Siegel**
  efsiegel@efs-law.com

- **Joel M. Silverstein**
  jsilverstein@sgklaw.com

- **Jeffrey Allen Smith**
  jsmith1@cooley.com,foutsdl@cooley.com,calendarreq@cooley.com,inghramjl@cooley.com

- **Jeffrey Speiser**
  jspeiser@sgklaw.com

- **Herbert J. Stern**
  hstern@sgklaw.com

- **Michael D. Trager**
  michael.trager@aporter.com,tisha.mccray@aporter.com

- **Kevin Thomas Traskos**
  Kevin.Traskos@usdoj.gov,andrea.hough@usdoj.gov,USACO.ECFCivil@usdoj.gov

- **Jesus Manuel Vazquez , Jr**
  jvazquez@rothgerber.com,tclanahan@rothgerber.com

- **James Gregory Waller**
  gregwaller@andrewskurth.com,kpiccolo@akllp.com,amyprasad@akllp.com

- **Ronald L. Wilcox**
  ronwilcox@hillandrobbins.com,raemcgaughey@hillandrobbins.com,janestoddart@hillandrobbins.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**AnchorMedia Ventures**
Attn: Alan Henry
35 Franklin Court So.
St. Petersburg, FL 33711

**I. Walton Bader**
Bader & Bader, LLP
50 Main Street
#1000 PMB 1029
White Plains, NY 10601

**Fredric C. Clodius**
11015 Millbank Road
King George, VA 22485

**Brian Fitzpatrick**
87 Barrow Street
Apartment 6H
New York, NY 10014

**Alan Henry**
3 Highfields Lane
Northport, ME 02870

**Geoffrey C. Jarvis**
Grant & Eisenhofer, P.A.
1201 North Market Street
#2100
Wilmington, DE 19801

**Donald Keller**
5507 Kerr Dr.
Helena, MT 59602

**Tim Myles**
254 Cass Street
Portsmouth, NH 03801

**C. Mylett**
P.O. Box 1031
Coleman, FL 33521

**New York State Teachers' Retirement System**
Wayne Schneider
Joseph J. Indelicato
10 Corporate Woods Drive
Albany, NY 12211-2395

**Pennsylvania State Employees' Retirement System**
Michael A. Budin
30 Noth Third Street
Suite 150
Harrisburg, PA 17101

**Cleo J. Rauchway**
Rothgerber, Johnson & Lyons, LLP
United States District Court Box 11
1200 - 17th Street
#3000
Denver, CO 80202

**William M. Rogers**

606 S. Military Trail
Deerfield Beach, FL 33442