**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 01-cv-1451-REB-KLM
(Consolidated with Civil Action Nos. 01-cv-1472-REB-KLM, 01-cv-1527-REB-KLM,
01-cv-1616-REB-KLM, 01-cv-1799-REB-KLM, 01-cv-1930-REB-KLM,
01-cv-2083-REB-KLM, 02-cv-0333-REB-KLM, 02-cv-0374-REB-KLM,
02-cv-0507-REB-KLM, 02-cv-0658-REB-KLM, 02-cv-755-REB-KLM,
02-cv-798-REB-KLM and 04-cv-0238-REB-KLM)

In re QWEST COMMUNICATIONS INTERNATIONAL, INC. SECURITIES LITIGATION

---

**ORDER AWARDING PLAINTIFFS' COUNSEL'S ATTORNEY FEES AND EXPENSES**

---

**Blackburn, J.**

This matter is before me on **Lead Counsel's Motion for Award of Attorneys' Fees and Expenses** [#1156][1] filed December 23, 2008. An objection [#1176] to the motion was filed and Lead plaintiffs filed a reply [#1183] addressing this objection. For the reasons discussed below, lead counsel's motion for an award of attorney fees and reimbursement of expenses is granted.

### A. JURISDICTION

I have jurisdiction over this case under 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

### B. BACKGROUND

This case originated with a class action complaint filed by plaintiff New England Healthcare Employees Pension Fund on July 27, 2001. That case was docketed as case no. 01-cv-01451. The fund alleged in its complaint various violations of the federal securities laws. A number of similar class action complaints subsequently were filed

---

[1] "[#1156]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

with this court, and the related class action complaints were consolidated with case No. 01-cv-01451. The operative complaint for the purpose of this class action settlement is the plaintiffs' fifth amended complaint [#315] in case no. 01-cv-01451, filed February 6, 2004 (Complaint). The claims asserted in the Complaint are claims for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934.

On September 29, 2006, I entered a **Partial Final Judgment and Order of Partial Dismissal with Prejudice** [#1050] and an **Order Awarding Attorney Fees and Expenses** [#1051]. I amended my **Partial Final Judgment and Order of Partial Dismissal with Prejudice** [#1050] in an order [#1096], filed January 8, 2007. These orders consummated a settlement reached between the plaintiff class and all defendants except for defendants Robert Woodruff and Joseph Nacchio.

Concurrently with this order, I am entering an order granting the **Lead Plaintiffs' Motion for Final Approval of Class Action Settlement with All Remaining Defendants** [#1155] filed December 23, 2008. That order approves and incorporates the parties' **Stipulation of Partial Settlement** [#1127], filed August 15, 2008 (Stipulation). The Stipulation details a settlement of the claims asserted by the plaintiff class against defendants Nacchio and Woodruff. In this order, I will refer to this settlement as the "Nacchio and Woodruff Settlement." In the **Stipulation of Partial Settlement** [#1127], filed August 15, 2008, the parties refer to the settlement approved in my September 29, 2006, order as the "Partial Settlement," and they refer to the stipulation [#886] that undergirds the Partial Settlement as the "Qwest Stipulation." I use the same terms in this order.

The Partial Settlement was approved over the objections of Nacchio and Woodruff. Nacchio and Woodruff appealed and the United States Court of Appeals for

the Tenth Circuit remanded this case to me for further findings concerning Nacchio and Woodruff's objections to the Partial Settlement.  The Nacchio and Woodruff Settlement resolves all objections by Nacchio and Woodruff to the Partial Settlement and resolves the claims of the plaintiff class against Nacchio and Woodruff.  The Nacchio and Woodruff Settlement permits both the Partial Settlement and the Nacchio and Woodruff Settlement to become effective.  The two settlements completely resolve this litigation.

In essence, the Nacchio and Woodruff Settlement provides for payment of 45 million dollars for the benefit of a plaintiff class defined in the stipulation as the "N & W Class."  The definition of the N & W Class is essentially the same as the definition of the plaintiff class in the settlement approved in my **Partial Final Judgment and Order of Partial Dismissal with Prejudice** [#1050].  This 45 million dollars is in addition to the 400 million dollars paid into a settlement fund by the other defendants under the terms of the Partial Settlement.  In addition, United States Securities and Exchange Commission (SEC) has paid for the benefit of the plaintiff class 250 million dollars from a fund known as the Securities and Exchange Commission Distribution Fund.  This fund originated with a payment of 250 million dollars by defendant Qwest Communications International, Inc. (QCII) to the SEC under the terms of a judgment entered against Qwest and in favor of the SEC in a separate civil suit.

On November 26, 2008, I entered an **Order Preliminarily Approving Settlement and Approving Form and Manner of Notice** [#1141].  In that order, I certified a plaintiff class under FED. R. CIV. P. 23(a) and (b)(3) for the purposes of the Nacchio and Woodruff Settlement.  Notice of the proposed Nacchio and Woodruff Settlement and of the rights of the members of the plaintiff N & W Class was delivered to the members of the class, as directed in that order.

On March 27, 2009, I conducted a hearing to hear argument and objections concerning the motion now before the court, the **Lead Plaintiffs' Motion for Final Approval of Class Action Settlement with All Remaining Defendants** [#1155] filed December 23, 2008.  At the hearing, I inquired in open court if any objectors were present who wished to be heard at the hearing.  No objectors seeking to be heard were present at the hearing.

### C.  STANDARD OF REVIEW

This case is controlled by the Private Securities Litigation Reform Act of 1995 (PSLRA).  The PSLRA provides that the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."  15 U.S.C. § 78u-4(a)(6).  This provision is consistent with case law adopting the common fund doctrine.  Under the common fund doctrine, attorneys who pursue litigation on behalf of a class, and whose efforts create a common fund for the benefit of the class, are entitled to an award of attorney fees from the common fund.  *See, e.g., Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).  This ensures that the fund's beneficiaries share in the cost of creating the fund.  *Id*.  In such cases, attorney fees are based primarily on a percentage of the common fund created by counsel's efforts.  *Brown*, 838 F.2d at 454.  Based on the PSLRA, *Brown*, the authorities cited by the *Brown* court, and the authorities cited by the parties, I conclude that on key factor in determining an appropriate award of attorney fees is a reasonable percentage of the common fund created by counsel.

Of course, the key issue is a determination of a reasonable percentage.  In determining a reasonable percentage I must articulate the specific reasons on which my

4

determination of a reasonable percentage is based. **Brown**, 838 F.2d at 454. In determining reasonable attorney fee awards, "federal courts have relied heavily on the factors articulated by the Fifth Circuit in **Johnson v. Georgia Highway Express, Inc.**, 488 F.2d 714 (5th Cir. 1974)." **Id**. Although **Johnson** was not a common fund case, the Tenth Circuit has concluded that consideration of the **Johnson** factors is "appropriate in setting and reviewing percentage fee awards in common fund cases." **Brown**, 838 F.2d at 454. I will consider each of the twelve **Johnson** factors in determining a reasonable percentage of the common fund to be awarded to lead counsel.

### D.  JOHNSON FACTORS

The twelve Johnson factors are: 1) the time and labor involved; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee for similar work; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. **Johnson v. Georgia Highway Express, Inc.**, 488 F.2d 714, 717 -719 (5th Cir. 1974), *abrogated in part by* **Blanchard v. Bergeron**, 489 U.S. 87, 93 (1989) (limiting application of **Johnson** contingency fee factor as ceiling on fee awards when applying 42 U.S.C. § 1988). Based on the circumstances of a particular case, a court may assign different relative weights to the factors. **Brown**, 838 F.2d at 456. A discussed below, I conclude that some of the factors should be combined for the purpose of this case.

5

**1. The time and labor involved** - Plaintiffs' lead counsel reports that counsel, their para-professionals, and their in-house experts spent 4,156.95 hours prosecuting and resolving this litigation against Nacchio and Woodruff. *Motion for award of attorney fees* [#1156], filed December 23, 2008, p. 23. Declarations [#1162, #1163] filed in support of the motion document this figure. Based on the law firms' current rates, the billable value of these hours is 2,046.685.00 dollars. *Id.* This figure is known as a lodestar. The requested fee of 6.75 million dollars represents a multiple of about 3.3 times the lodestar amount.

There is no doubt that the litigation of the plaintiffs' claims against Nacchio and Woodruff required a large investment of sophisticated expertise, time, labor, and other resources by lead counsel. Nothing in the record is contrary to this conclusion, and I will summarize very briefly the effort made by lead counsel. Throughout this case, lead counsel was required to address certain specialized issues tied to the plaintiffs' claims against Nacchio. After I approved the Partial Settlement, Lead Counsel was required to defend against the appeal of Nacchio and Woodruff in which Nacchio and Woodruff challenged my approval of the partial settlement. After the Tenth Circuit's remand, Lead Counsel negotiated with Nacchio, Woodruff, and others to arrive at the Nacchio and Woodruff Settlement that now is at issue. Of course, this brief summary does not detail all of the issues that Lead Counsel was required to address concerning the plaintiffs' claims against Nacchio and Woodruff.

I note also that lead counsel's documentation of time spent on this case includes time spent by paralegals, in-house accountants, and document clerks. I conclude that, in this case, such costs properly may be considered along with time spent by attorneys as part of the first *Johnson* factor. Time spent by paralegals and other professionals

6

frequently is billed to clients by the hour.  The assistance of such professionals is mandatory in a case like this case.  Document clerks often are viewed as overhead, rather than as time that is billed separately.  This case is document intensive in the extreme.  For the purposes of this case, I will include over 35 thousand dollars of time attributed to document clerks in the lodestar amount, though I consider this element of the lodestar to be somewhat inflated.

In a common fund case, the lodestar figure serves as one consideration in determining a reasonable fee.  The **Brown** court noted that this factor may be given less weight in a common fund case than in a statutory fee case, where the lodestar figure is an essential touchstone of reasonableness.  **Brown**, 838 F.2d at 456.  I am intimately familiar with the history of this case and I conclude that the hours spent on this case by lead counsel and their staff are within the realm of reason.  Although there may be areas in which lead counsel might have used time and other resources more efficiently, I find that any such inefficiencies are not so prevalent that the gross number of hours claimed by lead counsel should be amended for the purpose of this analysis.  Overall, the hourly rates outlined in counsel's declarations in support of the motion for award of attorney fees are very generous but they arguably are within the range of reasonable hourly rates for the type of work at issue here.

Having reviewed lead counsel's declarations and the relevant objections, I conclude that a lodestar amount of 2,046.685.00 dollars is a reasonably accurate figure for the purpose of applying the **Johnson** analysis to this case.  Having considered the record and the relevant circumstance, I conclude that the lodestar amount is an important factor in the overall reasonableness analysis because it is a tangible measure of the value of the time and labor involved.

      **2. The novelty and difficulty of the questions** - There are few simple class action cases involving securities law. This area of law may not be novel, but it generally is complex and difficult. In this case, lead counsel pursued securities claims that involved a large and complex corporation and complex accounting issues. The PSLRA requires great specificity in pleading such claims. Simply investigating the facts in order to file a suitable complaint against Nacchio and Woodruff under the PSLRA required substantial effort and expertise. In addition, as summarized above, many of the issues litigated by lead counsel were complex and difficult. Able defense counsel zealously litigated on behalf of Nacchio and Woodruff, and lead counsel were required to meet these challenges at most every turn. In short, the issues presented by this case were very difficult and complex. This factor, closely related to factor three, below, carries significant weight, and tends to support a generous award of attorney fees.

      **3. The skill requisite to perform the legal service properly** - This factor is closely related to the second factor, above, and to the ninth factor, the experience, reputation, and ability of the attorneys. I consider factors three and nine together. If the issues in a case are complex and difficult then obviously it will take great skill to address those issues successfully. Plaintiffs' lead counsel are highly skilled and specialized attorneys who use their substantial experience and expertise to prosecute complex securities class actions. Nacchio and Woodruff were represented by lawyers of similar expertise and experience. Particularly in a case as complex as this case, lead counsel must have a very high level of experience and expertise if the plaintiffs are to have any chance of success. In this case, there is no serious challenge to the conclusion that lead counsel possesses a high level of skill and expertise in securities class action suits. This factor carries significant weight because the plaintiff class likely would not have

obtained any relief from Nacchio and Woodruff without the assistance of counsel with a high level of skill and expertise. Further, lead counsel should be rewarded for their successful application of their skill and expertise. This factor augurs toward a substantial fee award.

**4. The preclusion of other employment by the attorney due to acceptance of the case** - Without doubt, time spent by lead counsel on this case, as it pertained to Nacchio and Woodruff, was at the expense of time that lead counsel could have spent on other cases. Lead counsel, however, does not cite any particular cases that were turned away because of the demands of this case. It is fair to assume, however, that lead counsel's efforts on this case could have been devoted to other cases which may have proven worthwhile. This assumption, however, does not weigh heavily in my analysis.

**5. The customary fee for similar work** - This factor is very similar to factor number twelve, awards in similar cases. I consider factors five and twelve together. The lead plaintiffs analyze this factor in terms of the customary percentage fee for complex commercial cases that involve a contingent fee. In this realm, the lead plaintiffs argue, contingent fees of 30 to 40 percent of the recovery are considered to be acceptable. The lead plaintiffs cite a variety of class action cases in which the recovery exceeded 100 million dollars, and the percentage of attorney fees awarded ranged from 25 to 36 percent. *Motion for attorney fees* [#1156], pp. 19 - 20.

Similarly, the lead plaintiffs cite cases in which a percentage fee award was cross-checked against the lodestar amount in an effort to judge the reasonableness of the fee. The cases cited by lead plaintiffs reflect approval of attorney fees awards in which the fees awarded represented multiples of the lodestar amount ranging from 4.65

to 10.73. *Motion for attorney fees* [#1156], p. 23 - 24, n. 14.  The one objection [#1176] to the present motion for an award of attorney fees was filed by Thomas Hicks.  Mr. Hicks argues that a fee award of fifteen percent of the settlement amount "is totally out of proportion to the risk and the amount of time involved in pursing these types of suits." Mr. Hicks does not analyze the risks and the amount of time spent by counsel in this case.  Based on the analysis in this order, I overrule Mr. Hicks' objection [#1176] to the requested award of attorney fees.

Of course, a variety of relevant circumstances were in play in the various comparison cases cited by lead plaintiffs.  However, the lead plaintiffs have not proposed a persuasive analytical scheme that explains why high percentages or high lodestar multiples are awarded in some cases, and lower percentages or lodestar multiples are awarded in other cases.  For the purposes of this case, I conclude that the awards in similar cases convey two fundamental messages that are applicable to this case.  First, lead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure.  Second, judging an attorney fee award solely as a percentage of the common fund or solely as a lodestar multiple does not provide a full picture of the relevant considerations.  For example, a fee that equals 25 percent of a common fund also might result in a very low lodestar multiple.  **See In re Lease Oil Antitrust Litig.**, 186 F.R.D. 403, 443 - 448 (25% of common fund awarded as attorney fees, a lodestar multiple of 1.35; applying **Johnson** factors).  The customary fee factor carries significant weight in my analysis, but the fees awarded in other cases provide only a rough guide to reasonableness.

**6. Whether the fee is fixed or contingent** - In many circumstances, a

10

contingent fee will result in the payment of a higher total fee to counsel than the total fee an hourly fee would have generated. Of course, if the litigation is not successful, a contingent fee often will leave counsel without any fee. A contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful. These considerations are applicable here. Further, I accord a presumption of reasonableness to the twenty four percent contingent fee to which lead counsel and the lead plaintiffs agreed at the outset of this case. In the context of this case, this factor carries significant weight. However, as the *Johnson* court noted, the key "criterion for the court is not what the parties agreed but what is reasonable." *Johnson*, 488 F.2d at 718.

**7. Time limitations imposed by the client or the circumstances** - The *Johnson* court concluded that priority work that delays a lawyer's other work is entitled so a premium. *Id*. I agree with the lead plaintiffs that this factor is not relevant in this case.

**8. The amount involved and the results obtained** - This factor may be given a greater weight in a common fund case when the court determines that the recovery "was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Brown*, 838 F.2d at 456. The *Brown* court indicated that the time and labor factor need not be evaluated using the lodestar formulation if the trial court determines that other factors are sufficient to determine a reasonable fee. *Id*.

In this case, I conclude that recovery for the class was from Nacchio and Woodruff was contingent on many variables, and that the efforts of lead counsel were instrumental in overcoming those risks and realizing some recovery for the class. From

11

the outset, lead counsel faced substantial risks in prosecuting this case against Nacchio and Woodruff.  At the extreme, the risk was that lead counsel would expend substantial resources but end up with no recovery from Nacchio and Woodruff.  In addition, the risks presented in litigation are legion, and need not be reviewed here.  However, in the context of this case, I conclude that the lodestar calculation outlined above remains a significant consideration in determining reasonableness.  This fundamental measure of value provides important context in balancing the other considerations.

The requested fee of 6.75 million dollars is a large amount of money.  Relative to the losses the plaintiff class claims Nacchio, Woodruff, and others caused them, however, 6.75 million dollars represents a small amount of money.  For example, the Pennsylvania State Employees' Retirement System argued previously that class members are receiving only about 15 cents per share from the Settlement Fund created by the Partial Settlement, totaling 400 million dollars, when many suffered a market loss in excess of 58 dollars per share during the class period.  *See Objection of Pennsylvania State Employees' Retirement System* [#1014], filed May 17, 2006, p. 2 (this objection addresses the motion for attorney fees tied to the Partial Settlement). Similar losses frequently have been claimed in this case.  Of course, the plaintiffs are recovering far less as a result of the Nacchio and Woodruff Settlement.  Whether these numbers accurately reflect the comparison between the total losses allegedly caused by the defendants' alleged securities violations and the total recovery obtained via this lawsuit I cannot determine.  However, it is clear that the losses generally claimed by the plaintiffs are far greater than the recovery that will result from the Nacchio and Woodruff Settlement, the Partial Settlement, and the related Securities and Exchange Commission Distribution Fund.  In short, the amount of the combined settlements is

impressively large, but that impression is tempered by the plaintiffs' consistent claim, a claim often advanced by lead counsel, that the plaintiff class suffered losses that are much larger. From the plaintiffs' perspective, the plaintiffs are recovering only a small proportion of the losses allegedly caused by Nacchio, Woodruff, and others. From this perspective the results obtained are better than nothing, but they pale in comparison to the losses claimed.

It is important to note, however, that there probably would not have been any recovery for the plaintiff class from Nacchio and Woodruff absent the efforts of lead counsel. Many class members may perceive the recovery to be inadequate, compared to their claimed losses, but the class also faced a distinct risk of no recovery. Further, I conclude that lead counsel's efforts serve the broader purpose of creating an incentive for the defendants and others to comply with the securities laws in the future. That incentive is another aspect of the success achieved by lead counsel. Overall, the eighth Johnson factor carries substantial weight in my analysis, but this factor pulls in two directions. The Nacchio and Woodruff Settlement contributes a significant amount of money to the combined settlements in this case and this fact augurs toward a generous award of fees. The fact that the settlement amount pales in comparison to the claimed losses weighs in favor of a reduced fee award so that the plaintiff class can recover a bit more of its claimed losses.

**9. The experience, reputation, and ability of the attorneys** - This factor is considered as part of factor number three, above.

**10. The undesirability of the case** - The risks presented to lead counsel who undertook this case were substantial. I summarized some of those risks in discussing factor eight, above. At minimum, this case required lead counsel to advance large

13

amounts of time, money, and other resources to determine if any recovery might be had. At bottom, the risk to lead counsel was financial. Most attorneys are unable or unwilling to take such a financial risk. There are other factors that may have made this case undesirable to counsel, but the risk stands out as the key factor. I note, however, that lead counsel long has been in the business of undertaking such risks in the realm of class action securities litigation. Thus, lead counsel had the ability to assess and estimate the risk, and to make an informed judgment about the potential ratio between risk and reward in this case. This factor carries significant weight and weighs in favor of a substantial fee award.

**11. The nature and length of the professional relationship with the client** - In describing this factor, the *Johnson* court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer. There is no indication that lead counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs. I consider this factor to have no application in this case. To the extent this factor might be read as requiring respect for a fee agreement between lead counsel and lead plaintiffs, that adequately had been addressed elsewhere in this order.

**12. Awards in similar cases** - This factor is considered as part of factor number five, above.

### E. CONCLUSION - ATTORNEY FEES

The *Johnson* factors demonstrate that lead counsel provided highly valuable services on behalf of the plaintiff class, took substantial risks, and obtained significant relief on behalf of the class. Judged by the standard of lead counsel's billing rates and the number of hours of work attributed to the plaintiffs' claims against Nacchio and

Woodruff, the lodestar value of those services is in the neighborhood of 2,046.685.00 dollars, but counsel was not being paid by the hour as this case was litigated. The fee agreement and the usual practice in class action cases both contemplate that successful lead counsel may be rewarded with fees judged, at least in part, as a proportion of the common fund created. Such rewards frequently consume a significant proportion of the common fund, and often equal two to five times the lodestar figure. Considered together, these factors largely weigh in favor of awarding a generous proportion of the Nacchio and Woodruff settlement funds as attorney fees. Here, lead counsel and the lead plaintiffs agreed at the outset of this case that lead counsel would recover a contingent fee of twenty four percent of any amount recovered. In the present motion, lead counsel requests an award of fifteen percent.

On the other hand, an important factor weighs heavily in the opposite direction. The amount of the settlement in the Nacchio and Woodruff Settlement creates a fund that will compensate the plaintiff class for only a small proportion of the losses the plaintiff class claims Nacchio and Woodruff allegedly caused the class to suffer. The gross amount of the settlement achieved is large, but it will compensate only a small proportion of the plaintiffs' claimed losses. In these circumstances, it is particularly important for me to "determine a reasonable fee by weighing the appropriate interests of the beneficiaries in light of the efforts of counsel on their behalf." **Brown**, 838 F.2d at 456. In addition, I note that the lodestar amount, a basic measure of value, by itself would lead to handsome compensation for lead counsel.

Unfortunately, balancing the relevant factors does not lead to a precise, arithmetical formula that prescribes a reasonable fee. Rather, I must exercise my informed discretion to strike a balance between the competing factors. I conclude that

an attorney fee award to lead counsel in the amount of 6.75 million dollars is reasonable because this amount strikes a reasonable balance among the relevant factors.  Such a fee recognizes and very handsomely rewards the efforts and skill of counsel, the risks undertaken by counsel, and the results obtained by counsel with a payment that is more than three times the generous hourly rates claimed by counsel in their lodestar calculation.  Converted to an hourly fee, this award leads to payment of over 1,623.00 dollars for each hour spent by any lawyer on the lead counsel team, and for every hour spent by other professionals and support staff on lead counsel's team.  Judged as a percentage of the 45 million dollar Nacchio and Woodruff Settlement fund, this award amounts to 15 percent of the fund.  Judged by any and all of these measures, this fee is reasonable, fair, and, for lead counsel, quite lucrative.

      To the extent this award necessarily alters the fee agreement between lead counsel and the lead plaintiffs, I conclude that the other relevant circumstances rebut the presumption that the fee agreement itself defines a reasonable fee.  Notably, in the present motion lead counsel does not seek an award of fees under the terms of lead counsel's agreement with the lead plaintiffs, which agreement provides for payment of twenty four percent of any recovery as attorney fees.  Rather, lead counsel seeks an award of fifteen percent of the amount of the Nacchio and Woodruff Settlement. Further, lead counsel and lead plaintiffs could not have known the result of this litigation when the entered into the agreement.  Now that the result and the surrounding circumstances are known, I conclude that the 24 percent fee agreement exceeds the bound of reasonableness under the circumstances of this case.  Having considered all of the relevant circumstances, I find and conclude that an award of 6.75 million dollars is reasonable.  I award lead counsel attorney fees to be paid from the Nacchio and

Woodruff settlement fund in the amount of 6.75 million dollars.

## F.  REASONABLE EXPENSES

Again, the PSLRA provides that the "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).  As with attorney fees, the common fund doctrine allows for an award of costs so that the beneficiaries of the fund share the cost of creating the fund.

Here, lead counsel seeks an award of costs totaling 113,262.04 dollars.  I have reviewed the costs outlined in lead counsel's declarations and generally find the costs sought by counsel to be reasonable in the context of this case.  Some of the costs claimed are not documented in great detail, but the gross amounts claimed generally are within the realm of reason in the context of this case.  No objections have been filed which challenge lead counsel's request for an award of costs.  I exercise my discretion and award class counsel's documented, reasonable costs in this matter by awarding 113,262.04 dollars to cover lead counsel's costs.  These expenses are to be paid from the Nacchio and Woodruff Settlement.

Finally, the PSLRA permits an award to the lead plaintiffs of their "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Four lead plaintiffs have requested an award of such costs and expenses, as documented in their declarations [#1158], [#1159], [#1160], and [#1161].  I find the costs and expenses claimed to be reasonable.  The New England Health Care Employees' Pension Fund is awarded 2,500.00 dollars in costs and expenses.  Sat Pal Singh is

awarded 3,600.00 dollars in costs and expenses. Tejinder Singh is awarded 3,220.00 dollars in costs and expenses. Clifford Mosher is awarded 1,350.00 dollars in costs and expenses. These costs and expenses are to be paid from the Nacchio and Woodruff Settlement fund.

### G.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Lead Counsel's Motion for Award of Attorneys' Fees and Expenses** [#1156]  filed December 23, 2008, is **GRANTED**, and lead counsel for the plaintiff class is **AWARDED** attorney fees in the amount of 6.75 million dollars, to be paid from the Nacchio and Woodruff Settlement;

2. That **Lead Counsel's Motion for Award of Attorneys' Fees and Expenses** [#1156] filed December 23, 2008, is **GRANTED** to the extent that lead counsel is **AWARDED** 113,262.04 dollars in costs, to be paid from the Nacchio and Woodruff Settlement;

3. That **Lead Counsel's Motion for Award of Attorneys' Fees and Expenses** [#1156] filed December 23, 2008, is **GRANTED** to the extent that lead plaintiff The New England Health Care Employees' Pension Fund is **AWARDED** 2,500.00 dollars in costs and expenses, to be paid from the Nacchio and Woodruff Settlement;

4. That **Lead Counsel's Motion for Award of Attorneys' Fees and Expenses** [#1156] filed December 23, 2008, is **GRANTED** to the extent that lead plaintiff Sat Pal Singh is **AWARDED** 3,600.00 dollars in costs and expenses, to be paid from the Nacchio and Woodruff Settlement;

5. That **Lead Counsel's Motion for Award of Attorneys' Fees and Expenses**

[#1156] filed December 23, 2008, is **GRANTED** to the extent that lead plaintiff Tejinder Singh is **AWARDED** 3,220.00 dollars in costs and expenses, to be paid from the Nacchio and Woodruff Settlement;

    6. That **Lead Counsel's Motion for Award of Attorneys' Fees and Expenses** [#1156] filed December 23, 2008, is **GRANTED** to the extent that lead plaintiff Clifford Mosher is **AWARDED** 1,350.00 dollars in costs and expenses, to be paid from the Nacchio and Woodruff Settlement;

    7. That the objection [#1176] to lead counsel's motion for award of attorney fees filed by Thomas Hicks on February 23, 2009, is **OVERRULED**;

    8. That the attorney fees awarded in this order **SHALL BE ALLOCATED** among plaintiffs' counsel by Lead Counsel in a manner that, in Lead Counsel's good-faith judgment, reflects each such plaintiffs' counsel's contribution to the institution, prosecution and resolution of the Litigation;

    9. That the awarded attorneys' fees and expenses and interest earned thereon **SHALL BE PAID IMMEDIATELY** to Lead Counsel, subject to the terms, conditions and obligations of the Stipulation, and in particular 7.2 thereof, which terms, conditions and obligations are incorporated herein.

    Dated May 27, 2009, at Denver, Colorado.

                        **BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge