**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 01-cv-1451-REB-KLM
(Consolidated with Civil Action Nos. 01-cv-1472-REB-KLM, 01-cv-1527-REB-KLM,
01-cv-1616-REB-KLM, 01-cv-1799-REB-KLM, 01-cv-1930-REB-KLM,
01-cv-2083-REB-KLM, 02-cv-0333-REB-KLM, 02-cv-0374-REB-KLM,
02-cv-0507-REB-KLM, 02-cv-0658-REB-KLM, 02-cv-755-REB-KLM,
02-cv-798-REB-KLM and 04-cv-0238-REB-KLM)

In re QWEST COMMUNICATIONS INTERNATIONAL, INC. SECURITIES LITIGATION

---

**FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**

---

**Blackburn, J.**

This matter is before me on **Lead Plaintiffs' Motion for Final Approval of
Class Action Settlement with All Remaining Defendants** [#1155][1] filed December
23, 2008.  This order incorporates the parties' **Stipulation of Partial Settlement**
[#1127], filed August 15, 2008 (Stipulation), and, thus, the capitalized terms in this order
refer to terms defined in the Stipulation.  Four documents [#1173, #1176, #1177, and
#1178] that constitute either queries to the court or objections to the proposed
settlement have been filed with the court.  Lead plaintiffs have filed a reply [#1183]
addressing these queries and objections.  The related issues of attorney fees and
expenses are addressed in a separate order, which is issued concurrently with this
order. The settlement and the plan of allocation are approved.

**A.  JURISDICTION**

I have jurisdiction over this case under 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

---

[1]  "[#1155]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's electronic case filing and management system (CM/ECF). I use this
convention throughout this order.

## B.  BACKGROUND

This case originated with a class action complaint filed by plaintiff New England Healthcare Employees Pension Fund on July 27, 2001.  That case was docketed as case no. 01-cv-01451.  The fund alleged in its complaint various violations of the federal securities laws.  A number of similar class action complaints subsequently were filed with this court, and the related class action complaints were consolidated with case No. 01-cv-01451.  The operative complaint for the purpose of this class action settlement is the plaintiffs' fifth amended complaint [#315] in case no. 01-cv-01451, filed February 6, 2004 (Complaint).  The claims asserted in the Complaint are claims for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934.

On September 29, 2006, I entered a **Partial Final Judgment and Order of Partial Dismissal with Prejudice** [#1050] and an **Order Awarding Attorney Fees and Expenses** [#1051].  I amended my **Partial Final Judgment and Order of Partial Dismissal with Prejudice** [#1050] in an order [#1096], filed January 8, 2007.  These orders consummated a settlement reached between the plaintiff class and all defendants, except for defendants Robert Woodruff and Joseph Nacchio.  In the **Stipulation of Partial Settlement** [#1127], filed August 15, 2008, the parties refer to the settlement approved in my September 29, 2006, order as the "Partial Settlement," and they refer to the stipulation [#886] that undergirds the Partial Settlement as the "Qwest Stipulation."  I use the same terms in this order.

The Partial Settlement was approved over the objections of Nacchio and Woodruff.  Nacchio and Woodruff appealed, and the United States Court of Appeals for the Tenth Circuit remanded this case to me for further findings concerning Nacchio and Woodruff's objections to the Partial Settlement.  The motion currently before me seeks

2

approval of a settlement reached between the plaintiff class and defendants Nacchio

and Woodruff.  The proposed settlement, if approved, resolves all objections by Nacchio

and Woodruff to the Partial Settlement and resolves the claims of the plaintiff class

against Nacchio and Woodruff.  The proposed settlement, if approved, permits both the

Partial Settlement and the settlement between the plaintiff class and Nacchio and

Woodruff to become effective.  The two settlements completely resolve this litigation.

The proposed terms of the settlement between the plaintiff class and defendants

Woodruff and Nacchio are stated in the parties' **Stipulation of Partial Settlement**

[#1127], filed August 15, 2008.  In this order, I will refer to this settlement as the

"Nacchio and Woodruff Settlement."

In essence, the Nacchio and Woodruff Settlement  provides for payment of 45

million dollars for the benefit of a plaintiff class defined in the stipulation as the "N & W

Class."  The definition of the N & W Class is essentially the same as the definition of the

plaintiff class in the settlement approved in my **Partial Final Judgment and Order of**

**Partial Dismissal with Prejudice** [#1050].  This 45 million dollars is in addition to the

400 million dollars paid into a settlement fund by the other defendants under the terms

of the Partial Settlement.  In addition, United States Securities and Exchange

Commission (SEC) has paid for the benefit of the plaintiff class 250 million dollars from

a fund known as the Securities and Exchange Commission Distribution Fund.  This fund

originated with a payment of 250 million dollars by defendant Qwest Communications

International, Inc. (QCII) to the SEC under the terms of a judgment entered against

Qwest and in favor of the SEC in a separate civil suit.

On November 26, 2008, I entered an **Order Preliminarily Approving**

**Settlement and Approving Form and Manner of Notice** [#1141].  In that order, I

certified a plaintiff class under FED. R. CIV. P.  23(a) and (b)(3) for the purposes of the

Nacchio and Woodruff Settlement.  Notice of the proposed settlement and of the rights

of the members of the plaintiff N & W Class was delivered to the members of the class,

as directed in that order.

On March 27, 2009, I conducted a hearing to hear argument and objections

concerning the motion now before the court, the **Lead Plaintiffs' Motion for Final**

**Approval of Class Action Settlement with All Remaining Defendants** [#1155] filed

December 23, 2008.  At the hearing, I inquired in open court if any objectors were

present who wished to be heard at the hearing.  No objectors seeking to be heard were

present at the hearing.  In addition, I have reviewed the written objections to the

settlement that were filed with the court.  The deadline for filing objections was January

28, 2009.  Those objections include objections docketed as [#1173], [#1176], [#1177],

and [#1178].  To the extent any of  the objections concern lead counsel's request for an

award of attorney fees and costs, those objections are addressed and resolved in a

separate order, which is issued concurrently with this order.

## C.  STANDARD OF REVIEW

Under FED. R. CIV. P. 23(e)(1)(C), I may approve a settlement that binds

members of a class only if the settlement is fair, reasonable, and adequate.  Applying

the four considerations noted by the Tenth Circuit, I analyze this issue below.  I note

that the Stipulation [#1127] is contingent on this court entering a judgment that is

"substantially in the form" of the proposed form of judgment attached to the Stipulation

as Exhibit B.  *Stipulation* [#1127], p. 10, ¶ 1.9.  This order and judgment includes all

material terms included in the parties' proposed judgment.

## D.  CLASS CERTIFICATION & NOTICE

Again, On September 29, 2006, I entered a **Partial Final Judgment and Order of Partial Dismissal with Prejudice** [#1050] approving the Partial Settlement.   In that order, I certified a plaintiff class under FED. R. CIV. P.  23(a) and (b)(3) for purposes of the Partial Settlement only.  The same considerations concerning class certification are relevant to the plaintiff class proposed in the Nacchio and Woodruff Settlement.  For the sake of clarity, I reiterate my findings and conclusions concerning class certification here.  I find that the prerequisites for a class action under Federal Rules of Civil Procedure ("Fed.R.Civ.P.") 23(a) and (b)(3) have been satisfied in that: (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Lead Plaintiffs are typical of the claims of the Class they seek to represent; (d) the Lead Plaintiffs have represented and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to members of the Class predominate over any questions affecting any individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Pursuant to Fed.R.Civ.P. 23, this court  finally certifies this litigation as a class action (for settlement purposes only) on behalf of the following plaintiff class:

> all Persons who purchased or otherwise acquired Qwest publicly traded securities (including common stock, bonds, and options) from May 24, 1999 through July 28, 2002 ("Class Period"), except for those Persons who requested and obtained exclusion from the class that was certified by the Court in the Partial Settlement and who subsequently resolved their claims against QCII, Nacchio, Woodruff and others and provided releases of claims against QCII, Nacchio, Woodruff and others.  Excluded from the N&W Class are Defendants and any Persons affiliated with or related to any Defendant. For purposes of this Paragraph, the Persons affiliated with

or related to any Defendant are members of the immediate family of each Defendant, any entity in which any Defendant has a controlling interest, officers and directors of QCII and its subsidiaries and affiliates, and Arthur Andersen LLP ("AA") and AA's partners, shareholders and members, and the legal representatives, heirs, predecessors, successors and assigns of any such excluded party.  Also excluded from the N&W Class are those Persons who request exclusion from the N&W Class in such form and manner, and within such time, as the Court shall prescribe. Also excluded from the N&W Class is any current or former officer, director, employee, or agent of QCII who has been sued by the United States Securities and Exchange Commission in connection with such Person's affiliation with or conduct related to QCII.

I find and conclude further that notice of the pendency of this litigation as a class action, and of the proposed N & W Settlement, was given to all Class Members who could be identified with reasonable effort.  I note that a notice of a class action and a proposed settlement generally must contain "an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member."  *In re Nissan Motor Corp. Antitrust Litigation*  552 F.2d 1088, 1104 (5th Cir. 1977).  The form and method of notifying the class of the pendency of the Litigation as a class action and of the terms and conditions of the proposed N & W Settlement met the requirements of Fed.R.Civ.P. 23, § 21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, due process, the rules of this court, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

### E.  SETTLEMENT ANALYSIS

Again, under FED. R. CIV. P. 23(e)(1)(C), I may approve a settlement that binds members of a class only if the settlement is fair, reasonable, and adequate.  The Tenth

Circuit has outlined four factors to be considered in assessing whether a proposed

settlement of a class action is fair, reasonable, and adequate:

    1.  Whether the proposed settlement was fairly and honestly negotiated;

    2.  Whether serious questions of law and fact exist, placing the ultimate
    outcome of the litigation in doubt;

    3.  Whether the value of an immediate recovery outweighs the mere
    possibility of future relief after protracted and expensive litigation; and

    4.  The judgment of the parties that the settlement is fair and reasonable.

***Rutter & Wilbanks Corp. v. Shell Oil Co.***, 314 F.3d 1180, 1188 (10th Cir. 2002)

(citations omitted).  Applying these factors, I conclude that the Nacchio and Woodruff

Settlement is fair, reasonable, and adequate.

    **1.  Fair and Honest Negotiation** - Each of the parties is represented by

competent, seasoned attorneys who conducted this litigation vigorously and

professionally.  The plaintiffs' claims were challenged and refined through several

amended complaints and associated motions to dismiss.  Substantial discovery that

was coordinated among various interested parties also was completed before the

settlement was negotiated  fully.  There is no indication that any of the negotiating

parties unfairly was pressured or coerced into agreeing to the settlement.  In short, the

record bears no indication that the settlement is flawed and potentially unfair because it

is founded on inadequate information, inadequate analysis, or inadequate legal

representation.  Further, the record indicates clearly and I conclude that the settlement

was fairly, honestly, and vigorously negotiated.  This factor weighs in favor of approval

of the settlement.

    **2.  Serious Questions of Law and Fact** - This factor requires an examination of

whether serious questions of law and fact exist, placing the ultimate outcome of the

litigation in doubt.  The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.

It is difficult to imagine that anyone familiar with this case could conclude that there are not serious questions of law and fact in this case, or that those issues do not put the ultimate outcome of the litigation in doubt.  The crux of the plaintiffs' case is that the defendants caused the price of Qwest's securities to be inflated artificially by making false or misleading statements about Qwest's business and by engaging in a series of improper accounting manipulations in violation of Generally Accepted Accounting Principles.  The accounting issues, the scienter issues, the causation issues, and the damages issues all are complex and problematic.  Presenting these issues to a jury would create substantial risks for all parties, including the plaintiffs.  The risk that a jury would deny recovery to the plaintiffs is substantial.  The settlement creates a certainty of some recovery, and eliminates the risk of no recovery if the litigation were pursued to trial.  I conclude that this litigation presents serious and complex questions of law and fact that place the ultimate outcome of the litigation in doubt.  This factor weighs in favor of approval of the settlement.

**3.  The Value of an immediate recovery outweighs the possibility of future relief** - In addition to the risk of resolving serious and complex questions of law and fact, pursuing this litigation through trial presents additional risks to the plaintiffs.  The progress of this case might face continued delays because of related criminal prosecutions; thus, delaying possible recovery for the plaintiffs.  The plaintiffs face a substantial risk that they would not be able to recover on a judgment that would be entered by the court if the plaintiffs were successful at trial.  Even if the plaintiffs were

successful at trial, recovery of their claimed damages against Nacchio and Woodruff would not be certain.  Having considered the record in this case and the relevant surrounding circumstances, I find that the value of an immediate recovery outweighs the possibility of future relief.  This factor weighs in favor of approval of the settlement.

**4.  The judgment of the parties that the settlement is fair and reasonable** - Obviously, it is the judgment of lead counsel, who specialize in this type of litigation, that the settlement is fair and reasonable.  That judgment is entitled to some weight in considering this factor.  Notice of the proposed N & W Settlement was sent to over two million potential class members.  *Reply brief* [#1183], filed March 13, 2009, p. 1.  Only four objections to the settlement have been filed.   Although they may not be fully satisfied with the settlement, the vast majority of class members apparently concede that the settlement is fair or, as a practical matter, likely is the best result that can be achieved.  The Nacchio and Woodruff's agreement to the terms of the settlement indicates that they believe the settlement is fair and reasonable.  I find that, with relatively few exceptions, nearly all parties to this case have concluded that the settlement is fair and reasonable.  This factor weighs in favor of approval of the settlement.

## F.  OBJECTIONS

The only filings in this case that might be read as objections were filed under docket numbers 1173, 1176, 1177, and 1178.

**Scott Hendler** - Putative class member Scott Hendler filed a letter [#1173] in which he objects to the fact that putative class members who receive a settlement notice in a securities fraud class action case, such as the notice he received in this case, must bear the burden of determining whether they are members of the class by

determining when they bought and sold the securities at issue in the case.  He argues that defendants in such case are in a better position to make these determinations, and that the defendants should bear the burden of making these determinations.

As Lead Plaintiffs and Lead Counsel note in their reply [#1183], defendants such as Qwest often do not have the best information about who owned the relevant securities at the relevant times.  As noted in the reply, securities often are held in the names of brokerages, banks, and trust companies as nominees for the investors in whose accounts those shares reside.  In many circumstances, this fact makes is difficult or impossible for a defendant in a securities fraud class action to identify precisely the members of the class.  To the extent Mr. Hendler's letter [#1173] should be read as an objection rather than a suggestion, I overrule his objection.

**Thomas W. Hicks** - Putative class member Thomas W. Hicks filed a letter [#1176] in which he asks me to determine the amount of money he will receive from the settlement.  As outlined in the notice delivered to putative class members,  the precise amount that may be paid to any class member is dependent on a number of variables, including the number of valid claims submitted.  *Notice of Pendency and Settlement of Class Action* [#1141], Exhibit A-1, p. 2.  I read this portion of Mr. Hick's letter as a question rather than an objection, and I note that the question cannot be answered precisely at this time.  Mr. Hicks objects also to the proposal that counsel for the plaintiff class receive fifteen percent of the settlement fund in payment of their attorney fees.  I address this objection in my separate order resolving Lead Counsel's motion for an award of attorney fees.

**Lila Rose Schwartz** - Ms. Schwartz filed a letter [#1177] requesting clarification of the claims process for this settlement.  Ms. Schwartz filed a claim in response to the

notice of the Partial Settlement and, under the terms of the proposed N & W Settlement, was not required to file another claim in order to benefit from the N & W Settlement.  In their reply [#1183], Lead Counsel reports that on March 4, 2009, Lead Counsel called Ms. Schwartz to address the issues she raised in her letter.  Lead Counsel reports that all of the concerns Ms. Schwartz had about the claims process were "explained and resolved to her satisfaction."  *Reply*, p. 15.  I do not read Ms. Schwartz's letter as an objection, but as a request for clarification of the procedures being used to resolve her claims in this case.  I find and conclude that Ms. Schwartz has received that clarification.

**Elizabeth Moody** - Ms. Moody filed a letter [#1178] requesting an extension of time to file her claim.  Lead Counsel reports that Lead Counsel contacted Ms. Moody and arranged for her to file a timely claim, which she has done.  Apparently, a custodian for Ms. Moody holds certain information about her ownership of Qwest shares.  Lead Counsel reports that she will be permitted to amend her claim when she receives the additional relevant information from her custodian.  I do not read Ms. Moody's letter as an objection, but as a request for additional time to provide relevant details in her claim. This request has been resolved.

Having reviewed all of the objections, excluding objections to lead counsel's request for an award of attorney fees and costs, I overrule the objections filed by class members.

## G.  ORDERS

A hearing having been conducted by the court to determine whether the terms and conditions of the **Stipulation of Partial Settlement** [#1127] filed August 15, 2008, are fair, reasonable and adequate for the settlement of all claims asserted by the Lead

Plaintiffs and members of the N&W Class against Nacchio and Woodruff, due and adequate notice having been given to the N&W Class as required by the court's **Order Preliminarily Approving Settlement and Approving Form and Manner of Notice** [#1141] filed November 26, 2008, and the court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS**:

1.  That the **Lead Plaintiffs' Motion for Final Approval of Class Action Settlement with All Remaining Defendants** [#1155] filed December 23, 2008, is **GRANTED** on the terms outlined in this order.

2. The **Stipulation of Partial Settlement** [#1127] filed August 15, 2008 (Stipulation), including the definitions contained therein, is incorporated by reference in this Judgment.

3. The court has jurisdiction over the subject matter of the Litigation and all parties to the Litigation, including N&W Class Members.

4. The court finds that the prerequisites for a class action under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 23(a) and (b)(3) have been satisfied in that: (a) the number of N&W Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the N&W Class; (c) the claims of the Lead Plaintiffs are typical of the claims of the N&W Class they seek to represent; (d) the Lead Plaintiffs have represented and will fairly and adequately represent the interests of the N&W Class; (e) the questions of law and fact common to members of the N&W Class predominate over any questions affecting any individual members of the N&W Class; and (f) a class action is superior to other available

methods for the fair and efficient adjudication of the controversy.

5. Pursuant to Fed. R. Civ. P. 23, this court hereby finally certifies this Litigation as a class action (for settlement purposes only) on behalf of

> all Persons who purchased or otherwise acquired Qwest publicly traded securities (including common stock, bonds, and options) from May 24, 1999 through July 28, 2002 ("Class Period"), except for those Persons who requested and obtained exclusion from the class that was certified by the Court in the Partial Settlement and who subsequently resolved their claims against QCII, Nacchio, Woodruff and others and provided releases of claims against QCII, Nacchio, Woodruff and others.[2]  Excluded from the N&W Class are Defendants and any Persons affiliated with or related to any Defendant. For purposes of this Paragraph, the Persons affiliated with or related to any Defendant are members of the immediate family of each Defendant, any entity in which any Defendant has a controlling interest, officers and directors of QCII and its subsidiaries and affiliates, and Arthur Andersen LLP ("AA") and AA's partners, shareholders and members, and the legal representatives, heirs, predecessors, successors and assigns of any such excluded party.  Also excluded from the N&W Class are those Persons who request exclusion from the N&W Class in such form and manner, and within such time, as the Court shall prescribe. Also excluded from the N&W Class is any current or former officer, director, employee, or agent of QCII who has been sued by the United States Securities and Exchange Commission in connection with such Person's affiliation with or conduct related to QCII.

6. Notice of the pendency of this Litigation as a class action and of the proposed settlement was given to all N&W Class Members who could be identified with reasonable effort.  The form and method of notifying the N&W Class of the pendency of the Litigation as a class action and of the terms and conditions of the proposed settlement met the requirements of Fed. R. Civ. P. 23, §21D(a)(7) of the Exchange Act, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, due process, the rules of this court, and any other applicable law; constituted the

---

[2]  I note that the phrase "and provided releases of claims against QCII, Nacchio, Woodruff and others" was omitted from the proposed form of order attached to the parties' **Stipulation of Partial Settlement** [#1127], filed August 15, 2008, as Exhibit B.  That phrase, however, is included in the parties' **Stipulation of Partial Settlement** [#1127] at ¶ 1.13.  I include that phrase here because it was part of the definition of the N & W Class to which the parties' agreed in their Stipulation.

best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

7. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the court approves the settlement on the terms set forth in the Stipulation as fair, reasonable and adequate to the N&W Class, and the Settling Parties and QCII are directed to consummate the Stipulation in accordance with its terms and conditions.

8. The Litigation is hereby dismissed with prejudice and without costs as against any of Nacchio and Woodruff and the Released Persons.  Pursuant to Paragraph 5.5 of the Stipulation, upon its Effective Date, the Settling Defendants shall have withdrawn and waived all objections and appeals to the Qwest Stipulation and the Partial Settlement. Accordingly, upon the Effective Date of the Stipulation, the Litigation is dismissed with prejudice pursuant to the Partial Settlement as to the Settling Defendants and Released Persons in the Partial Settlement, and the Partial Settlement shall become "Final" in accordance with Paragraph 8.1(d) of the Qwest Stipulation.

9. Except as to any claim of any individual or entity (identified on Exhibit 1 hereto) who has validly and timely requested exclusion from the N&W Class, upon the Effective Date, Lead Plaintiffs and each of the N&W Class Members shall be deemed to have, and by operation of the Judgment shall have: (i) fully, finally, and forever released, relinquished and discharged all Released Claims (including Unknown Claims) against the Released Persons, whether or not such N&W Class Member executes and delivers the Proof of Claim and Release, (ii) covenanted not to sue any of the Released Persons or otherwise to assert, directly or indirectly, any of the Released Claims against any of the Released Persons, and (iii) agreed to be forever barred and enjoined from doing so, in any court of law or equity, or in any other forum.

10. Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiffs, each and all of the N&W Class Members (except as to any individual or entity who has validly, timely, and completely requested exclusion from the N&W Class), and Lead Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation, or the Released Claims.

11. Neither the Stipulation nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Released Persons may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12. The Settling Defendants shall be afforded all protections against future claims for contribution arising out of the Litigation as provided by §21D-4(f)(7)(A) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(f)(7)(A), and any subsequent verdict or judgment in the Litigation shall be reduced as required by the

reduction provision set forth in §21D(f)(7)(B) of the PSLRA, 15 U.S.C. §78u-4(f)(7)(B).

13. Any Plan of Allocation submitted by Lead Plaintiffs or Lead Counsel or any order regarding any attorneys' fees and expense application shall in no way disturb or affect this Judgment and shall be separate and apart from this Judgment.

14. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the settlement and any award or distribution of the N&W Settlement Fund, including interest earned thereon; (b) disposition of the N&W Settlement Fund; (c) hearing and determining applications for attorneys' fees, interest and expenses in the Litigation; and (d) the Settling Parties and QCII for purposes of construing, enforcing and administering the Stipulation.

15. The court finds that, at all times in connection with the institution, prosecution, defense and resolution of the Litigation, no Settling Party violated the provisions of Fed. R. Civ. P. 11.

16. No Person shall have any claim against Lead Counsel or the Claims Administrator, or their counsel, based on distributions made substantially in accordance with the Stipulation and the settlement contained therein, the Plan of Allocation, or further order(s) of the Court.  No Person shall have any claim whatsoever against Qwest, Settling Defendants, Settling Defendants' counsel, or any Released Persons arising from or related to any distributions made, or not made, from the N&W Settlement Fund.

17. Without further order of the court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

18. In the event that the Effective Date does not occur, this Order and Judgment shall automatically be rendered null and void and shall be vacated and, in such event,

all orders entered and releases delivered in connection herewith shall be null and void.

Dated May 27, 2009, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge